1  Kevin A. Michael, WSBA No. 36976
2  John B. McDonald, WSBA No. 57511
   COZEN O'CONNOR
3  999 Third Avenue, Suite 1900
   Seattle, Washington  98104
4  Telephone: 206.340.1000
   Toll Free Phone: 800.423.1950
5  Email:   kmichael@cozen.com
            jbmcdonald@cozen.com
6  *Attorneys for Plaintiff*

7

8              UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON
9                      AT SEATTLE

10  GENERAL CASUALTY COMPANY OF
    WISCONSIN, a Wisconsin corporation,
11
                                                    **GENERAL CASUALTY'S**
12              Plaintiff,                           **COMPLAINT FOR REFORMATION**
                                                    **AND DECLARATORY RELIEF**
                v.
13
    REED HEIN & ASSOCIATES, LLC d/b/a
14  TIMESHARE EXIT TEAM, a Washington
    limited liability company; MAKAYMAX,
15  INC., a Washington corporation; BRANDON
    REED, individually, BRIAN and KERRI
16  ADOLPH, a married couple,

17              Defendants.

18          Plaintiff General Casualty Company of Wisconsin ("General Casualty"), by and

19  through its undersigned attorneys, for its Complaint for Reformation and Declaratory Relief

20  against Reed Hein & Associates, LLC ("Reed Hein"), Makaymax, Inc., Brandon Reed (Reed

21  Hein, Makaymax, and Mr. Reed are collectively referred to herein as "Defendants"),[1] and

22  Brian and Kerri Adolph (the "Adolphs[2]") alleges as follows:

23

24  _____
        [1] General Casualty has never received a request for coverage from or on behalf of
25  Makaymax.   Because it is unclear whether Makaymax is or was a "member" and/or
    "manager" of Reed Hein, General Casualty has included Makaymax as a defendant in this
26  lawsuit.
        [2] Although defendants in this lawsuit, Mr. and Mrs. Adolph are referred to herein as the
    Adolphs and not included in the definition of "Defendants."

**GENERAL CASUALTY'S COMPLAINT FOR**
**REFORMATION AND DECLARATORY RELIEF**- 1

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

## I.  INTRODUCTION

1.      In February 2020, the Washington State Attorney General (the "AG") sued Defendants for deceptive consumer practices – namely, representing to customers that Reed Hein maintained expertise in exiting customers from their timeshares when, in fact, Reed Hein had no such expertise (the "AG Suit").   In September 2021, the AG and Defendants entered into a Consent Decree requiring Defendants to cease numerous deceptive timeshare exit practices and to pay approximately $2.61 million to the State of Washington.

2.      On the heels of that Consent Decree, in October 2021, the Adolphs filed a putative class action in United States District Court for the Western District of Washington styled *Adolph. v. Reed Hein & Associates, LLC, et al.*, Case No. 2:21-cv-01378 (the "Adolph Lawsuit"), seeking to hold Defendants accountable for their deceptive business practices.

3.      Beginning in May 2020, General Casualty began insuring Reed Hein under primary and umbrella liability insurance policies (the "General Casualty Policies").   Those policies include:

      a.  Policy No. BPK008399-00, issued to Reed Hein for the period May 16, 2020 to May 16, 2021 (the "2020-21 Primary Policy");

      b.  Policy No. BUM0006548-00, issued to Reed Hein for the period May 16, 2020 to May 16, 2021 (the "2020-21 Umbrella Policy");

      c.  Policy No. BPK0008399-01, issued to Reed Hein for the period May 16, 2021 to May 16, 2022 (the "2021-22 Primary Policy"); and

      d.  Policy No. BUM0006548-01, issued to Reed Hein for the period May 16, 2021 to May 16, 2022 (the "2021-22 Umbrella Policy").

4.      All the General Casualty Policies provide coverage for "bodily injury" and "property damage."   And all the General Casualty Policies were intended to preclude coverage for "personal and advertising injury."   Indeed, three of the four General Casualty Policies – the 2020-21 Primary Policy and both Umbrella Policies – contain an express "Personal and Advertising Injury" Exclusion.   That exclusion inadvertently and

**GENERAL CASUALTY'S COMPLAINT FOR REFORMATION AND DECLARATORY RELIEF**- 2

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

1  unintentionally was omitted from the 2021-22 Primary Policy due to a processing error during

2  the 2021-22 Primary Policy's underwriting.

3     5.     Reed Hein tendered the claims made against it in the Adolph Lawsuit to its

4  liability insurers, including General Casualty.   But Defendants and the Adolphs never

5  intended for Reed Hein's insurers to indemnify Defendants for their alleged wrongdoings,

6  which are not covered by insurance.   Accordingly, upon information and belief, Defendants

7  and the Adolphs began colluding almost as soon as the complaint in the Adolph Lawsuit was

8  filed in an attempt to extract hundreds of millions of dollars from Reed Hein's insurers

9  through an invalid agreement under which Defendants would stipulate to a grossly inflated

10 and unsubstantiated judgment in exchange for a covenant not to execute and an assignment of

11 Defendants' rights against their liability insurers (the "Purported CR2A Agreement").  Upon

12 information and belief, the Purported CR2A Agreement was substantively agreed to by mid-

13 January 2022.

14     6.     Because the 2021-22 Primary Policy inadvertently omitted the "Personal and

15 Advertising Injury" Exclusion that is present on the other three General Casualty Policies,

16 General Casualty agreed to defend Reed Hein and Mr. Reed under the 2021-22 Primary

17 Policy, under a reservation of rights.  It was not until after General Casualty agreed to defend

18 Reed Hein and Mr. Reed in the Adolph Lawsuit that General Casualty learned about the

19 Purported CR2A Agreement.

20     7.     Through this action, General Casualty seeks the Court's approval to reform the

21 2021-22 Primary Policy to include the "Personal and Advertising Injury" Exclusion that

22 General Casualty and Reed Hein intended to include on that policy.  Specifically, reforming

23 the 2021-22 Primary Policy to add that exclusion will align the policy's terms with the

24 parties' mutual intent to exclude coverage for "personal and advertising injury" liability,

25 which was the specific condition upon which General Casualty agreed to offer Reed Hein

26 insurance.

**GENERAL CASUALTY'S COMPLAINT FOR**
**REFORMATION AND DECLARATORY RELIEF** - 3

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

8.    General Casualty additionally seeks declarations that:

a.  the 2020-21 Primary Policy and both Umbrella Policies do not provide coverage for the claims made against Reed Hein and Mr. Reed in the Adolph Lawsuit;

b.  the 2021-22 Primary Policy does not provide coverage for the claims made against Reed Hein and Mr. Reed in the Adolph Lawsuit;

c.  the Purported CR2A Agreement is unenforceable against General Casualty and/or invalid in its entirety;

d.  the Purported CR2A Agreement only stipulates to damages that are uncovered by all of the General Casualty Policies;

e.  Reed Hein and Mr. Reed have invalidated any coverage they – or the Adolphs – otherwise may have sought under the General Casualty Policies by entering into the Purported CR2A Agreement, if it is determined that the Purported CR2A Agreement is valid; and/or

f.  the General Casualty Policies' terms, conditions, limitations, and exclusions preclude coverage for all claims in the Adolph Lawsuit.

## II.    **THE PARTIES**

9.    Plaintiff General Casualty Company of Wisconsin is a domestic insurer incorporated in Wisconsin and having its principal place of business in New York.  At all times relevant hereto, General Casualty was and is authorized to do business in the State of Washington.

10.    Defendant Reed Hein & Associates, LLC is a Washington limited liability company, with its principal place of business in King County, Washington.  Upon information and belief, Reed Hein ceased operations in early 2022.

11.    Upon information and belief, Defendant Brandon Reed is a citizen of the State of Washington and is domiciled in the State of Washington.  Mr. Reed is or was the managing member and registered agent of Reed Hein.

12.    Defendant Makaymax, Inc. is a Washington corporation.  On information and belief, Defendant Brandon Reed is or was a 60% owner of Defendant Reed Hein through Makaymax.  Although General Casualty is not privy to the exact corporate structure of

GENERAL CASUALTY'S COMPLAINT FOR
REFORMATION AND DECLARATORY RELIEF- 4

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

Reed Hein, Makaymax may have qualified as a "member" of Reed Hein & Associates, LLC during the relevant timeframe.

13.     Brian and Kerri Adolph are a married couple who are residents of, and domiciled in, North Carolina.  The Adolphs are named in this lawsuit because, on October 25, 2022, the Court in the Adolph Lawsuit conditionally certified a class of approximately 34,000 members (the "Class") and appointed Brian Adolph as Class Representative.  General Casualty names the Adolphs in this matter in their individual and representative capacities.

### III.     JURISDICTION

14.     This Court has jurisdiction by virtue of 28 U.S.C. § 1332, as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.   In particular, 1) Plaintiff General Casualty is a citizen of Wisconsin and/or New York, 2) Defendants are citizens of, and domiciled in, Washington, and 3) the Adolphs are citizens of, and domiciled in, North Carolina.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as Defendants are citizens of this judicial district and a substantial part of the events giving rise to this action occurred in this district.

16.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201(a), this Court has the power to declare all rights, duties, and obligations under an insurance policy, whether or not further relief is or could be sought.

17.     An actual and justiciable controversy exists between General Casualty, on one hand, and Defendants and the Adolphs, on the other hand, within the meaning of 28 U.S.C. § 2201 regarding: (1) whether the 2021-22 Primary Policy should be reformed to include the "Personal and Advertising Injury" Exclusion; (2) whether the Purported CR2A Agreement is valid and enforceable; (3) if so, whether Reed Hein and Mr. Reed breached their obligations under the General Casualty Policies when entering into the Purported CR2A Agreement; and/or (4) whether the General Casualty Policies provide any coverage for Adolph Lawsuit.

**GENERAL CASUALTY'S COMPLAINT FOR REFORMATION AND DECLARATORY RELIEF**- 5

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

1

## IV.    FACTS

2

**A.    Reed Hein**

3      18      Reed Hein is a limited liability company registered under Washington law that

4  purportedly assisted clients/customers in exiting unwanted timeshare agreements.    Upon

5  information and belief, Mr. Reed was one of Reed Hein's members and/or managers.

6      19.      On information and belief, Reed Hein contracted with approximately 34,000

7  customers since 2012.

8      20.      In February 2020, the AG filed the AG Suit against Reed Hein, alleging that

9  Reed Hein had committed various unfair and deceptive business practices.    Specifically, the

10  AG Suit alleged that Reed Hein did not possess its claimed expertise in exiting timeshares,

11  exposing its customers to unanticipated negative financial and other consequences.

12      21.      In September 2021, the AG and Defendants entered into a Consent Decree

13  requiring Defendants to cease numerous deceptive timeshare exit practices and make a

14  payment of approximately $2.61 million to the State of Washington.    Reed Hein (including

15  Mr. Reed) contend that the AG Suit effectively exhausted any assets of the company and

16  Mr. Reed personally.

17      22.      Reed Hein ceased operations in or around February 2022.

18

**B.    Reed Hein Applies for Insurance from General Casualty**

19      23.      On March 13, 2020, while the AG Suit was pending, Reed Hein sought

20  insurance coverage from General Casualty.    Specifically, Reed Hein's insurance broker, Ruby

21  Burden at Brown & Brown Insurance Services of California, submitted an application to

22  General Casualty through its underwriting agent, Arrowhead General Insurance Agency, Inc.

23  ("Arrowhead").

24      24.      In her March 13, 2020 email, Ms. Burden indicated that Reed Hein's prior

25  insurance coverage had been non-renewed because of the high number of claims/lawsuits

26

**GENERAL CASUALTY'S COMPLAINT FOR**
**REFORMATION AND DECLARATORY RELIEF**- 6

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

1    filed against it.    Ms. Burden's email also noted that "the claims have all been related to

2    Personal Injury claims."

3        25.    By email dated April 7, 2020, Arrowhead underwriter Arlington So responded

4    to Ms. Burden's email and stated:  "I am sorry due to the losses this will be a decline, but if

5    you wish to exclude PI & Advertising then we can continue to quote. . . ."

6        26.    Reed Hein agreed that it would not seek personal and advertising injury

7    coverage from General Casualty and, accordingly, General Casualty ultimately issued the

8    2020-21 Primary and Umbrella Policies to Reed Hein.

9    **C.**    **The 2020-21 Policies Issued by General Casualty**

10        27.    In pertinent part, the 2020-21 Primary Policy[3] provides coverage for "bodily

11    injury" and "property damage" through Coverage A of the policy's "Commercial General

12    Liability Coverage Form" (the "CGL Form").    Specifically, the Insuring Agreement

13    applicable to Coverage A of the 2020-21 Primary Policy states as follows:

> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
>   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…

20        28.    The 2020-21 Primary Policy includes the following, relevant definitions:

> • "bodily injury" means "bodily injury, sickness or disease sustained by a person, including mental anguish, injury or illness, or emotional distress and/or death resulting from any of these at any time."
>
> • "property damage" means: (1) "[p]hysical injury to tangible property"; and (2) "[l]oss of use of tangible property that is not physically injured."

---

[3] The 2020-21 Primary Policy is attached hereto as **Exhibit A** and incorporated by reference herein.

**GENERAL CASUALTY'S COMPLAINT FOR**
**REFORMATION AND DECLARATORY RELIEF** - 7

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

- "occurrence" means "an accident, including continuous or repeated exposure of substantially the same general harmful conditions."

29.    Coverage A of the 2020-21 Primary Policy contains the following relevant exclusions providing that the 2020-21 Primary Policy's insurance does not apply to:

- "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured" (the "Expected or Intended Injury Exclusion");

- "'bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement" (the "Contractual Liability Exclusion"), although this exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

- "'bodily injury' arising out of 'personal and advertising injury'; and

- damages arising out of "[a]ny access to or disclosure of any person's or organization's confidential or personal information, including … financial information, credit card information, health information, or any other type of nonpublic information"  (the "Access or Disclosure Exclusion").

30.    Had it been intended to provide coverage for "personal and advertising injury," the 2020-21 Primary Policy would have provided that coverage through Coverage B of the CGL Form, which provides, in pertinent part, as follows:

**SECTION I – COVERAGES**

\*\*\*

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies…

31.    However, consistent with the parties' mutual intent to exclude "personal and advertising injury" coverage from the insurance that Reed Hein purchased from General

GENERAL CASUALTY'S COMPLAINT FOR
REFORMATION AND DECLARATORY RELIEF- 8

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

Casualty, the 2020-21 Primary Policy includes an "Exclusion – Personal and Advertising Injury" Endorsement providing that "Coverage B (Section I) does not apply and none of the references to it in the Coverage Part apply."

32.    In pertinent part, the 2020-21 Umbrella Policy[4] provides coverage for "bodily injury" and "property damage" through Coverage A of the policy's "Commercial Liability Umbrella Coverage Form" (the "CLU Form").    Specifically, the Insuring Agreement applicable to Coverage A of the 2020-21 Umbrella Policy states as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

    **a.**  We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies…

33.    The 2020-21 Umbrella Policy includes the following, relevant definitions:

- "'bodily injury' means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time.  'Bodily injury' includes mental anguish or other mental injury resulting from 'bodily injury.'"

- "property damage" means: (1) "[p]hysical injury to tangible property"; and (2) "[l]oss of use of tangible property that is not physically injured."

- "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

34.    Coverage A of the 2020-21 Umbrella Policy contains the following, relevant exclusions providing that the 2020-21 Umbrella Policy's insurance does not apply to:

- "'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured…"; and

---

[4] The 2020-21 Umbrella Policy is attached hereto as **Exhibit B** and incorporated by reference herein.

**GENERAL CASUALTY'S COMPLAINT FOR REFORMATION AND DECLARATORY RELIEF**- 9

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

- "'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement, although this exclusion does not apply to liability for damages that the insured would have had in the absence of the contract or agreement."

- damages arising out of "[a]ny access to or disclosure of any person's or organization's confidential or personal information, including … financial information, credit card information, health information, or any other type of nonpublic information."

35.    Like the 2020-21 Primary Policy, had it been intended to provide coverage for "personal and advertising injury," the 2020-21 Umbrella Policy would have provided that coverage through Coverage B of the CLU Form, which provides, in pertinent part, as follows:

**SECTION I – COVERAGES**

\*\*\*

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.  Insuring Agreement**

   **a.**    We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies…

36.    However, consistent with General Casualty's and Reed Hein's mutual intent for the insurance provided to Reed Hein by General Casualty not to provide coverage for "personal and advertising injury" liability, the 2020-21 Umbrella Policy contains an "Exclusion – Personal and Advertising Injury" Endorsement providing that "Coverage B (Section I) does not apply and none of the references to it in the Coverage Part apply."

**D.    The 2021-22 Policies Issued by General Casualty**

37.    On February 15, 2021, Reed Hein's insurance broker, Philip Gajic at Brown & Brown, sent an email to Mr. So at Arrowhead indicating that Reed Hein intended to renew its insurance with General Casualty.

**GENERAL CASUALTY'S COMPLAINT FOR REFORMATION AND DECLARATORY RELIEF**- 10

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

38.     In his email to Mr. So, Mr. Gajic asked if Arrowhead needed "Renewal Acords" (*i.e.*, renewal applications issued on industry-standard ACORD forms).  A renewal application was unnecessary based upon the amount of premium that Reed Hein paid for the 2020-21 Primary and Umbrella Policies.  Mr. Gajic did not request any changes to the coverage provided by the 2020-21 Primary and Umbrella Policies in his email to Mr. So.

39.     The 2021-22 Primary and Umbrella Policies were intended to provide coverage to Reed Hein on the same terms as the 2020-21 Primary and Umbrella Policies  - *i.e.*, to provide coverage for "bodily injury"- and "property damage"-related liabilities, but not to provide coverage for "personal and advertising injury"-related liabilities.

40.     Reed Hein's renewal policies with General Casualty became effective on May 16, 2021.  Consistent with the parties' mutual intent, the 2021-22 Umbrella Policy[5] was issued with the same "Personal and Advertising Injury" Exclusion that was on the 2020-21 Umbrella Policy.  Also consistent with the parties' mutual intent, the 2021-22 Umbrella Policy contains a "Schedule of Underlying Insurance" that: (1) identifies the 2021-22 Primary Policy as the applicable underlying insurance; and (2) indicates that there is no coverage for "personal and advertising injury" under that 2021-22 Primary Policy.

41.     Despite the parties' mutual intent for the 2021-22 Primary Policy to be issued on the same terms as the 2020-21 Primary Policy, the 2021-22 Primary Policy did not include the "Personal and Advertising Injury" Exclusion that was included on the 2020-21 Primary Policy.  The omission of that exclusion from the 2021-22 Primary Policy was the result of a processing error committed by Arrowhead during the 2021-22 Primary Policy's underwriting as opposed to a request by Reed Hein during the renewal process that "personal and advertising injury" coverage be added to the 2021-22 Primary Policy.  As such, the omission constitutes a mutual mistake on the part of General Casualty and Reed Hein.

---

[5] The 2021-22 Umbrella Policy is attached hereto as **Exhibit C** and incorporated by reference herein.

**GENERAL CASUALTY'S COMPLAINT FOR REFORMATION AND DECLARATORY RELIEF**- 11

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

42.    General Casualty believes that the 2021-22 Primary Policy[6] should not be construed as containing "personal and advertising injury" coverage.    Notwithstanding, General Casualty notes that the CGL Form contains the following provisions with respect to "Personal and Advertising Injury Liability" Coverage ("Coverage B"):

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies . . .

43.    The CGL Form that is part of the 2020-21 Primary Policy defines "Personal and Advertising Injury" as follows:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right to privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringement upon another's copyright, trade dress or slogan in your "advertisement."

---

[6] The 2021-22 Primary Policy is attached hereto as **Exhibit D** and incorporated by reference herein.

**GENERAL CASUALTY'S COMPLAINT FOR REFORMATION AND DECLARATORY RELIEF**- 12

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

44.     If it were to be applicable, Coverage B of the 2021-22 Primary Policy includes the following, relevant exclusions providing that the 2021-22 Primary Policy's insurance does not apply to:

- "'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" (the "Knowing Violation Exclusion");

- "'personal and advertising injury' arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity" (the "Known Falsity Exclusion");

- "'personal and advertising injury' arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period" (the "Prior Publication Exclusion");

- "'personal and advertising injury' for which the insured has assumed liability in a contract or agreement," although this exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement (the "Coverage B Contractual Liability Exclusion");

- "'personal and advertising injury' arising out of a breach of contract …" (the "Breach of Contract Exclusion");

- "'personal and advertising injury' arising out of the failure of goods, products or services to conform with any statement or quality or performance made in your 'advertisement'" (the "Failure to Conform Exclusion"); and

- "'personal or advertising injury' arising out of any access to or disclosure of any person's or organization's confidential or personal information, including … any other type of non-public information" (the "Coverage B Access or Disclosure Exclusion").

**E.     Conditions Applicable to the General Casualty Policies**

45.     All of the General Casualty Policies contain the following conditions:

**GENERAL CASUALTY'S COMPLAINT FOR**
**REFORMATION AND DECLARATORY RELIEF**- 13

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

- "You and any other involved insured must: … (3) Cooperate with us in the investigation or settlement of any claim or defense against the 'suit'" …

- "No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."

46.     All of the General Casualty Policies also contain the following additional condition:

- Your rights and duties under this policy may not be transferred without our written consent …

47.     All of the General Casualty Policies contain the following provision related to reimbursement of defense fees and costs:

> With respect to any suit, arbitration or other legal action brought against an **Insured** seeking **Damages**, and subject to all the Policy terms, limits, exclusions, duties, rules and conditions, the Insurer may, at their sole discretion, advance the costs of defense in any such suit, arbitration or other legal action until it is determined by a court of competent jurisdiction that the **Insured** is not entitled to coverage for the **Claim**. In the case of such determination, the **Insured** shall be obligated to repay to the Insurer all costs of defense advanced by the Insurer in defending any **Claim** not covered pursuant to this Policy.

**F.     The Adolph Lawsuit**

48.     On October 9, 2021, the Adolphs filed the Adolph Lawsuit against Defendants. The Adolph Lawsuit is attached hereto as **Exhibit E** and incorporated by reference herein.

49.     The Adolph Lawsuit alleges that Reed Hein and/or Defendants "defrauded tens of thousands of customers out of tens of millions of dollars."

50.     The Adolph Lawsuit alleges that Reed Hein and/or Defendants "falsely advertises it has 'specialized knowledge' and a 'proprietary process' that allows it to 'force' developers and vacation resorts to release customers from unwanted timeshare obligations."

51.     The Adolph Lawsuit alleges that Reed Hein and/or Defendants used "deceptive statements" and "false advertisements" that "induced clients into purchasing Reed Hein's services."

GENERAL CASUALTY'S COMPLAINT FOR
REFORMATION AND DECLARATORY RELIEF- 14

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

52.    The Adolph Lawsuit alleges that Reed Hein and/or Defendants "then 'processes' its customers' claims through a variety of convoluted schemes designed to look like they have legal significance they do not have."

53.    The Adolph Lawsuit alleges that Reed Hein and/or Defendants did not actually get customers out of their timeshare obligations, yet also refused to refund fees, despite its purported "100% Money Back Guarantee."

54.    The Adolph Lawsuit sets forth extensive allegations of alleged misconduct on the part of Reed Hein and/or Defendants in conducting their operations, which allegations are similar to those raised in the AG Suit.

55.    The Adolph Lawsuit does not allege that Reed Hein and/or Defendants caused any physical injury to tangible property, or that any Class member lost the use of any tangible property.

56.    The Adolph Lawsuit does not allege that Reed Hein and/or Defendants caused any bodily injury to the Adolphs or any Class member.

**G.    The Tender to General Casualty and General Casualty's Reservation of Rights**

57.    Reed Hein tendered its defense of the Adolph Lawsuit to General Casualty on October 11, 2021.

58.    General Casualty timely acknowledged the tender and issued a general reservation of rights pending its coverage investigation.

59.    It was during its investigation that General Casualty discovered that the 2021-22 Primary Policy was inadvertently issued without the "Exclusion – Personal and Advertising Injury" Endorsement that was intended by General Casualty and Reed Hein to be included on all of the General Casualty Policies.

60.    General Casualty then set forth on determining how/why this occurred, including interviewing Arrowhead employees who were involved with or oversaw the General Casualty Policies' underwriting and issuance.

**GENERAL CASUALTY'S COMPLAINT FOR REFORMATION AND DECLARATORY RELIEF** - 15

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

61.    While General Casualty was investigating the inadvertent omission of the "Exclusion – Personal and Advertising Injury" Endorsement from the 2021-22 Primary Policy, General Casualty was aware from its investigation – including its review of the public docket for the Adolph Lawsuit – that Reed Hein was being represented in the Adolph Lawsuit by sophisticated defense counsel: the law firm of Corr Cronin, LLP, which had defended Reed Hein in the AG Suit.  Accordingly, General Casualty was aware that Reed Hein's interests were being protected in the Adolph Lawsuit during General Casualty's coverage investigation.

62.    General Casualty monitored the public docket in the Adolph Lawsuit to remain aware of its status, though little appeared to be happening.

63.    General Casualty ultimately concluded that the allegations in the Adolph Lawsuit did not implicate the General Casualty Policies' coverage for "bodily injury" and "property damage."  Specifically, the Adolph Lawsuit did not involve "bodily injury" or "property damage" as those terms are defined in the General Casualty Policies.

64.    As for "personal and advertising injury" coverage, the 2020-21 Primary Policy excludes coverage for "personal and advertising injury."  General Casualty also determined from its investigation into the 2021-22 Primary Policy's inadvertent omission of the "Exclusion – Personal and Advertising Injury" Endorsement that the 2021-22 Primary Policy, consistent with Reed Hein's and General Casualty's mutual intent, was not intended to provide coverage for "personal and advertising injury."

65.    Based upon its review of the Complaint in the Adolph Lawsuit, General Casualty concluded that the Adolph Lawsuit does not allege any "offense" that qualifies under the definition of "personal and advertising injury."  Moreover, to the extent the Adolph Lawsuit possibly could be said to involve "personal and advertising injury," General Casualty concluded that coverage for the claims made against Reed Hein and/or Defendants in the Adolph Lawsuit was not available under the 2021-22 Primary Policy based upon the

**GENERAL CASUALTY'S COMPLAINT FOR REFORMATION AND DECLARATORY RELIEF**- 16

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

1  application of one or more exclusions applicable to the Policy's "personal and advertising

2  injury" coverage.

3        66.    Nevertheless, despite concluding that there appeared to be no plausible basis

4  for coverage under the 2021-22 Primary Policy, General Casualty, consistent with the edicts

5  of Washington law, agreed to accept Reed Hein's defense under a reservation of rights,

6  including the right to seek a judicial declaration on the parties' rights and obligations under

7  the General Casualty Policies.

8        67.    On or about August 8, 2022, General Casualty advised Ms. Panda Kroll of

9  Panda Kroll & Associates, who was identified as Reed Hein's "claim contact" in the

10 October 11, 2021 loss notice, that it would defend Reed Hein in the Adolph Lawsuit subject

11 to a full reservation of rights.  By email dated September 6, 2022, Ms. Kroll requested

12 confirmation whether General Casualty would also defend Mr. Reed in the Adolph Lawsuit.

13 By letter dated September 22, 2022, General Casualty confirmed its agreement to defend

14 Reed Hein and Mr. Reed, subject to a full reservation of rights (the "ROR Letter").  The ROR

15 Letter is attached hereto as **Exhibit F** and incorporated by reference herein.

16       68.    The ROR Letter specifically advised there was a mutual mistake in the

17 preparation of the 2021-22 Primary Policy – *i.e.*, that a processing error caused the 2021-22

18 Primary Policy to be issued without the "Exclusion – Personal and Advertising Injury"

19 Endorsement.  The ROR Letter further noted that General Casualty reserved its right to

20 initiate a declaratory judgment action to determine the parties' rights and obligations under

21 the General Casualty Policies.  The ROR Letter additionally advised that the General Casualty

22 Policies allow General Casualty to seek reimbursement of defense fees/costs incurred in

23 defending a lawsuit if General Casualty later proves that coverage is not available under the

24 General Casualty Policies.

25       69.    As set forth below, while General Casualty was investigating the 2021-22

26 Primary Policy's omission of the "Exclusion – Personal and Advertising Injury"

**GENERAL CASUALTY'S COMPLAINT FOR**
**REFORMATION AND DECLARATORY RELIEF**- 17

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

Endorsement, and before General Casualty issued the ROR Letter, the Adolphs and Defendants engaged in clandestine discussions which culminated in the secret Purported CR2A Agreement under which Defendants purported to assign their rights under the General Casualty Policies to the Adolphs.

**H.      The Setup and the Purported CR2A Agreement**

70.     The Adolphs and the putative class had a fundamental problem with their claims against Defendants:  Reed Hein and Mr. Reed claimed their settlement of the AG Suit left them without assets from which the claims of the Adolphs and the putative class members could be satisfied, and the conduct of Defendants is not the type of conduct covered by insurance.  Accordingly, despite Defendants' conduct, the Adolphs and the putative class had little chance of any substantial monetary recovery.

71.     To remedy this problem, upon information and belief, the Adolphs and Defendants began efforts only days after the Adolph Lawsuit was filed to compel General Casualty and Reed Hein's other insurers to fund the hundreds of millions of dollars' worth of damages to which the Adolphs and the putative class believed they were entitled based upon Reed Hein's allegedly fraudulent conduct.  These efforts led to a mediation on November 23, 2021 (just 45 days after the Adolph Lawsuit was filed) before Judge Laura Inveen. Defendants never advised General Casualty of the mediation or requested that General Casualty participate in the same.

72.     Unbeknownst to General Casualty, while it was actively investigating coverage for the claims made in the Adolph Lawsuit, including why the 2021-22 Primary Policy was issued without the "Exclusion – Personal and Advertising Injury" Endorsement, the Adolphs and Defendants were negotiating an enormous, stipulated judgment and an assignment of rights whereby Defendants agreed to stipulate to all theories of liability and the Adolphs' measure of damages and assign rights against Reed Hein's various insurers to the Adolphs/the

GENERAL CASUALTY'S COMPLAINT FOR
REFORMATION AND DECLARATORY RELIEF- 18

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

Class.  That purported stipulated judgment and assignment of rights is reflected in the Purported CR2A Agreement.

73.    The Purported CR2A Agreement was signed by Mr. Reed on behalf of all the Defendants on March 29, 2022.  The Adolphs' attorney, a party to the Purported CR2A Agreement, signed the Agreement that same day.  The Adolphs signed the Purported CR2A Agreement on April 1, 2022.  Upon information and belief, however, the substance of the Purported CR2A Agreement was finalized by mid-January 2022.

74.    By its terms, the Purported CR2A Agreement states that "the Settlement Defendants' various insurance carriers have sent letters refusing to provide a legal defense for or indemnify any of the Settlement Defendants against the claims alleged in the [Adolph] Complaint. . . ."  At the time the Purported CR2A Agreement was signed by all parties, General Casualty had not sent any letter disclaiming coverage.  To date, General Casualty still has not disclaimed coverage.  Accordingly, the Purported CR2A Agreement does not, on its face, apply to General Casualty.

75.    The Purported CR2A Agreement further contends that "the insurance carriers breached their duty to defend and indemnify the Defendants. . . ."  General Casualty, however, has accepted the defense of the Adolph Lawsuit under a reservation of rights, and the duty to indemnify cannot be determined until after the resolution of the Adolph Lawsuit on the merits.  Accordingly, the Purported CR2A Agreement does not, on its face, apply to General Casualty.

76.    The Purported CR2A Agreement states that "Reed Hein and Brandon Reed represent that their applications for insurance and dealings with the insurance companies have been honest, forthright, and without any material misstatements. . . ."  Notwithstanding the foregoing provision of the Purported CR2A Agreement, Defendants purport to be assigning rights to seek coverage for "personal and advertising injury" from General Casualty despite

**GENERAL CASUALTY'S COMPLAINT FOR REFORMATION AND DECLARATORY RELIEF**- 19

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

1   the fact that Reed Hein and Mr. Reed know they did not purchase that coverage from General

2   Casualty.

3       77.     The Purported CR2A Agreement states that "the insurance carriers' ongoing

4   refusal to defend and indemnify Reed Hein and Brandon Reed is a condition precedent to the

5   terms of this contract."  Because General Casualty has accepted the defense of the Adolph

6   Lawsuit, the condition precedent has not been met.  The Purported CR2A Agreement

7   therefore: (1) does not apply to General Casualty and/or (2) is invalid in its entirety.

8       78.     The Purported CR2A Agreement states: "Reed Hein and Brandon Reed

9   understand that this agreement turns on the viability of an insurance bad faith claim against

10  insurance carrier RSUI based on its refusal to provide a defense for Reed Hein. . . ."  Because

11  the viability of an insurance bad faith claim against RSUI has not yet been determined, the

12  terms of the Purported CR2A Agreement have not been met.  Accordingly, the Purported

13  CR2A Agreement is unenforceable.

14      79.     The Purported CR2A Agreement seeks disgorgement of the fees paid to Reed

15  Hein and/or Defendants by Reed Hein customers based upon Reed Hein's allegedly deceptive

16  consumer practices, along with trebling those damages under the Washington Consumer

17  Protection Act.  The Purported CR2A Agreement does not stipulate to damages for "bodily

18  injury," "property damage," or "personal or advertising injury."

19      80.     The Purported CR2A Agreement requires that Defendants stipulate to each

20  theory of liability and damages proposed by the Adolphs despite General Casualty having

21  agreed to provide Reed Hein and Mr. Reed with a full defense, which would allow them to

22  oppose liability and damages.  Defendants did not seek General Casualty's approval before

23  voluntarily entering into the Purported CR2A Agreement.

24      81.     On December 5, 2022, the Adolphs filed an Unopposed Motion for

25  Preliminary Approval of the [Purported CR2A Agreement] (the "Unopposed Preliminary

26  Approval Motion").  As reflected in the Unopposed Motion for Preliminary Approval, the

**GENERAL CASUALTY'S COMPLAINT FOR**
**REFORMATION AND DECLARATORY RELIEF**- 20

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

1   Purported CR2A Agreement stipulates to a judgment against Defendants in the amount of

2   $630,187,204.  At the time of this Complaint for Reformation and Declaratory Relief, the

3   Court in the Adolph Lawsuit has not approved the Unopposed Preliminary Approval Motion.

4          82.    The fact that the Adolphs and Defendants mediated so quickly, and before any

5   of their insurance carriers had an adequate opportunity to investigate coverage, reflects that

6   either: (1) the Adolphs and Defendants understood that insurance coverage did not apply to

7   the Adolph Lawsuit; or (2) the Adolphs and Defendants desired to fabricate a purported

8   insurance bad faith claim to create a potential basis for the Adolphs to recover money in their

9   lawsuit.

10                           V. <u>CAUSES OF ACTION</u>

11                  COUNT I:    <u>REFORMATION</u>

12         83.    General Casualty hereby incorporates and re-alleges the allegations in

13  Paragraphs 1-82 as if fully set forth herein.

14         84.    In April 2020, General Casualty made it clear that it would offer insurance to

15  Reed Hein only if that insurance did not include coverage for "personal and advertising

16  injury"-related liabilities.

17         85.    The 2020-21 Primary and Umbrella Policies were issued consistent with

18  General Casualty's and Reed Hein's mutual understanding that no "personal and advertising

19  injury" coverage would be provided.  Specifically, those policies included an "Exclusion –

20  Personal and Advertising Injury" Endorsement.

21         86.    The 2021-22 Umbrella Policy was similarly issued consistent with General

22  Casualty's and Reed Hein's mutual understanding that no "personal and advertising injury"

23  coverage would be provided.  Specifically, that policy included an "Exclusion – Personal and

24  Advertising Injury" Endorsement.

25         87.    General Casualty and Reed Hein both understood and intended that the 2021-

26  22 Primary Policy would not include coverage for "personal and advertising injury."  Indeed,

**GENERAL CASUALTY'S COMPLAINT FOR
REFORMATION AND DECLARATORY RELIEF**- 21

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

the "Schedule of Underlying Insurance" of the 2021-22 Umbrella Policy notes that coverage for "personal and advertising injury" is "excluded" under the 2021-22 Primary Policy, and Reed Hein's insurance broker did not request that "personal and advertising injury" be included in the 2021-22 Primary and Umbrella Policies in his February 15, 2021 email to Mr. So. However, a processing error resulted in the "Exclusion – Personal and Advertising Injury" Endorsement being omitted from the 2021-22 Primary Policy.

88.    Because General Casualty and Reed Hein both knew, understood, and intended that the 2021-22 Primary Policy would not provide coverage for "personal and advertising injury," and because a processing error resulted in the "Exclusion – Personal and Advertising Injury" Endorsement being omitted from the 2021-22 Primary Policy, the 2021-22 Primary Policy was issued subject to a mutual mistake.

89.    Accordingly, General Casualty seeks a declaration confirming that the 2021-22 Primary Policy is reformed to include the "Exclusion – Personal and Advertising Injury" Endorsement.

**COUNT II:    DECLARATION OF NO DUTY TO DEFEND OR INDEMNIFY 2020-21 Primary Policy and Both Umbrella Policies**

90.    General Casualty hereby incorporates and re-alleges the allegations in Paragraphs 1-89 as if fully set forth herein.

91.    An actual and justiciable controversy exists between General Casualty and Defendants/the Adolphs regarding the availability of coverage for the claims made in the Adolph Lawsuit under the 2020-21 Primary Policy and both Umbrella Policies.

92.    Coverage A of the 2020-21 Primary Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." In pertinent part, the 2020-21 Primary Policy defines: (1) "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including mental anguish, injury or illness, or emotional distress and/or death

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

1    resulting from these at any time"; and (2) "property damage" to mean: (a) "[p]hysical injury

2    to tangible property"; and (b) "[l]oss of use of tangible property not physically injured. . . ."

3         93.    Coverage A of both Umbrella Policies provides coverage for "the 'ultimate net

4    loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which

5    this insurance applies. . . ."  In pertinent part, the Umbrella Policies define: (1) "bodily injury"

6    to mean "bodily injury, disability, sickness or disease sustained by a person, including death

7    resulting from any these at any time," including "mental anguish or other mental injury

8    resulting from 'bodily injury'"; and (2) "property damage" to mean: (a) "[p]hysical injury to

9    tangible property"; and (b) "[l]oss of use of tangible property not physically injured. . . ."

10        94.    The Adolph Lawsuit does not involve "bodily injury" or "property damage," as

11   those terms are defined in the 2020-21 Primary Policy and both Umbrella Policies.

12   Accordingly, the claims made in the Adolph Lawsuit do not implicate the Insuring

13   Agreements in Coverage A of the 2020-21 Primary Policy and both Umbrella Policies.

14   General Casualty therefore has no duty to defend or indemnify Defendants in connection with

15   the Adolph Lawsuit under Coverage A of the 2020-21 Primary Policy and both Umbrella

16   Policies.

17        95.    The 2020-21 Primary Policy and the Umbrella Policies only apply in the event

18   of an "occurrence," which is defined as "an accident."  The allegations in the Adolph Lawsuit

19   allege non-accidental conduct, thereby not triggering a duty to defend or indemnify

20   Defendants in connection with the Adolph Lawsuit under Coverage A of the 2020-21 Primary

21   Policy or the Umbrella Policies.

22        96.    Coverage for the Adolph Lawsuit, if otherwise triggered, is separately

23   excluded under Coverage A of the 2020-21 Primary Policy and the Umbrella Policies based

24   upon the Expected or Intended Exclusion, the Contractual Liability Exclusion, and/or the

25   Access or Disclosure Exclusion.  General Casualty therefore has no duty to defend or

26   indemnify Reed Hein and Mr. Reed in connection with the claims made against them in the

GENERAL CASUALTY'S COMPLAINT FOR
REFORMATION AND DECLARATORY RELIEF- 23

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

Adolph Lawsuit under the 2020-21 Primary Policy and the Umbrella Policies based upon these exclusions.

97.    Coverage B of the 2020-21 Primary Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." The 2020-21 Primary Policy includes an "Exclusion – Personal and Advertising Injury" Endorsement providing that "Coverage B (Section I) does not apply and none of the references to it in the Coverage Part apply."

98.    Coverage B of both Umbrella Policies provides coverage for "the 'ultimate net loss' in excess of the 'retained limit' because of 'personal and advertising injury' to which this insurance applies…." Both Umbrella Policies include an "Exclusion – Personal and Advertising Injury" Endorsement providing that "Coverage B (Section I) does not apply and none of the references to it in the Coverage Part apply."

99.    Based upon the "Exclusion – Personal and Advertising Injury" Endorsements in the 2020-21 Primary Policy and both Umbrella Policies, Coverage B of those policies does not apply. Accordingly, General Casualty has no duty to defend or indemnify Defendants under Coverage B of the 2020-21 Primary Policy and both Umbrella Policies.

100.    There are other policy provisions that may apply. General Casualty reserves the right to assert additional bases for declaratory judgment under the 2020-21 Primary Policy and both Umbrella Policies.

101.    To the extent the Court confirms that coverage is not available under the General Casualty Policies, General Casualty is entitled to reimbursement of the defense fees/costs it has incurred on Defendants' behalf in the Adolph Lawsuit.

102.    Based on the foregoing, General Casualty is entitled to declaration that it is not obligated to defend or indemnify Reed Hein and Mr. Reed in connection with the Adolph Lawsuit under the 2020-21 Primary Policy and both Umbrella Policies.

GENERAL CASUALTY'S COMPLAINT FOR
REFORMATION AND DECLARATORY RELIEF- 24

LAW OFFICES OF
COZEN O'CONNOR
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

**COUNT III:  <u>DECLARATION OF NO DUTY TO DEFEND OR INDEMNIFY</u>**

**<u>2021-22 Primary Policy</u>**

103.    General Casualty hereby incorporates and re-alleges the allegations in Paragraphs 1-102 as if fully set forth herein.

104.    An actual and justiciable controversy exists between General Casualty and Defendants/the Adolphs regarding the availability of coverage for the claims made in the Adolph Lawsuit under the 2021-22 Primary Policy.

105.    Coverage A of the 2021-22 Primary Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  In pertinent part, the 2021-22 Primary Policy defines: (1) "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including mental anguish, injury or illness, or emotional distress and/or death resulting from these at any time"; and (2) "property damage" to mean: (a) "[p]hysical injury to tangible property"; and (b) "[l]oss of use of tangible property not physically injured…."

106.    The Adolph Lawsuit does not involve "bodily injury" or "property damage," as those terms are defined in the 2021-22 Primary Policy.  Accordingly, the claims made in the Adolph Lawsuit do not implicate the Insuring Agreement in Coverage A of the 2021-22 Primary Policy and General Casualty has no duty to defend or indemnify Defendants in connection with the Adolph Lawsuit under Coverage A of the 2021-22 Primary Policy.

107.    The 2021-22 Primary Policy only applies in the event of an "occurrence," which is defined as "an accident."  The allegations in the Adolph Lawsuit allege non-accidental conduct, thereby not triggering a duty to defend or indemnify Defendants in connection with the Adolph Lawsuit under Coverage A of the 2021-22 Primary Policy.

108.    Coverage for the claims made against Reed Hein and Mr. Reed in the Adolph Lawsuit alternatively is not available under Coverage A of the 2021-22 Primary Policy based upon the Expected or Intended Exclusion, the Contractual Liability Exclusion, and/or the

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

1    Access or Disclosure Exclusion.  General Casualty therefore has no duty to defend or

2    indemnify Reed Hein and Mr. Reed in the Adolph Lawsuit based upon these exclusions.

3        109.    For the reasons explained above, the 2021-22 Primary Policy should be

4    reformed to include the "Exclusion – Personal and Advertising Injury" Endorsement.  If the

5    2021-22 Primary Policy is reformed, General Casualty would have no duty to defend or

6    indemnify Reed Hein and Mr. Reed under Coverage B of the 2021-22 Primary Policy based

7    upon the terms of the "Exclusion – Personal and Advertising Injury" Endorsement.

8        110.    Even if the 2021-22 Primary Policy is not reformed, Coverage B of the 2021-

9    22 Primary Policy provides coverage for "those sums that the insured becomes legally

10    obligated to pay as damages because of 'personal and advertising injury' to which this

11    insurance applies."  The 2021-22 Primary Policy defines "personal and advertising injury" to

12    mean "injury, including consequential 'bodily injury', arising out of one or more of the

13    following offenses:    a. False imprisonment; b. Malicious prosecution; c. The wrongful

14    eviction from, wrongful entry into, or invasion of the right of private occupancy of a room,

15    dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord

16    or lessor; d. Oral or written publication, in any manner, of material that slanders or libels a

17    person or organization or disparages a person's or organization's goods, products or services;

18    e. Oral or written publication, in any manner, of material that violates a person's right of

19    privacy; f. The use of another's advertising idea in your 'advertisement'; or g. Infringement

20    upon another's copyright, trade dress or slogan in your 'advertisement.'"

21        111.    Even if the 2021-22 Primary Policy is not reformed, the Adolph Lawsuit does

22    not allege a "personal or advertising injury," as that term is defined in the 2021-22 Primary

23    Policy.  General Casualty therefore has no duty to defend or indemnify Defendants in

24    connection with the Adolph Lawsuit under Coverage B of the 2021-22 Primary Policy.

25        112.    Even if the 2021-22 Primary Policy is not reformed and it is determined that

26    the Adolph Lawsuit involves a "personal and advertising injury," as that term is defined in the

**GENERAL CASUALTY'S COMPLAINT FOR**
**REFORMATION AND DECLARATORY RELIEF** - 26

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

2021-22 Primary Policy, the 2021-22 Primary Policy provides coverage only for "personal and advertising injury" caused by an offense that takes place during the 2021-22 Primary Policy's policy period – *i.e.*, May 16, 2021 to May 16, 2022.  General Casualty has no duty to defend or indemnify Reed Hein or Mr. Reed in connection with the Adolph Lawsuit under Coverage B of the 2021-22 Primary Policy unless Defendants/the Class proves that one of the offenses enumerated in the 2021-22 Primary Policy's "personal and advertising injury" definition occurred during the 2021-22 Primary Policy's policy period.

113.    Even if the 2021-22 Primary Policy is not reformed and it is determined that the Adolph Lawsuit involves "personal and advertising injury" caused by an offense that occurred during the 2021-22 Primary Policy's policy period, the Knowing Violation Exclusion, the Knowledge of Falsity Exclusion, the Prior Publication Exclusion, the Coverage B Contractual Liability Exclusion, the Breach of Contract Exclusion, the Failure to Conform Exclusion, and/or the Coverage B Access or Disclosure Exclusion bar coverage for that "personal and advertising injury."  General Casualty therefore has no duty to defend or indemnify Defendants in connection with the Adolph Lawsuit under Coverage B of the 2021-22 Primary Policy.

114.    To the extent the Court confirms that coverage is not available under the General Casualty Policies, General Casualty is entitled to reimbursement of the defense fees/costs it has incurred on Defendants' behalf in the Adolph Lawsuit.

**COUNT IV:  <u>DECLARATION THAT THE PURPORTED CR2A AGREEMENT DOES NOT APPLY TO GENERAL CASUALTY AND/OR IS UNENFORCEABLE IN ITS ENTIRETY</u>**

115.    General Casualty hereby incorporates and re-alleges the allegations in Paragraphs 1-114 as if fully set forth herein.

116.    The Purported CR2A Agreement does not identify General Casualty in any way.

**GENERAL CASUALTY'S COMPLAINT FOR REFORMATION AND DECLARATORY RELIEF** - 27

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

117.    By its terms, the Purported CR2A Agreement describes "the Settlement Defendants' various insurance carriers have sent letters refusing to provide a legal defense for or indemnify any of the Settlement Defendants against the claims alleged in the [Adolph] Complaint. . . ." General Casualty has never disclaimed coverage.

118.    The Purported CR2A Agreement further purports that "the insurance carriers breached their duty to defend and indemnify the Defendants. . . ." General Casualty has accepted the defense of the Adolph Lawsuit and is prepared to indemnify for any damage not otherwise excluded from the General Casualty Policies.

119.    The Purported CR2A Agreement states "Reed Hein and Brandon Reed represent that their applications for insurance and dealings with the insurance companies have been honest, forthright, and without any material misstatements. . . ." Defendants, however, purport to be assigning rights to seek coverage for "personal and advertising injury" despite knowing that they did not purchase that coverage from General Casualty.

120.    The Purported CR2A Agreement states "the insurance carriers' ongoing refusal to defend and indemnify Reed Hein and Brandon Reed is a condition precedent to the terms of this contract." Because General Casualty did not refuse to defend, the Purported CR2A Agreement: (1) is not valid as to General Casualty and/or (2) alternatively, this condition precedent to the Purported CR2A Agreement has not been met and the entire agreement is invalid.

121.    The Purported CR2A Agreement states: "Reed Hein and Brandon Reed understand that this agreement turns on the viability of an insurance bad faith claim against insurance carrier RSUI based on its refusal to provide a defense for Reed Hein. . . ." The "viability" of an insurance bad faith claim against RSUI has not yet been established. A condition subsequent to the Purported CR2A Agreement's enforceability therefore has not yet been met.

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

122. Accordingly, General Casualty is entitled to a declaration that the Purported CR2A Agreement either does not apply to General Casualty, or is invalid and unenforceable in its entirety because conditions precedent and/or conditions subsequent to the Purported CR2A Agreement have not been satisfied.

### COUNT V:   DECLARATION OF NO COVERED DAMAGES

123. General Casualty hereby incorporates and re-alleges the allegations in Paragraphs 1-122 as if fully set forth herein.

124. The Purported CR2A Agreement establishes the purported damages based on the full amount of fees paid by Reed Hein clients to Defendants, which fees are thereafter multiplied under the Washington Consumer Protection Act.

125. Because the Adolph Lawsuit does not involve "bodily injury" or "property damage," as those terms are defined in the General Casualty Policies, the Purported CR2A Agreement does not seek damages because of "bodily injury" or "property damage" so as to implicate Coverage A of the General Casualty Policies.

126. Because the General Casualty Policies do not provide coverage for "personal and advertising injury" through their "Exclusion – Personal and Advertising Injury" Endorsements, and/or because the Adolph Lawsuit does not involve covered "personal and advertising injury" under the 2021-22 Primary Policy, the Purported CR2A Agreement does not seek damages because of "personal and advertising injury" so as to implicate Coverage B of the General Casualty Policies.

127. General Casualty is entitled to a declaration that the alleged stipulated damages are not of the nature that are even potentially covered by the General Casualty Policies and, therefore, there can be no coverage for the same.

### COUNT VI:   BREACH OF COOPERATION CLAUSE, NO VOLUNTARY PAYMENT PROVISION, AND TRANSFER OF RIGHTS PROVISION

128. General Casualty hereby incorporates and re-alleges the allegations in Paragraphs 1-127 as if fully set forth herein.

**GENERAL CASUALTY'S COMPLAINT FOR REFORMATION AND DECLARATORY RELIEF**- 29

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

129.    All of the General Casualty Policies contain the following, relevant conditions:

- "You and any other involved insured must: … (3) Cooperate with us in the investigation or settlement of any claim or defense against the 'suit'" …

- "No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."

130.    The General Casualty Policies also include the "Transfer Of Your Rights And Duties Under This Policy" Condition, which provides that "[y]our rights and duties under this policy may not be transferred without our written consent."

131.    The Adolph Lawsuit was filed on October 9, 2021, and Reed Hein and Mr. Reed tendered their request for coverage under the General Casualty Policies on October 11, 2021.

132.    Upon information and belief, Defendants and the Adolphs began negotiations for what ultimately became the Purported CR2A Agreement within weeks, if not days, after the Adolphs filed the Adolph Lawsuit.

133.    The Adolphs and Defendants participated in an initial mediation of this matter on November 23, 2021, barely a month after this matter had been tendered to General Casualty.  Upon information and belief, the Adolphs and Defendants finalized the terms of their clandestine agreement – which eventually became the Purported CR2A Agreement – in or around mid-January 2022.

134.    On March 29, 2022, Brandon Reed, on behalf of Defendants, and the Class attorney, Gregory Albert, executed the documents finalizing the Purported CR2A Agreement.

135.    On April 1, 2022, the Adolphs signed the Purported CR2A Agreement.

136.    Reed Hein and Mr. Reed had a duty to cooperate with General Casualty during General Casualty's investigation of their request for coverage under the General Casualty Policies for the claims made against them in the Adolph Lawsuit.

**GENERAL CASUALTY'S COMPLAINT FOR REFORMATION AND DECLARATORY RELIEF** - 30

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

137.    Although General Casualty never denied coverage for the claims made against Reed Hein and Mr. Reed in the Adolph Lawsuit (and still has not denied coverage for those claims), Reed Hein and Mr. Reed never informed General Casualty that they were mediating with the Adolphs, never asked General Casualty to participate in the November 23, 2021 mediation, never informed General Casualty that a resolution of the Adolph Lawsuit was being negotiated, never asked General Casualty to pay any sums to resolve the Adolph Lawsuit on their behalf, and never contacted General Casualty or sought an update from General Casualty on the status of General Casualty's investigation prior to entering into the Purported CR2A Agreement.

138.    Rather, Reed Hein and Mr. Reed conducted their negotiations with the Adolphs in secret and concealed those negotiations from General Casualty.

139.    Indeed, Paragraph 11 of the Purported CR2A Agreement prohibited Defendants from advising their insurers of the secret deal.

140.    Given the amount for which the Adolphs and Defendants ultimately agreed to resolve this matter (allegedly in excess of $630,000,000), it is apparent that the Adolphs and Defendants did not want General Casualty to participate in the matter because the $1,000,000 limit of the 2021-22 Primary Policy hardly makes a dent in the overall damages the Adolphs sought.

141.    Instead, Defendants and the Adolphs set about on a plan to negotiate the Purported CR2A Agreement, which, if successful, would allow the Class to attempt to recover hundreds of millions of dollars at the expense of Reed Hein's insurers, including General Casualty.

142.    Reed Hein and Mr. Reed breached their duty to cooperate under the General Casualty Policies by secretly entering into the Purported CR2A Agreement without communicating with General Casualty regarding the same.

**GENERAL CASUALTY'S COMPLAINT FOR**
**REFORMATION AND DECLARATORY RELIEF**- 31

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

143.     Reed Hein and Mr. Reed invalidated any potential coverage under the General Casualty Policies by voluntarily assuming obligations without General Casualty's consent.

144.     Reed Hein and Mr. Reed breached the General Casualty Policies' "Transfer Of Your Rights And Duties Under This Policy" Condition by assigning their rights under those policies without General Casualty's consent.

145.     Accordingly, General Casualty seeks a declaration that Defendants have invalidated any potential right to coverage under the General Casualty Policies by virtue of their breaches of the Policies' cooperation, voluntary payments, and/or anti-assignment provisions.

146.     To the extent that the Adolphs and/or the Class contend they have the assignment from Defendants and therefore stand in the shoes of Defendants for the purposes of insurance coverage, General Casualty seeks a declaration that the General Casualty Policies' cooperation, voluntary payments, and/or anti-assignment provisions have been breached, thereby invalidating any coverage potentially available to the Adolphs and the Class.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff General Casualty respectfully requests:

1.     A declaration confirming that General Casualty can reform the 2021-22 Primary Policy to include the intended "Exclusion – Personal and Advertising Injury" Endorsement; and/or

2.     A declaration that coverage is not available for the claims made against Defendants in the Adolph Lawsuit under the 2020-21 Primary Policy and the Umbrella Policies; and/or

3.     A declaration that coverage is not available for the claims made against Defendants in the Adolph Lawsuit under the 2021-22 Primary Policy regardless of whether it is reformed; and/or

**GENERAL CASUALTY'S COMPLAINT FOR REFORMATION AND DECLARATORY RELIEF**- 32

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000

4.     A declaration that the Purported CR2A Agreement is unenforceable as to General Casualty and/or invalid in its entirety; and/or

5.     A declaration that the damages contemplated by the Purported CR2A Agreement are not covered by the General Casualty Policies; and/or

6.     A declaration confirming that Defendants' breaches of the General Casualty Policies' cooperation, voluntary payments and/or anti-assignment provisions invalidate any potential coverage for Defendants, the Adolphs, and/or the Class; and/or

7.     A declaration otherwise establishing General Casualty's duties and responsibilities under the General Casualty Policies; and/or

8.     An order requiring that Defendants and/or the Adolphs and/or the Class to reimburse General Casualty for all fees/costs General Casualty incurred defending the Adolph Lawsuit;

9.     For all costs, attorneys' fees, and disbursements;

10.     For all other costs and fees as permitted by law; and

11.     For such other and further relief that this Court may deem just and proper.

DATED this 16th day of May, 2023.

COZEN O'CONNOR


By     *s/ Kevin A. Michael*
Kevin A. Michael, WSBA No. 36976

COZEN O'CONNOR
999 Third Avenue, Suite 1900
Seattle, Washington  98104
Telephone: 206.340.1000
Fax:  206.621.8783
Email  kmichael@cozen.com
Attorneys for Plaintiff General Casualty Company of Wisconsin.

LAW OFFICES OF
**COZEN O'CONNOR**
A PROFESSIONAL CORPORATION
999 THIRD AVENUE, SUITE 1900
SEATTLE, WASHINGTON 98104-4019
(206) 340-1000