THE HONORABLE TIFFANY M. CARTWRIGHT

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| GENERAL CASUALTY COMPANY OF WISCONSIN, a Wisconsin corporation, | No. 2:23-cv-00725-TMC |
| Plaintiff/Counterclaim Defendant, | **COUNTERCLAIM AND THIRD-PARTY PLAINTIFFS BRIAN AND KERRI ADOLPH'S MOTION FOR SUMMARY JUDGMENT RE: BAD FAITH, INSURANCE FAIR CONDUCT ACT, AND WASHINGTON CONSUMER PROTECTION ACT CLAIMS** |
| v. | |
| REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, a Washington limited liability company; MAKAYMAX INC., a Washington corporation; BRANDON REED, individually; BRIAN and KERRI ADOLPH, a married couple, | |
| Defendants/Counterclaim and Third Party Plaintiffs, | **NOTED FOR HEARING: DECEMBER 22, 2025** |
| v. | |
| RSUI GROUP, INC., a Georgia corporation; and RSUI INDEMNITY COMPANY, INC., a New Hampshire corporation, | |
| Third Party Defendants. | |

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
– Page 1

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## I.     INTRODUCTION

Counterclaim and Third-Party Plaintiffs and class representatives Brian and Kerri Adolph move for summary judgment on their assigned breach of contract, insurance bad faith, Insurance Fair Conduct Act ("IFCA"), and Washington Consumer Protection Act ("CPA") claims against General Casualty Company of Wisconsin and RSUI Indemnity Company (collectively, the "Insurers.")

These claims arise from the Insurers' indefensible breaches of their duties to defend a proposed class action lawsuit on behalf of over 32,000 customers (the "Underlying Lawsuit") against their insureds:  a company named Reed Hein & Associates and its CEO and director, Brandon Reed (collectively, the "Insureds").  Washington law requires insurers to ***promptly*** provide a defense when their insureds tender a claim.  General Casualty failed to provide its Insureds with a decision on their defense tender for ***over 11 months***.

To effectuate prompt provision of a defense, Washington law limits insurers' determination of their duty to defend to the eight corners of the insurance policy's plain language and the complaint's allegations.  General Casualty reviewed a copy of the policy at issue within a month of tender.  Rather than giving the Insureds the benefit of any doubt then, it continued delaying its decision.  Within three months, it obtained a certification that the policy was, in fact, the one issued to the Insureds.  By then, there was no mystery as to what the policy actually said.  Indeed, General Casualty obtained an opinion regarding its duty to defend from opposing counsel in this case, Kevin Michael.

Yet for over eight more months General Casualty abandoned its Insureds to the existential threat of a massive class action lawsuit. It did so because it wanted to continue to investigate facts supporting a "missing" policy endorsement that it believed might eliminate any possibility of coverage for the Underlying Lawsuit and potential grounds for reforming the policy to exclude coverage.  Washington law did not impose a binary choice between accepting or denying the defense based on the eight corners.  Washington provided a third, "win-win"

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
− Page 2

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

option for General Casualty and its Insureds:  agreeing to fund their defense while reserving the right to investigate and make a coverage decision based on extrinsic facts and evidence.  Instead, General Casualty chose a fourth, "house wins" option:  avoiding paying defense costs while investigating extrinsic facts to support excluding coverage for the Underlying Lawsuit.  Its self-dealing was bad faith as a matter of Washington law.

In stark contrast to General Casualty, RSUI restricted its determination of its duty to defend to the eight corners and denied coverage in little over a month.  However, whether the policy provisions it relied on precluded coverage was unclear at best.  Washington law required RSUI to give the Insureds the benefit of that doubt and fund the defense under a reservation of rights until a court definitively resolved its duty to defend.  Instead, like General Casualty, RSUI chose sparing its financial bottom line over funding its Insureds' defense.  This, too, was textbook bad faith as a matter of Washington law.

With both Insurers shirking their duty to fund a defense, the Insureds were forced to agree to entry of a judgment in favor of the Adolphs and the class of tens of thousands they represent.  After reviewing the settlement and the stipulated judgment, this Court specifically found that the class action settlement was reasonable and not the product of bad faith, collusion, or fraud.  It entered judgment against the Insureds for $630,187,204.  Now, the Insurers face the consequences Washington law imposes for their pennywise, pound-foolish decision to sit on the sidelines and abandon their Insureds to that fate.

## II.    STATEMENT OF FACTS

### A.    For Almost a Year General Casualty Avoided Paying to Defend its Insureds in Order to Build Its Case for a Coverage Denial

General Casualty issued four liability insurance policies to the Insureds:  primary and umbrella policies effective from May 16, 2020 through May 16, 2021 (the "Year One" policies") and primary and umbrella policies effective from May 16, 2021 through May 16, 2022 (the "Year Two" policies).  Declaration of Christopher E. Love ("Love Decl.") Exhibit 1 at 17824.

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
− Page 3



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

On October 9, 2021, the Adolphs filed the Underlying Lawsuit against the Insureds (collectively, the "Underlying Parties"). Love Decl. Ex. 2 at 31. On October 11, 2021, the Insureds tendered the Underlying Lawsuit to General Casualty through their insurance broker, Phillip Gajic. *Id.* Ex. 3; Ex. 4 at 52. The Insureds' tender provided General Casualty with the complaint and the Year Two primary policy. *Id.* Ex. 3; Ex. 4 at 18-19; Ex. 5 at 20769.

On October 18, 2021, the Underlying Lawsuit was assigned to claims adjuster Kim Kotson with the subject line "[c]overage appears very questionable in this one." *Id.* Ex. 6. Within four hours of the assignment, Ms. Kotson commented to her supervisor that the Insureds were "a real piece of work" and that she "wouldn't look to this team for help." *Id.* Ex. 4 at 48; Ex. 6; Ex. 7 at 11.

Two hours after belittling the Insureds, Ms. Kotson acknowledged their tender. *Id.* Ex. 4 at 52; Ex. 5. Within those few hours, Ms. Kotson had compared the allegations of the lawsuit to the plain language of the Year Two primary policy. *Id.* Ex. 4 at 53-54. Ms. Kotson advised the Insureds that she did not "think there will be coverage" but was "having a coverage opinion done" and would "let [the Insureds] know." *Id.* Ex. 5.

Three days later, on October 21, 2021, Ms. Kotson requested "a coverage opinion whether our duty to defend is triggered and if this might be covered" from General Casualty's legal department. *Id.* Ex. 8 at 20775. Her request highlighted: (1) the Adolphs sought disgorgement of "over $14,000" in fees paid to Reed Hein; (2) the Underlying Lawsuit was a "class action lawsuit" that "could involve thousands of potential consumers like the Adolphs"; (3) a recent "$2.6M" award against Reed Hein "could open the flood gates to more of these cases being filed"; and (4) Reed Hein was "still in business." *Id.* at 20775-20776. Her supervisor, Mitchell Nelson, admitted that General Casualty recognized from this information that Reed Hein faced significant risk "in terms of dollar exposure." *Id.* Ex. 7 at 24-25. The coverage opinion was assigned to an in-house counsel, Aaron Mandel. *Id.* Ex. 9 at 10056.

By November 18, 2021, Mr. Mandel had copies of all four insurance policies. *Id.* Ex. 10 at 40-42. On its face, the Year Two primary policy contained a provision providing coverage

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
− Page 4



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

for "Personal and Advertising Injury." Dkt. 1-1 at 359, 497. As General Casualty ultimately informed the Insureds, it was "unclear" whether some allegations in the Underlying Lawsuit qualified as covered injuries under those provisions. *Id.* Ex. 1 at 17833.

Despite recognizing the Insureds' significant financial exposure from the Underlying Lawsuit, however, Mr. Mandel did not attempt to determine General Casualty's duty to defend, much less provide the Insureds with a decision. *Id.* Ex. 10 at 47-49, 55-57. Instead, he observed that, unlike the other three policies, the Year Two primary policy "did not contain an endorsement that excluded personal and advertising injury liability coverage." *Id.* at 53. He concluded at the time that "the intent was for personal and advertising injury coverage to be eliminated altogether on the Year [Two] policy." *Id.* at 60, 64. He thought that this exclusion was "missing" from the policy. *Id.* at 44. And he "wanted to make sure that [he] had correct copies of the policies" before making a decision on the defense tender. *Id.* at 57.

Confirming that the policy had been issued with this coverage exclusion was "important" to him because "if there was an exclusion that eliminated personal and advertising injury altogether, that would have ***eliminated the possibility*** that ***that coverage even could apply*** to this." *Id.* at 55 (emphasis added). He also wanted to "determine if the exclusion that eliminated all personal and advertising injury coverage under the Year [Two] primary policy had been inadvertently omitted from the policy" because "if there was evidence in underwriting documents . . . that it was supposed to be on the policy . . . it may have been necessary to seek judicial reformation of that policy" to exclude coverage. *Id.* at 114. Rather than giving the Insureds any benefit of the doubt regarding the policies, he decided to continue investigating by seeking "underwriting materials related to the policies." *Id.* at 48.

Meanwhile, the flood of litigation predicted by Ms. Kotson came to pass. On December 1, 2021, Reed Hein tendered 46 additional arbitration demands "for the same allegations arising in the [Underlying] Lawsuit." *Id.* Ex. 11 at 21192. She noted that General Casualty still had "not responded to the lawsuit." *Id.*

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
− Page 5



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

On December 15, 2021, General Casualty retained Kevin Michael, the Adolphs' opposing counsel in this case, as coverage counsel to provide a coverage analysis under the four insurance policies and advice on reformation. *Id.* Ex. 12 at 6049; Ex. 13 at 27-28. On January 16 or January 17, 2022, Mr. Michael completed his coverage analysis based on the complaint and the insurance policies' plain language. *Id.* Ex. 13 at 203-204. He then provided his coverage opinion to General Casualty, with which Mr. Mandel agreed. *Id.* That same month, General Casualty obtained from the underwriter a certification that the policies were true and correct copies of the policies issued to the Insureds. *Id.* Ex. 14 at 16-18, 30-31; Ex. 15 at 1124-1125; Ex. 16 at 1123.

Despite having obtained accurate copies of the policies issued to the Insureds and receiving the coverage opinion it requested, General Casualty did not provide the Insureds with a decision on the defense tender in January 2022. At that time, General Casualty was unwilling to fund the Insureds' defense while it continued exploring "judicial confirmation" of a missing coverage exclusion that might eliminate any conceivable coverage for the Claim. *Id.* Ex. 13 at 206.

By July 21, 2022, General Casualty had received all additional, extraneous materials it had requested from the underwriter. *Id.* Ex. 10 at 137-38; Ex. 17 at 59-60. By this point, the Insureds had inquired with General Casualty multiple times regarding its tender. Ex. 18 at 16807; *Id.* Ex. 19. A new claims adjuster for the Underlying Lawsuit also had informed Mr. Michael that he anticipated questions "from my manager and other about why this project . . . has taken so long." *Id.* Ex. 18 at 16808; Ex. 20 at 19544. Rather than providing the Insureds with a decision, however, General Casualty spent the next two months revising multiple drafts of a coverage position letter. *Id.* Ex. 13 at 146-47, 153-54, 171, 187-88.

In August 2022 Mr. Mandel suddenly instructed Mr. Michael to revise the draft coverage position letter to accept the defense tender under a reservation of rights. *Id.* Ex. 13 at 152. According to Mr. Michael, the only reason for this "fundamental shift" in General Casualty's willingness to fund its Insureds' defense occurred because General Casualty feared

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
− Page 6



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

the "risk" of "things like" liability under IFCA, "treble damages[,] and coverage by estoppel." *Id.* at 150, 153.

Nearly a year after the defense tender, on September 22, 2022, General Casualty provided its Insureds with a decision. *Id.* Ex. 1. General Casualty agreed to defend and reimburse any defense costs paid to date. *Id.* at 17824, 17836. However, General Casualty also reserved the right to deny coverage, withdraw from defending the Insureds, sue the Insureds to obtain a judgment declaring no coverage, and seek reimbursement from the Insureds of any defense costs paid if subsequent information confirmed it had no duty to defend. *Id.* at 17836.

General Casualty provided its decision on the defense tender four days before the expert report disclosure deadline and almost one month before the discovery cutoff in the Underlying Lawsuit. *Id.* Ex. 21 at 130. According to Reed Hein's defense counsel, Jack Lovejoy, an attorney experienced in defending class actions, this was insufficient time to conduct discovery, prepare expert reports, and otherwise defend a proposed class action like the Underlying Lawsuit. *Id.* at 12, 101, 130. According to Mr. Lovejoy, General Casualty's highly conditional offer after 11 months to defend the Underlying Lawsuit was "too little, too late." *Id.* at 130-31.

**B.    RSUI Denied Coverage for the Underlying Lawsuit in Little Over a Month**

RSUI issued two claims-made directors and officers liability insurance policies to the Insureds with effective dates of May 16, 2020 to May 16, 2021 (the "RSUI Policy") and May 16, 2021 to May 16, 2022 (the "Second RSUI Policy"). *Id.* Ex. 22 at 1.

In April 2021, two other lawsuits were filed against the Insureds. *Id.* at 1. On August 19, 2021, the Insureds tendered those lawsuits to RSUI. *Id.* On September 15, 2021, RSUI denied coverage. *Id.* RSUI based its denial on three grounds: (1) the Insureds did not tender the lawsuits until 90 days after the RSUI Policy expired, (2) the lawsuits were filed before the Second RSUI Policy period began, and (3) a "prior acts" endorsement excluded coverage. *Id.* at 2-3.

On November 29, 2021, the Insureds tendered the Underlying Lawsuit to RSUI. *Id.* Ex. 23. RSUI assigned the Underlying Lawsuit to claims adjuster Phillip Krajec. Ex. 24 at 66. Mr.

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
– Page 7

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Krajec limited his coverage determination to the two insurance policies, the complaint, and his file regarding the two earlier lawsuits. *Id.* at 72. He concluded that the Underlying Lawsuit was "interrelated with" the two previous lawsuits and constituted a "single claim, subject to the same policy conditions, exclusions, etc." *Id.* at 72.

On January 4, 2022, RSUI denied coverage. *Id.* Ex. 25. RSUI represented that because the Underlying Lawsuit "arises from the same or interrelated wrongful acts alleged in the earlier suits, we will consider them a single claim." *Id.* It denied coverage by "incorporating . . . our September 15, 2021 disclaimer letter." *Id.*

**C.     The Insurers' Failure to Fund the Defense Forced the Insureds to Agree to Entry of a Stipulated Judgment Against Them**

The Insurers abandoned their Insureds to fund their own defense out of their own threadbare pockets. *Id.* Ex. 21 at 114-115; Ex. 26 at 162. At the time the Underlying Lawsuit was filed, Reed Hein had approximately $150,000. Ex. 21 at 100-101. According to Mr. Lovejoy, Reed Hein risked paying damages to a class of approximately 40,000 people in the Underlying Lawsuit. *Id.* at 98-99. However, Reed Hein's $150,000 was insufficient to defend a proposed class action like the Underlying Lawsuit through "the precertification discovery phase," much less defend through trial or pay a potential judgment in the case. *Id.* at 12, 101-102.

Similarly, Brandon Reed's defense attorney and a Colonel in the United States Army, Daniel Bugbee, testified that Mr. Reed lacked funds to pay a five-figure judgment without liquidating his assets and could not pay a six-figure judgment at all. *Id.* Ex. 26 at 8, 24, 92-93, 156.

Lacking sufficient funds to defend themselves or pay a potential judgment, on October 18, 2021, Colonel Bugbee and Mr. Lovejoy proposed a settlement to the Adolphs' counsel. *Id.* Ex. 21 at 37-38. Specifically, they disclosed Reed Hein's and Mr. Reed's financial information and assets and proposed a class settlement for Reed Hein's remaining $150,000. *Id.* Ex. 27. The Adolphs rejected it. *Id.*

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
− Page 8



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

As Mr. Lovejoy attested, the Underlying Lawsuit was "a difficult case to resolve, given the . . . limited funds from Reed Hein and . . . no, apparently available insurance." *Id.* Ex. 21 at 105. On November 23, 2021, the Underlying Parties mediated with the Honorable Laura Inveen to get "another set . . . of neutral eyes" to "vet the possible settlement terms with a[n] extremely qualified mediator." *Id.* at 105-106. Although unable to reach a settlement at the time, the Underlying Parties continued their arms-length negotiations of potential settlement terms with Judge Inveen, including the amount of a stipulated judgment. *Id.* at 108, 112-113. Using Reed Hein's customer and payment information, the parties arrived at "the total amount that was paid by the members of the class." *Id.* Ex. 26 at 176-177. As Colonel Bugbee explained, the Insureds were forced to agree to that amount because they were "out of funds to defend" and "[i]f we stopped defending and [a] default was taken, this would be the number that would have been included in the CR55 hearing." *Id.* at 177-178.

Ultimately, between March 29, 2022, and April 12, 2022, the Underlying Parties executed a settlement agreement. *Id.* Ex. 28 at 2, 11. The Insureds agreed to entry of a stipulated judgment in favor of the Adolphs and a proposed class. *Id.* at 4. The Insureds also assigned "all rights to claims for breach of insurance contract . . . and any other potential claims against their insurers" including but "not limited to all insurance policies issued by RSUI and any other insurers to any of the [Insureds]" to the Adolphs individually and as class representatives. *Id.* at 5. In exchange, the Insureds received a covenant not to execute the judgment against them. *Id.* at 4.

On May 9, 2023, the Adolphs filed a notice of a fairness hearing seeking final approval of the settlement. *Id.* Ex. 29 at 4. The next day, they moved for final approval. *Id.* Their motion requested a determination of whether the settlement was reasonable, fair, adequate, and not the product of collusion. *Id.* Ex. 30 at 11, 14-15.

In previously granting preliminary approval of the settlement, the Court already had considered voluminous submissions exhaustively detailing (1) the Insureds' lack of funds and assets; (2) the Underlying Lawsuit's history; the settlement negotiations; and (3) the data and

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
− Page 9



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

method for calculating the judgment amount. *Id.* Ex. 31 3-4, 16-22. On May 19, 2023, after considering itself fully advised, the Court entered an order granting final approval of the class settlement. *Id.* Ex. 32 at 1-2. The Court also considered "insurance bad faith claims under Washington law as described in *Rushforth Construction Co, Inc. v. Wesco Ins. Co.*, No. *C17-1063*, 2018 WL 1610222 (W.D.W.A. 2018) and *Truck Ins. Exch. v. VanPort Homes*, Inc., 58 P.3d 276 (2002)." *Id.* at 2. And it considered "the posture of this litigation, the value of the assigned claims, and the risks and benefits to the parties involved in both settlement of these claims and continuation of the litigation." *Id.* The Court found that the settlement was "entered into after extensive arm's length negotiations by experienced counsel," "was not the product of collusion among the negotiating parties, and was "fair, reasonable, and adequate." *Id.* It entered a judgment for $630,187,204 in favor of the settlement class against the Insureds. *Id.* Ex. 33 at 8. The same day, General Casualty filed this lawsuit. Dkt. 1.

**III.          EVIDENCE RELIED UPON**

The supporting Declaration of Christopher E. Love, as well as the existing file on record in this matter.

**IV.          ARGUMENT**

### A.    Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Once this initial burden is met, the non-moving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To defeat summary judgment, there must be "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Questions of fact may be determined on summary judgment as a matter of law where reasonable minds could reach but one conclusion. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485 (2003). A fact is "material" if it could affect the case's outcome. *Anderson*, 477 U.S. at 248. Facts that are "irrelevant or unnecessary" under the applicable substantive law are not material. *Id.*

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
– Page 10



**B.    Legal Standards for Insurer Bad Faith**

"An action for bad faith handling of an insurance claim sounds in tort." *Safeco v. Butler*, 118 Wn.2d 383, 389 (1992). A plaintiff must establish a duty, a breach of that duty, and damages proximately caused by any breach of that duty. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485 (2003).

"Insurers have a statutory and common law duty to act in good faith toward an insured." *Griffin v. Allstate*, 108 Wn. App. 133, 143 (2001); RCW 48.01.030. The insurer's conduct need not be "intentional bad faith or fraud" to constitute bad faith. *Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 114 Wn.2d 907, 916-17 (1990). Rather, all the insured must show is that the insurer's actions were unreasonable, frivolous, or unfounded. *Smith*, 150 Wn.2d at 484. An insurer acts in bad faith when it does not give equal consideration to its insured's interests. *Coventry Assocs. v. Am. State Ins. Co.*, 136 Wn.2d 269, 281 (1998). Violations of Washington insurance regulations also provide "'evidence of bad faith.'" *Rushforth*, 2018 WL 1610222, at 5 n.7.

**C.    Legal Standards for Insurers' Duty to Defend**

"Security and peace of mind are principal benefits of insurance." *Nat'l. Sur. Corp v. Immunex Corp.*, 176 Wn.2d 872, 878 (2013). This "bargained-for peace of mind comes from the assurance that the insured will receive ***prompt*** payment of money in times of need.'" *Immunex*, 176 Wn.2d at 878 (internal quotations omitted) (emphasis added). Washington insurance law repeatedly reinforces the common law requirement that insurers must promptly accept or deny payment of benefits under an insurance policy. WAC 284-30-330 declares numerous "unfair or deceptive acts of practices of the insurer in the business of insurance." *See* WAC 284-30-330(2) ("[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies"); 330(3) ("[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies"); 330(5) ("[f]ailing to affirm or deny coverage of claims within a reasonable time after fully completed proof of loss documentation has been submitted"); 330(13)

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
– Page 11


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

("[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim"; *see also* WAC 284-30-370 ("Every insurer must complete its investigation of a claim within thirty days after notification of claim, unless the investigation cannot reasonably be completed within that time.").

This prompt payment requirement applies with particular force to an insurer's duty to defend. "An insurer refusing to defend exposes its insured to business failure and bankruptcy." *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wn.2d 751, 765 (2002). Thus, "[t]he defense may be of greater benefit to the insured than the indemnity." *Truck*, 147 Wn.2d at 765. Accordingly, an insurer's duty to defend "includes the obligation to provide a '***prompt*** and proper defense.'" *Rushforth*, 2018 WL 1610222, at *2 (emphasis added) (quoting *N.H. Indem. Co., Inc. v. Budget Rent-A-Car Sys., Inc.,* 148 Wn.2d 929, 938 (2003)); *Truck*, 147 Wn.2d at 765 ("The defense must be prompt and timely.").

"The duty to defend arises whenever a lawsuit is filed against the insured alleging facts and circumstances arguably covered by the policy." *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 561 (1998). Because "Washington insurance law . . . is structured to incentivize an insurer's prompt defense," *Rushforth*, 2018 WL 1610222, at *4 n.6, Washington law carefully circumscribes the permissible scope of an insurer's investigation in determining whether its duty to defend has arisen. Unlike fact and evidentiary based determinations like indemnification or contract reformation, the duty to defend is "based on the *potential for liability*." *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52 (2007) (internal quotations omitted) (emphasis in original). Thus, "after a tender is made, '[t]he duty to defend generally is determined from the 'eight corners' of the insurance contract and the underlying complaint.'" *Alaska Airlines, Inc. v. Endurance Am. Ins. Co.*, 2022 WL 2982800, at *5 (W.D. Wash. July 28, 2022) (quoting *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 803 (2014)).

"An insurer has a duty to defend when a complaint against the insured, construed liberally, alleges facts which, if proven, impose liability upon the insured within the policy's coverage." *Woo*, 161 Wn.2d at 52-53 (internal quotations omitted). "An insurer is not relieved

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
− Page 12



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

of its duty to defend unless the claim alleged in the complaint is clearly not covered by the policy." *Id.* at 53 (internal quotations omitted). "Moreover, if a complaint is ambiguous, a court will construe it liberally in favor of triggering the insurer's duty to defend." *Id.* (internal quotations omitted). "In sum, the duty to defend is triggered if the insurance policy *conceivably covers* the allegations in the complaint . . . ." *Id.* (emphasis in original). If there is any reasonable interpretation of the "alleged facts or the law that could result in coverage, the insurer **must** defend." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 413 (2010) (emphasis added).

After performing this narrow inquiry into the eight corners of the complaint and the insurance policy's plain language, "insurers may not desert policyholders and allow them to incur substantial legal costs while waiting for an indemnity determination" or other coverage determinations dependent on extrinsic facts. *Truck*, 147 Wn.2d at 761. This is because "[t]he duty to defend . . . is **antecedent to** and **independent of** the duty to indemnify." *Singh v. Zurich Am. Ins. Co.*, 5 Wn. App. 2d 739, 750 (2018) (internal quotations omitted) (emphasis added). Instead, under Washington law insurers have "three options" for responding to an insured's defense tender. *Becker v. TIG Ins. Co.*, 649 F. Supp. 3d 1065, 1078 (W.D. Wash. 2022). Insurers may "defend, defend under a reservation of rights, or deny its duty to defend." *Becker*, 649 F. Supp. 3d at 1078. The insured must receive any "benefit of the doubt" in favor of coverage. *Woo*, 161 Wn.2d at 60.

Requiring insurers who, after comparing a complaint's allegations with insurance policy language, wish to continue investigating outside the eight corners to resolve any questions they have regarding coverage to defend under a reservation of rights effectuates Washington's requirement that insurers give equal consideration to their insured's interests. When the insurer defends under a reservation of rights, "the insured receives the defense promised and, if coverage is found not to exist, the insurer will not be obligated to pay." *Truck*, 147 Wn.2d at 761 (internal quotations omitted). "Although the insurer must bear the expense of defending the insured, by doing so under a reservation of rights and seeking a declaratory judgment, the

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
– Page 13



insurer avoids breaching its duty to defend and incurring the potentially greater expense of defending itself from a claim of breach." *Woo*, 161 Wn.2d at 54.

**D.    General Casualty's 11-Month Failure to Accept, Deny, or Accept under a Reservation of Rights the Defense Tender of the Underlying Lawsuit Unreasonably Breached Its Duty to Defend as a Matter of Law**

Under Washington law, "an insurer may breach its duty to defend by failing to respond to an insured's tender in a reasonably timely matter." *Rushforth*, 2018 WL 1610222, at \*2.  In such cases, the insurer's delayed response to a defense tender is a "constructive denial" of the duty to defend.  *Id.*  For example, in *Truck* the insurer breached the duty to defend by delaying thirteen months between the tender of a claim and the issuance of a denial letter. *See Truck*. 147 Wn.2d at 764.  Delays of five, ten, and fourteen months also have breached the insurer's duty to defend.  *See Ledcor Industries (USA), Inc. v. Mutual of Enumclaw Ins. Co.*, 150 Wn .App. 1, 9 (2009) (fourteen); *Rushforth*, 2018 WL 1610222, at \*2-3 (ten); *2FL Enterprises, LLC v. Houston Specialty Insurance Co.*, 2018 WL 706406, at \*1-2, \*5 (W.D. Wash., Feb. 5, 2018)  (five-month delay that was "unfounded and unreasonable" breached duty).  Any subsequent judicial determination regarding whether General Casualty's policies covered the *Adolph* lawsuit is immaterial. "In the third-party context, an insurer can act in bad faith even where coverage is later determined to be unavailable.  *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 131 (2008); *see also Kirk,* 134 Wn.2d 558 (finding refusal to defend third-party claim in bad faith actionable even though insured's claim was not covered); *Butler,* 118 Wn.2d at 383, 406 (holding insurer's delays in providing reservation of rights defense could constitute bad faith despite lack of coverage); *Tank,* 105 Wn.2d 381 (recognizing failure to defend in third-party reservation of rights case constituted bad faith even though insured was not covered); *Alaska Airlines, Inc.*, 2022 WL 2982800, at \*5 (courts consider whether

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
− Page 14



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

insurer's alleged bad faith action "was unreasonable when it occurred, and not whether later developments could have indicated the insurer's decision.").

*Rushforth* is instructive. There, the insurer failed to provide a decision on the insured's defense tender for 10 months. *Rushforth*, 2018 WL 1610222, at *3. The Court concluded that this delay constituted a "constructive denial" of a defense that breached the insurer's duty to "provide a prompt and proper defense." *Id.* at *2-3.

The insurer failed to provide any "reasonable basis for its delay . . . ." *Id.* at *5. Moreover, despite receiving "four letters inquiring about the status of the claim" from its insured, the insurer still did not provide its decision. *Id.* Rather, it spent its time internally revising a draft reservation of rights letter. The insurer's actions "overemphasized its own interest when it ignored [the insured's] tender and repeated inquiries, failing to prioritize its insured's interests." *Id.* Thus, the insurer "acted in bad faith as a matter of law." *Id.*

Here, General Casualty delayed providing the Insureds with a decision on their defense tender for over 11 months. Like the insurer in *Rushforth*, it lacked any reasonable basis for the delay. By November 2021, Mr. Mandel possessed copies of the insurance policies. By December 2021, Mr. Michael possessed copies. At the very latest, by January 2022 General Casualty had obtained certification that the Year Two primary policy was the policy issued to the Insureds. At any of those points, General Casualty possessed the material information for determining its duty to defend. Indeed, it is undisputed that Mr. Michael completed that analysis by mid-January 2022.

Further like the insurer in *Rushforth*, however, for months General Casualty ignored the Insureds' repeated inquiries regarding their defense tender. Between October 2021 and July 2022, it delayed providing a decision on its duty to defend while it investigated extrinsic underwriting materials. Worse, General Casualty continued investigating to confirm the existence of a coverage exclusion that it believed would eliminate any possibility of coverage and, failing that, to discover facts to support judicial reformation of



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

the policy to exclude such coverage. Washington law prohibited General Casualty from considering extrinsic facts to support potential grounds for denying its duty to defend. *Woo*, 161 Wn.2d at 53; *see also 2FL*, 2018 WL at \*4-5 ("most egregious" evidence of bad faith was "use of extrinsic evidence" from public website to support a denial of defense, a "violation of *Woo*"). Washington law also prohibited General Casualty from allowing the Insureds to incur defense costs while awaiting determinations on other coverage issues dependent on extrinsic facts such as indemnity or reformation. *Truck*, 147 Wn.2d at 761. And, even after obtaining all extrinsic evidence it sought, for three more months General Casualty continued to delay while it internally revised its coverage position letter. Even then, its decision came four days before the expert report disclosure deadline and approximately one month before the discovery cutoff. Any opportunity to meaningfully fund the defense of the Underlying Lawsuit had long since passed.

Washington law provided with an option for General Casualty to continue its investigation of its duty to defend outside the eight corners: funding the Insureds' defense under a reservation of rights. Instead, it invented a self-serving fourth option prohibited by Washington law: refusing to fund its Insureds' defense while it continued to seek evidence potentially supporting a denial of its duty. General Casualty's misconduct elevated its interests over those of the Insureds and were unreasonable, frivolous, and bad faith as a matter of law.

### E. RSUI Unreasonably Breached Its Duty to Defend the Insureds

Unlike General Casualty, RSUI limited its determination to the eight corners. Nonetheless, RSUI also breached its duty to defend under the RSUI Policy because (1) RSUI's notice of the Underlying Lawsuit was conceivably timely under that "related claims" provision and (2) the "prior acts" exclusion did not clearly exclude coverage.

1.   Notice conceivably was timely under the "related claims" provision

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
– Page 16



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

First, RSUI's notice of the Underlying Lawsuit conceivably was timely under the RSUI Policy's plain language. Courts construing "the language of an insurance policy . . . give it the same construction that an average person purchasing insurance would give the contract." *McLaughlin v. Travelers Commercial Ins. Co.*, 196 Wn.2d 631, 641–42 (2020) (internal quotation omitted). Terms and provisions "will be deemed ambiguous if [they are] susceptible to more than one reasonable interpretation." *McLaughlin*, 196 Wn.2d at 642 (internal quotation omitted). "[A]ny 'legal ambiguity' must be resolved in favor of the insured." *Id.* at 642 (internal quotation omitted).

The RSUI Policy contained a "related claims" provision deeming all claims arising from the same or similar facts a single claim "for all purposes":

> ***All Claims*** based on, arising out of, directly or indirectly resulting from, in consequence of, or ***in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single Claim for all purposes under this policy***, shall be subject to the Retention stated in Item 3. of the Declarations Page for each applicable Coverage Section, or other applicable Retention, and ***shall be deemed first made when the earliest of such Claims is first made***, regardless of whether such date is before or during the Policy Period.

*Id.* Ex. 34 at 1, RSG 241001 0118 p. 4 of 7 (emphasis omitted and added). One such "purpose" was its "Notice of Claim or Circumstance" provision:

> 1. If, during the Policy Period or Extended Reporting Period (if applicable), any Claim is first made, it shall be, a condition precedent to the Insurer's obligation to pay, that the Insured give written notice of such Claim to as soon as practicable . . . but in no event shall such notice be given later than sixty (60) days after the expiration or earlier cancellation date of this Policy.
>
> * * * *
>
> Further, ***if any Claim first made after the Policy Period expires is nonetheless deemed to be made during the Policy Period*** pursuant to Section V.B.4, then it is a condition precedent to coverage for such Claim that ***the Insured report it to the Insurer as soon as practicable***.

*Id.* at p. 5 of 7 (emphasis omitted and added).

Here, the Underlying Lawsuit was filed after the RSUI Policy's May 16, 2021 expiration date. Nonetheless, RSUI took the position that it constituted a single claim with the earlier two

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
– Page 17



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

lawsuits.  Accordingly, that "Claim" was "deemed first made" when the earlier two lawsuits were filed in April 2021.  Unlike the specific time limitation for tendering claims actually "first made" during the policy period, because the Underlying Lawsuit was a claim "first made after" the RSUI Policy's expiration date but was "nonetheless deemed to be made during the Policy Period," the policy required notice only "as soon as practicable."

Here, the Insureds tendered the Underlying Lawsuit to RSUI on November 29, 2021— little over a month after it was filed.  Even assuming this one-month delay in tender breached the "as soon as practicable" provision, its claims adjuster, Mr. Krajec, admitted that it suffered no prejudice from the delay.  *Id.* Ex. 24 at 73-74.  *See Riverfront Landing Phase II Owners' Ass'n v. Assurance Co. of Am.*, 2009 WL 1952000, at *3 (W.D. Wash. July 6, 2009) (delayed tender cannot preclude coverage unless insurer shows "actual and substantial prejudice due to the late notice").

### 2.    The prior acts exclusion did not clearly apply

Second, because it was unclear whether the RSUI Policy's "prior acts" exclusion applied, Washington law required RSUI to defend the Underlying Lawsuit.  That provision excluded coverage for

> **Loss** in connection with any **Claim** made against any Insured that alleges, arises out of, is based upon or attributable to, **directly or indirectly**, **in whole or in part**, **any actual or alleged Wrongful Acts** which **first occurred prior to** **May 1, 2018**.

*Id.* Ex. 34 RSG 206108 0118 (emphasis omitted and added) (policy).

Coverage exclusions are "most strictly construed against the insurer."  *Am. Best Food* 168 Wn.2d at 406 (internal quotations omitted).  Only a strictly construed coverage exclusion that "clearly" applies to a complaint's allegations relieves an insurer of its duty to defend.  *Am. Best Food*, 168 Wn.2d at 405.   If there is "any reasonable interpretation of the [allegations] and the law that could result in coverage," the insurer must defend the claim.  *Id.* at 412-13.  Whether the insurer's interpretation also was reasonable is immaterial.  An insurer's "refusal to defend [an insured] based upon an arguable interpretation of its policy [is] unreasonable and therefore in bad faith."  *Id.* at 414.  When determining whether an exclusion clearly applies,

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
– Page 18



"[t]he lack of any Washington case directly on point . . . present[s] a legal uncertainty with regard to [an insurer's] duty" and "any uncertainty works in favor of providing a defense to an insured." *Id.* at 408.

Here, the Underlying Lawsuit's complaint asserted the Adolphs' claims based on paying fees to Reed Hein in 2020 for its services as well as on behalf of a putative class of similarly situated individuals based on Reed Hein's "ongoing" practices. *Id.* Ex. 2 at 1-3, 5-6, 9, 11-19, 24. Liberally construed, these allegations conceivably included all Reed Hein customers who paid fees after the exclusion's May 1, 2018 retroactive date.

When strictly construed, the exclusion does not clearly apply to such post-retroactive date claims. Liberally construed, the Underlying Lawsuit alleged that the Adolphs and similarly situated putative class members entered into individual transactions with Reed Hein based on fraudulent or wrongful conduct, paid fees to Reed Hein, and failed to receive promised services at the time of or after those post-retroactive date transactions. *Id.* Thus, at minimum it is unclear whether post-retroactive claims were based on or attributable, directly or indirectly, to pre-retroactive date wrongful acts. Indeed, no Washington court has interpreted this exclusion's language. But courts in other jurisdictions have concluded in lawsuits alleging wrongful conduct before and after a retroactive date that such exclusions did not clearly apply to post-retroactive date claims. *See*, e.g., *Opus Bank v. Liberty Ins. Underwriters, Inc.,* 621 Fed. Appx. 405, 406 (9th Cir. 2015) (exclusion did "not necessarily require combining [pre-retroactive date fraud] with other [post-retroactive date] wrongful acts to prevent coverage of a broader claim"); *In re Bankunited Fin. Corp.,* No. 09-19940-LMI, 2015 WL 13703411, at *4, *7 (Bankr. S.D. Fla. Feb. 24, 2015) (demand letter alleging a "pattern of poor decisions" involving "thousands of separate loans" clearly alleged that "each loan gives rise to an individual loan and an individual claim" precluding exclusion's application to post-retroactive date loans).

Accordingly, some doubt existed regarding whether the exclusion applied to all claims in the Underlying Lawsuit. Because RSUI "failed to follow well established Washington State law giving the insured the benefit of the doubt as to the duty to defend and failed to avail itself

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
– Page 19



of legal options such as proceeding under a reservation of rights or seeking declaratory relief," RSUI's failure to defend the Underlying Lawsuit was "unreasonable . . . and bad faith as a matter of law." *Am. Best Food*, 168 Wn.2d at 413.

### F. The Insurers' Bad Faith Breach of their Duty to Defend Estops Them from Denying Coverage as a Matter of Law

"When the insurer breaches the duty to defend in bad faith, the insurer . . . should be estopped from asserting the claim is outside the scope of the contract and, accordingly, that there is no coverage." *Kirk*, 134 Wn.2d at 564. Here, as a matter of law the Insurers' bad faith breach of their duty to defend estops them from denying coverage, including for damages in excess of their policy limits. *Besel v. Viking Ins. Co.,* 146 Wn.2d 730, 736 (2002).

### G. As a Matter of Law the Court Must Presume the Insurers' Unreasonable Breach of Their Duty to Defend Harmed Their Insureds

Under Washington law, when an insurer acts in bad faith "an insured should not be required to prove what might have happened had the insurer not breached its duty to defend in bad faith; that obligation rightfully belongs to the insurer who caused the breach." *Kirk*, 134 Wn.2d at 563. Accordingly, when an insurer acts in bad faith courts "*must* assume harm." *Id.* at 562 (emphasis in original); *see also Alaska Airlines*, 2022 WL 2982800, at *11 ("Endurance's bad faith also establishes its liability under IFCA").

Because the Insurers breached their duty to defend in bad faith, the Court must presume harm as a matter of law. Even if the Court were to further consider the record, however, the Insureds paid defense costs out of pocket and were forced to agree to entry of a stipulated judgment against them. Whether based on a legal presumption, the evidence, or both, the Court should determine as a matter of law that the Insurers misconduct proximately caused the Insureds' injuries and damages.

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
− Page 20



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

### H.    The Reasonable Stipulated Judgment Amount is the Presumptive Measure of Damages Caused by the Insurers' Misconduct

Washington has "long recognized the ability of an insured defendant facing claims by a plaintiff to independently negotiate a settlement . . . ." *Wood v. Milonis Constr., Inc.*, 198 Wn.2d 105, 120 (2021). Such settlements "[t]ypically" involve the insured defendant's agreemnt to entry of a stipulated judgment against it in exchange for "a covenant not to execute the judgment against it and assignment of potential bad faith claims against its insurer." *Wood*, 198 Wn.2d at 120. If the amount of the stipulated judgment "is deemed reasonable by a trial court, it becomes the presumptive measure of damages in a later bad faith action against the insurer." *Bird v. Best Plumbing Grp., LLC*, 175 Wn.2d 756, 765 (2012). Washington has "recognized nine nonexclusive factors"—the *Chaussee* factors—to help guide courts in determining whether a settlement is reasonable . . . ." *Wood*, 198 Wn.2d at 120.

In the Underlying Lawsuit, the Court already has determined that the settlement, including the stipulated judgment amount, was "fair, reasonable, and adequate" under the factors of *Officers for Justice v. Civil Serv. Comm's*, 688 F.2d 615, 625 (9th Cir. 1982). Those factors are materially identical to the *Chaussee* factors. *Compare Officers for Justice*, 688 F.2d at 625 (court considers factors such as "the strength of plaintiffs' case," "the risk, expense, complexity, and likely duration of further litigation," "the amount offered in settlement," "the extent of discovery completed," and the "stage of the proceedings"), *with Wood*, 198 Wn.2d at 120 (court may consider the "releasing person's damages," the "merits of the releasing person's liability theory," "the merits of the released person's defense theory," "the risks and expenses of continued litigation," "the released person's ability to pay," and "the extent of the releasing person's investigation and preparation of the case"). And their purpose is the same: to conclude that the settlement is "not the product of fraud or overreaching by, or collusion between, the negotiating parties"

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
– Page 21



and "fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *Wood*, 198 W.2d at 120 (*Chaussee* factors' purpose is to serve as a check on "the potential for fraud or collusion between the settling parties").

The Insurers are bound by the Court's previous determination that the settlement was reasonable where they "had actual knowledge in advance that the court would determine reasonableness . . . ." *Hawkins v. ACE Am. Ins. Co.*, 32 Wn. App. 2d 900, 922-23 (2024), *review denied*, 4 Wn. 3d 1037 (2025) (emphasis added). The purpose of this rule in the insurance context is to avoid "inconsistent judgments, delay, additional expense, and the creation of a perverse incentive for carriers to wait until liability and damages ha[s] been established before deciding whether it is cost-effective to intervene." *Mut. of Enumclaw Ins. Co. v. T & G Const., Inc.*, 165 Wn.2d 255, 263 (2008).

General Casualty cannot reasonably dispute that it had such knowledge. Mr. Michael testified that General Casualty "set up docket monitoring" for the Underlying Lawsuit so that "if anything did happen in the litigation, we would be aware of it." *Id.* Ex. 13 at 183. Indeed, General Casualty's privilege log shows that, on May 12, 2023, Mr. Michael sent an email to General Casualty "re: developments in underlying litigation and coverage analysis regarding same" attaching "underlying case filings and coverage memo." *Id.* Ex. 35 at 28.[1] And General Casualty filed this action **the same day** that the Court determined the settlement was reasonable. ECF 1. Where it had actual knowledge that determination would be made but did not seek intervention to participate in it, Washington law and policy precludes it from challenging its substance and effect now. Accordingly, the Court must presume the reasonable stipulated judgment amount is the presumed measure of harm caused by General Casualty.

Moreover, "when an insurer has notice of an action against an insured, and is tendered an opportunity to defend, it is bound by the judgment therein upon the question of the insured's

---

[1] Even a small sampling of General Casualty's privilege log entries shows a flurry of activity on or around May 9, 2023, with descriptions like "instructions for monitoring litigation, in light of recent underlying case developments," "status update in underlying class action litigation," with some attaching filings from the Underlying Lawsuit. *Id.* Ex. 35 at 28-29, 34.

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
– Page 22



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

liability." *East v. Fields*, 42 Wn.2d 924, 925 (1953). That includes a determination of "[w]hat the insured is legally obligated to pay." *Mut. of Enumclaw Ins. Co. v. T & G Const., Inc.*, 165 Wn.2d 255, 376 (2008). Here, it is undisputed that RSUI had an opportunity to defend the Underlying Lawsuit. It declined to do so. The Court subsequently determined the amount the Insureds were legally obligated to pay through entry of judgment. That judgment binds RSUI.

Finally, even if the Insureds were not entitled to a presumption of harm damages, it is undisputed that they paid defense costs out of pocket and agreed to entry of the stipulated judgment because of the Insurers' unreasonable denial of a defense.

## I.    The Insurers' Unreasonable Failures to Defend the Underlying Lawsuit Violated IFCA

IFCA's intent is "to protect insureds, among other ways, by encouraging insurers to honor their commitments by making it illegal to unreasonably ***delay*** or deny" payment of benefits under an insurance policy. *Hawkins*, 32 Wn. App. 2d at 931 (emphasis added). Accordingly, insurers violate IFCA when they unreasonably delay paying benefits. *See Taladay v. Met. Grp. Prop. and Cas. Ins. Co.*, 2016 WL 3681469, at *2 (2106) (internal quotations omitted) ("a refusal to pay a demand for coverage reasonably promptly is an unreasonable denial of benefits, even if only temporary ").

The "duty to defend the insured is one of the main benefits of the insurance contract." *Butler*, 118 Wn.2d at 392. Unreasonably denying a defense violates IFCA. *Hawkins*, 32 Wn. App. 2d at 930. And "a failure to promptly respond to a demand for coverage" constitutes a "constructive denial" of benefits "even if the insurer eventually offers coverage." *Rushforth*, 2018 WL 1610222, at *2, *4.

As discussed above, the Insurers' constructive and actual denial of a defense was unreasonable as a matter of law. Where the Adolphs' IFCA claim is coextensive with and based on the same conduct as their bad faith claim, the Insurers necessarily also violated IFCA as a matter of law. *See Beasley*, 23 Wn. App. 2d at 669 ("An *unreasonable* denial of benefits under the facts of this case necessarily constituted bad faith"); *see also Alaska Airlines* 2022 WL

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
– Page 23



2982800, at *7 n. 10 ("Because the Court determines that Endurance's breach of the duty to defend was unreasonable and therefore constitutes bad faith as a matter of law, the Court also concludes that Endurance violated IFCA.").  Moreover, even if the Insureds were not entitled to a presumption of harm and damages, it is undisputed that they paid defense costs out of pocket and agreed to entry of the stipulated judgment because of the Insurers' unreasonable denial of a defense.

### J.    The Insurers' Unreasonable Failure to Defend Violated the CPA

Washington's CPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020.  To prevail on a CPA claim, a plaintiff must establish: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his business or property, and (5) which injury is causally linked to the unfair or deceptive act.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85 (1986).

Violations of WAC 284-30 establish the first two elements of a CPA claim. *Onvia*, 165 Wn.2d at 134. Additionally, "CPA claims alleging unfair insurance claims practices always meet the public interest element because RCW 48.01.030 declares that the business of insurance is one affected by the public interest." *Aecon Bldgs., Inc. v. Zurich North America*, 572 F. Supp. 2d 1227, 1238 (W.D. Wash. 2008) (internal quotation omitted). As to the fourth element, the requisite injury is established when the insured incurs expenses as the result of the bad faith. *Coventry*, 136 Wn.2d at 283.

As discussed above, the Insurers unreasonably failed to defend the Insureds and violated WAC 284-30-330(2), 330(3), 330(5), 330(13), and 370.  *Accord Alaska Airlines*, 2022 WL 2982800, at *9.  The Insurers' violations established the first three elements of the Adolphs' CPA claim as a matter of law.  Moreover, the Insureds paid their defense costs out of pocket and eventually agreed to entry of a stipulated judgment because of the Insurers' refusal to fund their defense, establishing the fourth and fifth elements.  Accordingly, the Adolphs have

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
– Page 24



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

established all five elements of their CPA claim as a matter of law, entitling them to an award of attorney fees and costs.  *Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 855 (1990).

<h2 style="text-align:center">V.     CONCLUSION</h2>

For the foregoing reasons, Counterclaim Plaintiffs request an order granting summary judgment on their bad faith and CPA claims.

*Certify that this motion is 8,397 words in length in compliance with the Local Civil Rules.*

PFAU COCHRAN VERTETIS AMALA PLLC

By /s/ Christopher E. Love
Darrell L. Cochran, WSBA No. 22851
Thomas B. Vertetis, WSBA No. 29805
Christopher E. Love, WSBA No. 42832
William T. McClure, WSBA No. 54622
*Attorneys for the Counterclaim Plaintiffs*

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
– Page 25



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## CERTIFICATE OF SERVICE

The undersigned declares under penalty of perjury under the laws of the United States of America, that on the below date, I caused for delivery a copy of the foregoing pleadings to:

| | |
|---|---|
| ***Counsel for Plaintiff and Counterclaim Defendant General Casualty Company of Wisconsin***<br><br>Kevin A. Michael, WSBA No. 36976<br>Cozen O'Conner<br>999 Third Ave, Ste. 1900<br>Seattle, WA 98104<br>kmichael@cozen.com | ☐ Regular U.S. Mail<br>☐ Facsimile<br>☐ ABC Legal Messenger<br>☑ ECF/E-mail |
| ***Counsel for Defendant General Casualty Company of Wisconsin***<br><br>Michael D. Handler, WSBA No. 25652<br>Daniel L. Syhre, WSBA No. 34158<br>Sarah P. Pozzi, WSBA No. 55744<br>Forsberg & Umlauf, P.S.<br>901 5th Ave. Ste. 1400<br>Seattle, WA 98164<br>mhandler@foum.law<br>dsyhre@foum.law<br>spozzi@foum.law | ☐ Regular U.S. Mail<br>☐ Facsimile<br>☐ ABC Legal Messenger<br>☑ ECF/E-mail |
| ***Counsel for Third-Party Defendant RSUI Group, Inc. and RSUI Indemnity Company, Inc.***<br><br>Jennifer L. Crow, WSBA No. 43746<br>Catarina Ferreira, WSBA No. 56291<br>Scheer Law PLLC<br>2101 Fourth Ave, Ste. 830<br>Seattle, WA 98121<br>jen@scheer.law<br>catarinaf@scheer.law | ☐ Regular U.S. Mail<br>☐ Facsimile<br>☐ ABC Legal Messenger<br>☑ ECF/E-mail |
| ***Counsel for Counterclaim Plaintiffs***<br><br>Gregory W. Albert, WSBA No. 42673<br>Albert Law PLLC<br>3131 Western Ave, Ste. 410<br>Seattle, WA 98121<br>greg@albertlawpllc.com | ☐ Regular U.S. Mail<br>☐ Facsimile<br>☐ ABC Legal Messenger<br>☑ ECF/E-mail |

DATED this 24th day of November, 2025, at Tacoma, WA.

*/s/Thien Lau*
Thien Lau, Legal Assistant

COUNTERCLAIM AND THIRD-PARTY
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT RE: BAD FAITH, INSURANCE FAIR
CONDUCT ACT, AND WASHINGTON CONSUMER
PROTECTION ACT CLAIMS
− Page 26



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26