1

2

3

4
**Honorable Tiffany Cartwright**

5
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

7
GENERAL CASUALTY COMPANY OF
WISCONSIN, a Wisconsin corporation,

8
Plaintiff,

9
vs.

10
REED HEIN & ASSOCIATES, LLC d/b/a

11
TIMESHARE EXIT TEAM, a Washington
limited liability company; MAKAYMAX INC.,

12
a Washington corporation; BRANDON REED,
individually, BRIAN and KERRI ADOPLH, a

13
married couple,

14
Defendants.

15
BRIAN and KERRI ADOLPH, a married
couple,

16

17
Counterclaim and Third-Party
Plaintiffs,

18
v.

19
RSUI GROUP, INC., a Georgia corporation;
and RSUI INDEMNITY COMPANY, INC., a

20
New Hampshire corporation,

21
Third-Party Defendants.

22

23

No. 2:23-cv-00725-TMC

**PLAINTIFF GENERAL CASUALTY
COMPANY OF WISCONSIN'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING
REFORMATION AND DUTY TO
DEFEND**

**NOTE ON MOTION CALENDAR:
DECEMBER 22, 2025**

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 1
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET ● SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 ● (206) 689-8501 FAX

4911-0829-8796, v. 1

# I. <u>INTRODUCTION AND RELIEF REQUESTED</u>

General Casualty Company of Wisconsin ("General Casualty") moves the Court for a Summary Judgment on its claim for declaratory relief that General Casualty had no duty to defend Reed Hein & Associates, LLC ("Reed Hein") against the class action brought against it styled as *Brian Adolph et. al. v. Reed Hein & Associates et al.*, United States District Court for the Western District of Washington No. 2:21-cv-01378 (the "underlying lawsuit" or "*Adolph* suit"). General Casualty also seeks summary judgment on its claim that the 2021-2022 primary policy issued to Reed Hein should be reformed to reflect the mutual intent of the parties to exclude "Personal and Advertising Injury" coverage, as stated in an Endorsement to every other insurance contract between General Casualty and Reed Hein.

The Court is requested to grant Plaintiff summary judgment on its Complaint because:

(1)     Reformation of the renewal policy is required to correct a scrivener's error that resulted in the unintended and unauthorized deletion of an endorsement that would have removed all coverage for Personal and Advertising Injury. Granting this relief would preclude any duty to defend.

(2)     Even if reformation is not granted, there was no duty to defend because the allegations of the complaint in the underlying putative class action suit against Reed Hein were not within the scope of the Personal and Advertising Injury insuring agreement.

(3)     Even if the underlying complaint had contained a cause of action for Personal and Advertising Injury, coverage would have been precluded by exclusions for (a) personal and advertising injury arising out of any access to or disclosure of confidential or personal information, or any other type of non-public information, and (b) contract breaches.

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 2
Case No.:  2:23-cv-00725-TMC

4911-0829-8796, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

1    Reformation in (1) will dispense with the need to rule on (2) and (3).  Therefore, General

2    Casualty presents its summary judgment motion in this logical order of bases for the Court's

3    consideration.

4    The underlying lawsuit alleged that Reed Hein induced customers to pay for worthless

5    "timeshare exit" services and refused to provide promised refunds.  The complaint against Reed

6    Hein in the *Adolph* suit elaborated that Reed Hein induced its customers to pay in advance for

7    "fake services" and received only illusory assistance with their unwanted timeshare arrangements.

8    After taking money up front, Reed Hein's customers allegedly received little or nothing for their

9    money, and Reed Hein would allegedly refuse to honor promised money-back guarantees.

10    The underlying lawsuit was filed in October 2021.  By the last week of November 2021,

11    mediation was conducted between the putative class's representatives and Reed Hein's

12    representatives.  By April 12, 2022, a complete settlement memorandum was executed to resolve

13    the *Adolph* suit, which included the underlying parties' agreements (1) to stipulate to class action

14    certification for purposes of settlement; and (2) to stipulate to judgment against Reed Hein (with

15    covenant not to execute) in the agreed amount of the full damages claimed by all potential class

16    members against Reed Hein.  Later court filings specified this amount as $630,187,204.

17    The General Casualty policies issued to Reid Hein cover liability for "bodily injury" or

18    "property damage," neither of which is at issue in the underlying lawsuit.  Because of Reed Hein's

19    loss history, the parties agreed that the policies would exclude "personal and advertising injury,"

20    at the outset of the insurer/insured relationship.  This coverage, when not excluded, covers certain

21    non-accidental business torts.  The first year of coverage faithfully reflected the parties' agreement,

22    by containing an Endorsement that excluded all "personal and advertising injury."  However, in

23    the renewal, a scrivener's error occurred: a clerical administrator who processed the renewal input

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 3
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

1  a change in the policy limit to resolve a software error notice, triggering the unauthorized deletion

2  of the Endorsement that excluded "personal and advertising injury."     Because neither party

3  intended the renewal policy to be issued on different terms than the policy being renewed, the

4  second policy year should be reformed to reflect the parties' intent to exclude "personal and

5  advertising injury" coverage.

6      General Casualty demonstrates in this motion that the one policy that lacks the Personal

7  and Advertising Injury Exclusion does so because of a *mistake* justifying reformation of that policy

8  to conform with three other policies that exclude Personal and Advertising Injury coverage by

9  Endorsement.  Upon issuing this ruling, the Court need not proceed further with this motion.

10     Though reformation is fully warranted here, General Casualty also had no duty to defend

11 the *Adolph* suit because no covered "personal and advertising injury" offense is alleged in the

12 *Adolph* suit, even if the erroneous policy at issue here were not reformed to remove the coverage

13 entirely.  Further, even if the *Adolph* suit's complaint conceivably alleged the defined "offense" of

14 publication of material that violates a person's right of privacy (which it did not), the policy

15 contained an Endorsement that excluded "any access to or disclosure" of confidential or personal

16 information, foreclosing any such potential for coverage. *All* policies General Casualty issued to

17 this insured contained that Endorsement. Alternatively, another exclusion for a breach of contract

18 would have applied.  As a consequence, General Casualty had no obligation to defend the *Adolph*

19 lawsuit.

20               **II.  FACTS**

21 **A.    The Underlying *Adolph* Lawsuit**

22     The underlying *Adolph* suit alleged that Reed Hein engaged in the unfair and deceptive

23 marketing and sale of "timeshare exit" services to customers looking to terminate their timeshare

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 4
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

1  obligations.  Dkt. 1-1 at 582-83.  The essence of the suit is that Reed Hein convinced these

2  customers to pay Reed Hein in advance for its services when Reed Hein knew that it had no

3  specialized knowledge or expertise that could benefit the customers in their goal of terminating

4  their timeshare obligations and refused to honor a promised money-back guarantee.  In the words

5  of the complaint in the underlying lawsuit, "Beginning in 2013 Defendant Reed Hein & Associates

6  Unfairly and With the Intent to Mislead, Promised Services It Did Not Provide or Know How to

7  Provide." *Id*. at 588.  Reed Hein allegedly provided only relatively obvious advice and valueless

8  services.  For example, Reed Hein allegedly advised customers to simply stop making payments

9  on the timeshares.  It would then claim to have succeeded in "exiting" the customer when the

10  timeshare company foreclosed.  *Id*. at 589.  The alleged strategy was simply to depend on the

11  reluctance of timeshare companies to sue the customer for breaching the timeshare obligation.  *Id*.

12  at 594-595.  The complaint also alleged that Reed Hein engaged in performative acts that had no

13  legally binding effect, such as filing a unilateral quitclaim deed purporting to convey the timeshare

14  back to the resort.  *Id*. at 596.  In reality, timeshare exits allegedly occurred only through consent

15  or acquiescence of the resorts selling the timeshares, a result the customer could seek directly

16  without the assistance of Reed Hein.  *Id*. at 594.

17  Most of the allegations relate to Reed Hein performing largely illusory services in exchange

18  for significant upfront payments from customers.  But among the specifically-alleged "Additional

19  Unfair Acts and Practices" was that "Reed Hein Falsely Asserts That Communications Between

20  Reed Hein and its Customers are Protected by the Attorney-Client Privilege."  *Id*. at 604.  Reed

21  Hein's power of attorney agreements with customers allegedly stated that Reed Hein "acts as an

22  agent pursuant to the … agreements when it hires law firms or transfers companies . . . and when

23  it communicates and interacts with the law firms on behalf of Reed Hein customers."  *Id*.  Reed

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 5
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

1   Hein further allegedly asserted that "[i]f Reed Hein decides to hire a law firm for a customer, Reed

2   Hein and the law firms specifically intend to create a relationship under [which] privileged material

3   is freely exchanged.  As such, the law firms, customers, and Reed Hein all intend that the attorney-

4   client and work product privileges and protections apply to all three parties in this agency

5   relationship--the law firms, the customer/client, and Reed Hein." *Id.* at ¶65.  However, a court

6   allegedly held "in 2018" that the privilege was not maintained in this relationship, and that

7   communications within the relationship were subject to disclosure in discovery. *Id.* at ¶66.  The

8   *Adolph* suit's complaint further alleges Reed Hein and its vendors were twice ordered by the

9   Middle District of Florida federal court to disclose documents that Reed Hein represented were

10  privileged, and that Reed Hein failed to tell its customers, continuing instead to make the same

11  representations about its capacity to conduct attorney-client privileged litigation on the customers'

12  behalf. *Id.* ¶66-67.  The *Adolph* suit's complaint states the issue as:  "Whether Defendants asserted

13  that their conversations with customers and legal counsel were privileged when they knew or

14  should have known of a court order stating those communications were not privileged." *Id.* at

15  ¶73c.  The essence of this "Unfair Acts and Practices" allegation is that Reed Hein concealed these

16  rulings from customers and therefore made misrepresentations of law.

17      The complaint in the underlying lawsuit alleged six legal theories as follows:

18  • Breach of Contract

19  • Common Law Fraud

20  • Negligent Misrepresentation

21  • Unjust Enrichment / Disgorgement

22  • Violation of Consumer Protection Act, RCW 19.86 *et seq.*

23

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 6
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

- Breach of Fiduciary Duties

All of the above theories allege either that the defendants were wrongfully induced to pay money to Reed Hein or that Reed Hein wrongfully retained or comingled the plaintiffs' payments without earning them.

The **Breach of Contract** theory alleged that Defendants "induced customers into contracts unfairly and in bad faith by using false claims and promises" and "breached the terms of the spirit of its contracts with customers." Dkt. 1-1 at 608 ¶¶83-84.

The **Common Law Fraud** theory alleged that "Defendants induced customers to spend money on it its services by making materially false representations and omitting material facts with the intent that the false statements and omitted facts be acted upon." *Id*. at 608 ¶86.

The **Negligent Misrepresentation** theory alleged that "Defendants induced customers to spend money on its services by making negligent misrepresentations and negligently omitting material facts from Plaintiffs." *Id*. at 608 ¶91.

The **Unjust Enrichment** theory alleged that "Plaintiffs and Class have conferred a substantial benefit upon Defendants derived from the fees paid by Plaintiff and the Class" and that the "payments were accepted and retained by Defendants under circumstances such that it would be inequitable for Defendants to retain the benefit without payment to Plaintiff and members of the Class." *Id*. at ¶97.

The **Consumer Protection Act** theory alleged that "Defendants commit[s] an unfair or deceptive act or practice by promising to hold customers funds separate and apart from company's funds, when the company in fact converted Plaintiffs' funds into its own funds." *Id*. at ¶101.

The "**Breach of Fiduciary Duties**" theory alleged that "Defendants induced Plaintiffs . . . into fiduciary relationships by asking them for power of attorney and soliciting money for services

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 7
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

1    not yet performed" and "misappropriated the money as earned income." *Id.* at ¶¶111-13.

2    **B.    Prior Suit by the Washington Attorney General**

3          The *Adolph* plaintiffs were not the first to assert claims against Reed Hein.  Notably, the

4    Washington Attorney General filed suit against Reed Hein in February of 2020 in King County

5    Superior Court making substantially similar allegations in a lawsuit styled *State of Washington v.*

6    *Reed Hein & Associates LLC, et al.*, King County Superior Court No. 20-2093141-1.  (Ex. A to

7    Handler Decl.)  In that Complaint, the Attorney General described substantially the same business

8    practices alleged by the Adolphs stating that "Virtually every aspect of Defendants' operation is

9    deceptive and/or unfair in violation of the Consumer Protect Act (CPA), and thousands of people

10   across the country and in Canada—including over 2,500 consumers in Washington—have fallen

11   victim to Defendants' practices." *Id.* at ¶1.5.

12   **C.    The Negotiation and Formation of the Policies**

13         In March 2020, with the knowledge that Washington Attorney General had recently alleged

14   it was deceptive and unfair in virtually every aspect of its business, Reed Hein engaged its

15   insurance broker Brown & Brown Insurance Services of California ("Brown & Brown") to obtain

16   liability insurance coverage for the time period beginning May 16, 2020.  But Brown & Brown,

17   and its marketing leader representing Reed Hein named Ruby Burden, encountered significant

18   difficulty obtaining liability insurance coverage for the policy period beginning May 2020.  The

19   May 2020 insurance Proposal that Brown & Brown assembled for Reed Hein identified *twenty*

20   *seven* insurance companies that had *declined to issue* general liability, umbrella, or excess liability

21   coverage to Reed Hein.  (Ex. 5 Deposition of David Drumright, attached as Ex. B. to Handler Decl.

22   at BB 14492).  The only entity that agreed to issue a commercial general liability coverage to Reed

23   Hein was Arrowhead General Insurance Agency, Inc. ("Arrowhead"), the underwriting agent for

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 8
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

1    General Casualty.  *Id.*

2    On March 13, 2020, Reed Hein applied for coverage through Arrowhead.  (Ex. C to

3    Handler Decl.).  Ms. Burden of Brown & Brown stated that Reed Hein's prior insurance coverage

4    was non-renewed because of the history of claims and lawsuits against Reed Hein.  Ms. Burden's

5    email also noted:  "The claims have all been related to Personal Injury claims." *Id.*  By email dated

6    April 7, 2020, Arrowhead's underwriter Arlington So responded to Ms. Burden's email and stated:

7    **"I am sorry due to the losses this will be a decline, but if wish to exclude PI & Advertising**

8    **then we can continue to quote. . ."**.  (Ex. D to Handler Decl. BB 12448).  Reed Hein, through its

9    broker, then requested General Casualty to quote its liability policies *without* Personal and

10   Advertising Injury Coverage.  (*Id.* at BB 12447).  After receiving the quote for the General

11   Casualty policies, Reed Hein's representative asked to "[p]lease bind coverage," and General

12   Casualty issued the 2020-21 Primary and Umbrella Policies, both with Endorsements specifying

13   they would exclude all Personal and Advertising Injury coverage.  *Id.* at BB 12444; Dkt. 1-1 at

14   189; Dkt. 1-1 at p. 251).  The Endorsement entitled "Exclusion – Personal and Advertising Injury"

15   specifically stated that "Coverage B (Section I) does not apply and none of the references to it in

16   the Coverage Part apply," all of which memorialized the parties' agreement.  *Id.*

17   On February 15, 2021, Brown & Brown's Philip Gajic sent an email to Mr. So at

18   Arrowhead, stating that Reed Hein wished to renew its insurance with General Casualty.  (Ex. E

19   to Handler Decl.).  Mr. Gajic was the Account Manager responsible for Reed Hein at Brown &

20   Brown.  As of April 2021, the process was "just an automatic renewal," which meant to the

21   Account Manager that "the carrier is just going to automatically renew the policy, yes."  (Ex. F to

22   Handler Decl., Transcript Gajic p. 137 ln 17 – p. 138 ln 1).  There is no record of Mr. Gajic

23   requesting, on behalf of Reed Hein, that the renewal policies contain *any* substantive changes to

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 9
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

1    the coverage provided (and excluded) by the 2020-21 policies.

2         In May 2020, Reed Hein "agreed to be self-insured for personal and advertising injury

3    coverage." (Ex. F to Handler Decl., Transcript Gajic p 118, ln 17-24, Ex. G to Handler Decl.,

4    Transcript Drumright, p. 113 ln 14-25). During the automatic renewal process with Brown &

5    Brown, none of Reed Hein's representatives who communicated with the General Casualty

6    policies' underwriters ever requested to add this coverage to the primary policy's renewal effective

7    May 16, 2021. Communications from Brown & Brown (on behalf of Reed Hein) to Arrowhead's

8    underwriters would have followed Brown & Brown's "workflow," meaning that only (1) the

9    Account Manager, or (2) the marketing person, could have requested additional coverage from

10   the underwriter. (Ex. G to Handler Decl., Transcript Drumright, p. 55 ln 18 – p. 56 ln 9). And the

11   prospects of getting this coverage in the year two renewal were grim according to David

12   Drumright, who was Reed Hein's primary point of contact at Brown & Brown:

13              Q:     Does it seem to you unlikely that you could have gotten more
                      favorable terms that added the personal and advertising
14                    injury coverage in your year two renewal with Arrowhead?

15              [objections interposed]

16              THE WITNESS: It seemed highly unlikely.

17   (Ex. G to Handler Decl., Transcript Drumright, p. 117 ln 22 – p. 118 ln 3).

18        During Arrowhead's processing of the renewal policy, an error occurred that resulted in

19   the "Personal and Advertising Injury" exclusion being removed from the primary policy. The

20   cause of the error was later investigated by Arrowhead COO Tiffany Poletti. (Ex. H. to Handler

21   Decl., Transcript Poletti, p. 28 ln 20 – 25). Ms. Poletti described the removal of the exclusion as

22   a "processing error." (*Id.* at p. 27 ll. 13-14). Specifically, Poletti traced the deletion of the

23   exclusion to an action taken by a ReSource Pro employee named Sunshine Sun. (*Id.* at p. 29-30).

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 10
Case No.: 2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

ReSource Pro was a third-party vendor that Arrowhead used for processing renewals. (*Id.*). ReSource Pro did not have authority to remove an exclusion without direction from an Arrowhead underwriter. (*Id.* at p. 39 ln. 8-11). The deletion occurred when Sunshine Sun manually changed the limits for "Personal and Advertising Injury" from "excluded" to $1,000,000. (*Id.* at pp. 40-41). Ms. Poletti explained that the original exclusion of personal and advertising injury generated a "soft error" or a "warning" during the renewal process. (*Id.* at p. 44 ln. 13 – p. 45 ln. 8. Specifically, the warning advised that the "Personal & Adverting Injury limit differs from Each Occurrence limit." In this case, the per occurrence limit was $1,000,000. The error message is indicated by the red arrow in the screenshot below:



(Ex. I to Handler Decl.); (Ex. H. to Handler Decl., Transcript Poletti, p. 45 l. 12 – p. 46 l. 21).

    In reaction to the visible soft error message, Sunshine Sun manually selected the word "Excluded" next to "Personal & Advertising Injury," deleted the word "Excluded," and entered instead "$1,000,000." By changing the "Personal and Advertising Injury Limit" from "Excluded," to $1,000,000, Sunshine Sun made the two limits match. However, this action also had the

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 11
Case No.: 2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

automatic effect of removing the exclusionary Endorsement from the policy documents. (Ex. H.
to Handler Decl., Transcript Poletti, p. 41). This change was not supposed to occur as part of the
renewal. (*Id.* at p. 79-80). Notably, no underwriter from Arrowhead authorized the removal of
the exclusion for the 2021-2022 policy period. As Ms. Poletti testified, "Resource Pro made the
change erroneously based on a misunderstanding of the warning," without the necessary input
from underwriting. (*Id.* at p. 86 ll. 2-12).

**D.**    **The General Casualty Policies**

General Casualty issued two years of primary and umbrella commercial general liability
coverage to Reed Hein. The policies and effective dates were as follows:

a.    Policy No. BPK008399-00, issued to Reed Hein for the
period May 16, 2020 to May 16, 2021 (the "2020-21 Primary
Policy");

b.    Policy No. BUM0006548-00, issued to Reed Hein for the
period May 16, 2020 to May 16, 2021 (the "2020-21
Umbrella Policy");

c.    Policy No. BPK0008399-01, issued to Reed Hein for the
period May 16, 2021 to May 16, 2022 (the "2021-22 Primary
Policy"); and

d.    Policy No. BUM0006548-01, issued to Reed Hein for the
period May 16, 2021 to May 16, 2022 (the "2021-22
Umbrella Policy").

All four General Casualty Policies provide coverage for "bodily injury" and "property
damage." And, as set forth above, the General Casualty Policies were intended to preclude
coverage for "personal and advertising injury." The Endorsement in the 2020-21 Primary Policy
stated:

**EXCLUSION – PERSONAL AND ADVERTISING INJURY**

This endorsement modifies insurance provided under the following:

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 12
Case No.: 2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

COVERAGE B. (Section I) does not apply and none of the references to in the Coverage Part apply.

Dkt. 1-1, at 189.  An identical Endorsement appeared in the first year and renewal umbrella policies. (Dkt. 1-1 at 251 and 327).

Because of a clerical processing error, only one of the General Casualty Policies – the 2021-22 Primary Policy – did not contain the above Endorsement.  All four polices were intended to have included the express "Personal and Advertising Injury" exclusion.  The exclusion was omitted from the 2021-22 Primary Policy under circumstances that require reforming the policy to contain the exclusion as well.  But if the terms of the 2021-22 Primary Policy are not reformed then the terms of that policy would provide as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.     **Insuring Agreement**

    **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…

    **b.**     This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**     The "bodily injury" or "property damage" occurs during the policy period; and

Dkt. 1-1 at 492.

Plaintiff General Casualty Company of Wisconsin's Motion for Partial Summary Judgment Regarding Reformation and Duty to Defend – 13
Case No.:  2:23-cv-00725-TMC

4911-0829-8796, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

1    \* \* \*

2    **2.    Exclusions**

3          **p.    Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

4
5          Damages arising out of:

6          **(1)**    Any access to or disclosure of any person's or organization's confidential or personal information, including … any other type of nonpublic information…

7
8    *Id.* at 535.

9    \* \* \*

10    **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

11    **1.    Insuring Agreement**

12
13          a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies…

14
15    *Id.* at 497.

16    **2.    Exclusions**

17          This insurance does not apply to:

18          \* \* \*

19          **f.    Breach of Contract**

20          "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

21
22    *Id.*

23    \* \* \*

Plaintiff General Casualty Company of Wisconsin's Motion for Partial Summary Judgment Regarding Reformation and Duty to Defend – 14
Case No.: 2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

**EXCLUSION–ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION**

\* \* \*

**B.**     The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

> **2.      Exclusions**
>
> This insurance does not apply to:
>
> **Access Or Disclosure Of Confidential or Personal Information**
>
> "Personal or advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including … any other type of non-public information.

*Id.* at 535.

\* \* \*

**SECTION V – DEFINITIONS**

\* \* \*

**3.**     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish, injury or illness, or emotional distress and/or death resulting from any of these at any time.

*Id.* at 504.

\* \* \*

**13.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 15
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

1 | *Id.* at 506.

2 | **14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of
3 | the following offenses:

4 | **a.** False imprisonment;

5 | **b.** Malicious prosecution;

6 | **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room,
7 | dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or
8 | lessor;

9 | **d.** Oral or written publication, in any manner, of material that slanders or libels a person or
10 | organization or disparages a person's or organization's goods, products or services;

11

12 | **e.** Oral or written publication, in any manner, of material that violates a person's right to privacy;

13 | **f.** The use of another's advertising idea in your "advertisement"; or

14

15 | **g.** Infringement upon another's copyright, trade dress or slogan in your "advertisement."

16 | *Id.*

17 | * * *

18 | 17. "Property Damage" means:

19 | a. Physical injury to tangible property , including all resulting loss of use of that property.  All such loss
20 | of use shall be deemed to occur at the time of the physical injured that caused it; or

21

22 | b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur
23 | at the time of the "occurrence" that caused it.

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 16
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

1  *Id.*

2  **E.    *Adolph* Defendants Admit that the Underlying *Adolph* Suit Does Not Allege Bodily
       Injury or Property Damage**

3

4       The pleadings and admissions on file narrow the issues for the Court's consideration.  First,

5  General Casualty made the following allegations relevant to whether the underlying lawsuit

   alleged bodily injury to property damage:

6

7              55.    The Adolph Lawsuit does not allege that Reed Hein and/or
                      Defendants caused any physical injury to tangible property,
8                     or that any Class member lost the use of any tangible
                      property.

9              56.    The Adolph Lawsuit does not allege that Reed Hein and/or
                      Defendants caused any bodily injury to the Adolphs or any
10                    Class member.

11 Dkt. 1 at p. 15.  The Adolphs admitted both of the above allegations.  Dkt. 26 at p. 6.

12                              **III.  ARGUMENT AND AUTHORITY**

13 **A.    Summary Judgment Standard**

14      Summary judgment is appropriate where there is no genuine issue of material fact, and the

15 moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In determining

16 whether an issue of fact exists, the Court must view all evidence in the light most favorable to the

17 non-moving party and draw all reasonable inferences in that party's favor.  *Anderson Liberty*

18 *Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Bagdadi v. Nazar*, 84

19 F.3d 1194, 1197 (9th Cir.1996).

20      The moving party bears the initial burden of showing that there is no evidence which

21 supports an element essential to the non-movant's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

22 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the movant has met this burden, the nonmoving

23 party then must show that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 250.  However,

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 17
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

1   "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is

2   not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual

3   disputes whose resolution would not affect the outcome of the suit are irrelevant to the

4   consideration of a motion for summary judgment.  *Anderson*, 477 U.S. at 248.

5   **B.**    **Washington Rules of Insurance Policy Construction and Duty to Defend**

6          Under Washington law, "the interpretation of language in an insurance policy is a matter

7   of law." *Moeller v. Farmers Ins. Co. of Wash.,* 173 Wn.2d 264, 271, 267 P.3d 998 (2011).  "If the

8   language in an insurance contract is clear and unambiguous, the court must enforce it as written

9   and may not modify the contract or create ambiguity where none exists." *Transcon. Ins. Co. v.*

10  *Wash. Pub. Util. Dist. Util. Sys.*, 111 Wn.2d 452, 456, 760 P.2d 337 (1988).  A term or phrase is

11  ambiguous only if the contract language, on its face, would be fairly susceptible to more than one

12  reasonable interpretation by an average purchaser of insurance.  *Allstate Ins. Co. v. Peasley*, 131

13  Wn.2d 420, 424, 932 P.2d 1244 (1997).

14         The insured must show the loss falls within the scope of the policy's insured losses.  To

15  avoid coverage, the insurer must then show the loss is excluded by specific policy language.

16  *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 731, 837 P.2d 1000 (1992).

17         An insurer's duty to defend arises when a complaint against the insured, construed

18  liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's

19  coverage.  *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002).  The

20  duty to defend is triggered if the insurance policy conceivably covers allegations in the complaint.

21  *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693, 696 (2010).  Facts

22  extrinsic to the complaint against the insured do not create a duty to defend unless allegations in

23  the complaint conflict with facts known to or readily ascertainable by the insurer or if the

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 18
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

allegations are ambiguous or inadequate. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 54, 164 P.3d 454 (2007). Otherwise, the question of law regarding whether the duty to defend is triggered must be resolved based on only (1) the allegations against the insured and (2) the insurance policy provisions. *Id.*, 161 Wn.2d at 53-54; *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005) (applying plain language of liability policy's exclusion of defined "pollutants" to preclude coverage for the underlying claims).

**C.     The *Adolph* Complaint Does Not Allege Bodily Injury or Property Damage**

The *Adolph* complaint alleges that Reed Hein extracted money from plaintiffs and the class members in exchange for promises of services its customers either did not need and for which Reed Hein had no ability to perform. This underlying complaint alleges financial losses suffered by the underlying plaintiffs because they paid for worthless "timeshare exit" services. That complaint nowhere seeks recovery for bodily injury or for damage to tangible property. The Adolphs concede as much in their answer to the Complaint in this matter. There is therefore no duty to defend under Coverage A. Bodily Injury and Property Damage.

**D.     The 2021-2022 Primary Policy Should be Reformed to Exclude All Personal and Advertising Injury Coverage**

Three of the four General Casualty policies entirely exclude "Personal and Advertising" by Endorsement as written. The outlier policy is the 2021-22 Primary Policy, because of the unauthorized deletion of the Endorsement on account of the processing error described above. But it is well settled that a court in equity may reform a contract to correct a scrivener's error. *Reynolds v. Farmers Ins. Co.*, 90 Wn. App. 880, 885, 960 P.2d 432 (1998). A scrivener's error occurs when the intention of the parties is identical at the time of the transaction, but the written agreement errs in expressing that intent. *Reynolds,* 90 Wn. App. 885, 960 P.2d 434 (1998); *See also*, *Denny's*

Plaintiff General Casualty Company of Wisconsin's Motion for Partial Summary Judgment Regarding Reformation and Duty to Defend – 19 Case No.: 2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

*Rests. v. Sec. Union Title Ins. Co.*, 71 Wn. App. 194, 212, 859 P.2d 619, 629 (1993) ("Mutual mistake will support the reformation of a contract if both parties had identical intentions as to a term, and the writing materially varies from that intent"). "The rules of law governing the reformation of written agreements are applicable to the reformation of an insurance policy. An insurance contract is no different from any other contract, when the rules of law governing the reformation of written agreements are to be applied to it." *Rocky Mt. Fire & Cas. Co. v. Rose*, 62 Wn.2d 896, 902, 385 P.2d 45 (1963).

*Reynolds* involved a situation very similar to the one presented here. The insured's auto policy was cancelled on December 31, 1994, for nonpayment of premium. At 1:30 a.m. on January 11, 1995, the insured's daughter was involved in an accident. The insured visited her agent at 8:00 a.m. that same day and tendered payment, which was accepted. Farmers then sent Reyolds a letter stating that coverage was not in place at the time of the accident as it did not go into effect until 8:00 a.m. Two weeks later, Farmers sent the insured a declaration page stating the coverage began at 12:01 a.m. on January 11, 1995. After concluding that the 12:01 start time was a scrivener's error that conflicted with the actual bargain reached by the parties, the court reformed the policy to take effect at 8:00 A.M. on the date of reinstatement. The court reasoned that Reynolds "was clearly informed in the February 9 letter that her tender of payment at 8:00 a.m. on January 11 triggered reinstatement of her policy. If she had not agreed to those terms, she could have cancelled the policy. What she may not do is hold Farmers to the terms of the erroneous reinstatement." *Reynolds*, 90 Wn. App. at 885.

*Reynolds* squarely applies. Just as the insured in *Reynolds* was well aware that Farmers was unwilling to retroactively cover the accident that just occurred, Arrowhead, on behalf of General Casualty, clearly expressed its willingness to insure Reed Hein *only* if its policies excluded

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 20
Case No.: 2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

1  Personal and Advertising Injury.  Having no better option for coverage after being outright rejected

2  by every one of its other prospective general liability insurers, Reed Hein obtained the General

3  Casualty policies and they were issued with an Endorsement excluding personal and advertising

4  injury in 2020, just as the parties intended.  For the 2021 renewal, there was no request from Reed

5  Hein to for Personal and Advertising Injury coverage, nor any agreement by Arrowhead on behalf

6  of General Casualty to provide it in connection with the renewal.  Nor was there any realistic basis

7  for Reed Hein to expect that Arrowhead (or any other underwriter) would be willing to provide

8  coverage for Personal and Advertising Injury in 2021.  But in executing what was supposed to be

9  an automatic renewal without substantive changes, a clerical employee attempted to correct a

10  computerized error message by inserting a limit for Personal and Advertising Injury coverage,

11  which had the automatic effect of removing, without authorization, the bargained-for exclusion

12  from the 2021-22 Primary Policy.

13       Equity therefore directs this Court to reform the 2021-22 Primary Policy to restore the

14  endorsement that excludes "Personal and Advertising Injury" entirely.  It would be inequitable to

15  allow Reed Hein to obtain policy terms it did not bargain for on account of an administrative

16  processing error.  It would be particularly inequitable for Reed Hein to contend that language

17  neither party bargained for could apply to these pre-existing chronic legal problems that were

18  allegedly due to Reed Hein's entire business model.

19  **E.    Even if the Policy is Not Reformed, The Adolph Complaint Does Not Allege a Personal
       and Advertising Injury Offense**

20

21       The *Adolph* Complaint fails to allege any one of the offenses that are itemized within the

22  definition of "Personal and Advertising Injury."  As a threshold issue under the Personal and

23  Advertising Injury coverage, the allegations of the *Adolph* Complaint contain no discernable

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 21
Case No.:  2:23-cv-00725-TMC

4911-0829-8796, v. 1

relationship to at least six of the definition's seven subparts a. to g., including its multiple judicial offenses ("false imprisonment" and "malicious prosecution"), and its multiple commercial offenses, e.g., intellectual property rights infringement, and defamation or disparagement of an organization's "goods products and services."

Reviewing all seven subparts to the definition of "Personal and Advertising Injury," the *only* "Personal and Advertising Injury" offense warranting this Court's analysis for purposes of entering a partial summary judgment in favor of General Casualty would be the offense for "Oral or written publication, in any manner, of material that violates a person's right to privacy." (Dkt. 1-1 at 506). Attorney-client confidentiality concerns are only briefly referenced by the *Adolph* Complaint, and only in its "Unfair Acts and Practices" paragraphs alleging Reed Hein induced customers to purchase its services in part by representing that a privileged relationship existed with third-party attorney vendors Reed Hein hired. The *Adolph* Complaint alleges that Reed Hein retained law firms for customers and represented that Reed Hein could interact with the retained counsel while still retaining privilege and work product protections for both the customer and Reed Hein. The Complaint alleges that the federal court held otherwise "in 2018" and instead, vendors for Reed Hein were "required to disclose thousands of pages of communications that would have otherwise been privileged but for Reed Hein's interference with the attorney-client relationship." It further states that "Reed Hein did not tell the customers that their private information had been disclosed to their own adversaries." Dkt. 1-1 at 604 Par. 66. **Critically, the *Adolph* Complaint is devoid of any allegation that any person's privacy rights recognized in any jurisdiction were violated by an alleged publication.**

The allegations may contend factually that the plaintiffs or some class members did not receive the privileged arrangement that Reed Hein allegedly promised. It is clear, however, that

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 22
Case No.: 2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

such allegations do not suffice to trigger coverage under the Personal and Advertising Injury coverage grant, for several reasons.

There is no *legal theory* alleged for injury by publication that violated Reed Hein's customers' privacy rights. Washington law holds that the legal theory underlying each specific claim against the insured, rather than the nature of the claimant's alleged injury, determines coverage under a liability policy's Personal and Advertising Injury coverage. *Kitsap Cty. v. Allstate Ins. Co.*, 136 Wn.2d 567, 580, 964 P.2d 1173 (1998) ("Personal injury liability is a theory-based insurance coverage. It defines its coverage in terms of offenses, or theories of liability, not in terms of the injury sustained by the plaintiff.").

In *Kitsap Cty.*, the court held that damages which arose from actions that constituted a trespass or nuisance were equivalent to a "wrongful entry" or "invasion" and should be covered by the policies providing coverage for "wrongful entry." However, damages arising from actions of nuisance, trespass, and interference with use and enjoyment of property were *not* equivalent to "wrongful eviction" and, therefore, were not covered by the policies that provided coverage only for "wrongful eviction." *Id*. at 595. This was because an "eviction" requires "a physical ouster of the tenant by the landlord, or some act done by him on the premises, with the intent of depriving the tenant of the enjoyment and occupation of the whole or part of the same." *Id.*

Washington's theory-over-injury basis for personal and advertising injury coverage was reinforced in *Cle Elum Bowl, Inc. v. N. Pac. Ins. Co.*, 96 Wn. App. 698, 706, 981 P.2d 872 (1999). In that instance, a landlord sued a commercial tenant on the factual theory that the tenant failed to remove snow and ice from the building as promised resulting in the building's roof collapsing from accumulated snow and ice. The landlord sued the tenant for "breach of contract" and "negligence." The insured tenant sought coverage under the personal injury coverage offense of

Plaintiff General Casualty Company of Wisconsin's Motion for Partial Summary Judgment Regarding Reformation and Duty to Defend – 23
Case No.: 2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

1    "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a

2    room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or

3    lessor[.]"  *Cle Elum Bowl,* 96 Wn.App. at 706.  The court rejected this, explaining:

> 4    Mr. Lanphere contends the collapsed roof "interferes mightily" with
> his occupancy rights. Accordingly, he argues he suffered personal
> 5    injury under the personal liability section of the North Pacific
> policy. He misunderstands a basic tenet of *Kitsap County:* the
> 6    theory underlying the claim against the insured, not the nature of the
> alleged injury, determines whether personal injury coverage or
> 7    bodily injury and property damage coverage applies. *Kitsap County*,
> 136 Wn.2d at 579-80. To determine whether personal injury
> 8    coverage applies, the court must first look to the type of offense
> alleged. *Id.* at 580. Unlike the claims in *Kitsap County,* the claims
> 9    here for breach of contract and negligence are not analogous to
> claims for the offenses of wrongful entry or invasion of the right of
> 10   private occupancy. *Id.*

11   *Id.* at 707.  *See also*, *Webb v. USAA Cas. Ins. Co.*, 12 Wn.App. 2d 433, 448, 457 P.3d 1258, 1267

12   (2020) ("nuisance and "trespass" theories held analogous or equivalent to "wrongful entry" offense

13   outlined in policy).  Finally, in *Nat'l Sur. Corp. v. Immunex Corp.*, 162 Wn. App. 762, 256 P.3d

14   439 (2011), the court, using the same reasoning employed in *Kitsap County* and *Cle Elum Bowl*,

15   held that claims for violations of consumer protection statutes and other similar claims are not

16   analogous to discrimination offenses covered by the policy.  *Nat'l Sur. Corp. v. Immunex Corp.*,

17   162 Wn. App. 762, 772, 256 P.3d 439, 444 (2011), *aff'd* , 176 Wn.2d 872, 297 P.3d 688 (2013).

18   Here, as in *Immunex*, consumer protection violations are alleged, as distinct from any legal theories

19   available to customers based on violations of their privacy rights.

20        In context, all factual allegations relating to the attorney-client privilege in the *Adolph*

21   Complaint support either an alleged Consumer Protection Act violation or a Breach of Contract

22   claim against Reed Hein, because Reed Hein allegedly was deceptive in its representations about

23   the existence and extent of a privilege.  The CPA prohibits "unfair or deceptive acts or practices

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 24
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

1    in the conduct of any trade or commerce. . .," and provides a cause of action for any person who

2    is "injured in his or her business or property" by such acts or practices.  RCW 19.86.020.  Neither

3    that theory, nor any of the other theories alleged in the *Adolph* Complaint require proof of a

4    violation of "a person's right to privacy," as an element of the claim.

5         Nor are the CPA claims (or any other theories) in the *Adolph* Complaint analogous to

6    publication of material that is claimed to violate "a person's right to privacy."  The *Adolph*

7    Complaint does not allege any privacy tort theories such as false light, public disclosure of private

8    facts, or intrusion on personal seclusion.  The absence of such a theory is fatal to coverage.  The

9    *Adolph* suit does instead allege an "unfair or deceptive act" under the CPA, consisting of Reed

10   Hein's false representation that a privileged relationship could have existed.  Like the other

11   allegations against Reed Hein, the actual claim was not for privacy breaches, but instead that Reed

12   Hein knew and failed to disclose that it was incapable of delivering what it promised.

13   **F.     Even if Personal and Advertising Injury Were Alleged, it Falls Squarely Into the
         Exclusion for Disclosure of Confidential or Personal Information**

14

15        As set forth above, all of the General Casualty policies, including the renewal 2021-22

16   Primary Policy contained the following exclusion for disclosure of confidential or other non-public

     information:

17

18              **Access or Disclosure Of Confidential or Personal Information**

19              "Personal or advertising injury" arising out of any access to or
                disclosure of any person's or organization's confidential or personal
                information, including … any other type of non-public information.

20

21        This exclusion would clearly apply to any supposed offenses relating to disclosure of Reen

22   Hein customer information during the 2021-22 policy period.  The information allegedly at issue

23   in the *Adolph* suit's Complaint is contained in "thousands of pages of communications that would

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 25
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

have otherwise been privileged." Dkt. 1-1 at 604 Par. 66. The "privileges" referred to are either "attorney-client" privilege, or work product protections, and both of them would protect against disclosure of communications. Fed. R. Civ. P. 26 (b)(3); RCW 5.60.060(2)(a). Communications relating to the work of either an attorney or a consultant would be "confidential," without regard for whether a single piece of information communicated is "personal." The exclusion applies broadly, because only "confidential" information needs to be allegedly disclosed, and not also "personal" information. Broader still, the exclusion encompasses "any other type of non-public information," and every allegation in the *Adolph* suit that even implied any unspecified "private information had been disclosed" (Dkt. 1-1 at 604 Par 66-67), was tied to the underlying lawsuit's accompanying contentions that under two court orders, some type of non-public information was possibly made public and/or accessed or disclosed in discovery.

Multiple courts that have examined this specific exclusion have found it free of ambiguity and enforceable to bar coverage for claims alleging wrongful disclosure of information. *Aram Logistics v. United States Liab. Ins. Co*., No. 3:23-cv-01869-H-DEB, 2024 U.S. Dist. LEXIS 17951, at *21-23 (S.D. Cal. Jan. 31, 2024) (holding identical exclusion to be unambiguous and applicable to alleged misappropriation of confidential information); *Citizens Ins. Co. of Am. v. Mullins Food Prods.*, No. 22-cv-1334, 2024 U.S. Dist. LEXIS 33273, at *31-32 (N.D. Ill. Feb. 27, 2024) (exclusion applicable to wrongful dissemination of biometric information); *Great American Insurance Company v. Beyond Gravity Media Inc*., 560 F. Supp.3d 1024 (S.D. Tex. 2021) (Access or Disclosure exclusion eliminated insurer's duty to defend insured against allegations the insured misappropriated another's confidential information and trade secrets); *Cooper v. Westfield Ins. Co*., 488 F.Supp.3d 430 (S.D.W. Va. 2020) (allegations concerning the insured's alleged disclosure of employee's health information fell "squarely within the plain language" of the Access

Plaintiff General Casualty Company of Wisconsin's Motion for Partial Summary Judgment Regarding Reformation and Duty to Defend – 26
Case No.: 2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

1    or Disclosure exclusion); *Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, 102 F.4th

2    438, 440 (7th Cir. 2024) (access or disclosure exclusion applicable to biometric data).  Here, in all

3    of the underlying lawsuit's allegations that Reed Hein disclosed "privileged" information, such

4    "privileges" applied to *confidential* information.  If "privileged" information were not kept

5    confidential, the privilege would have been waived.  *Kittitas Cty. v. Allphin*, 195 Wn. App. 355,

6    367, 381 P.3d 1202 (2016) (generally, the attorney-client privilege protects only communications

7    made "in confidence" and a waiver occurs if a third person is present).

8        Therefore, as demonstrated above, these allegations against Reed Hein meet every element

9    of the exclusion of access to, or disclosure of, a person's confidential or non-public information.

10   **G.    The Breach of Contract Exclusion is Applicable**

11       The Coverage B. Personal and Advertising Injury policy exclusions further dictate that

12   coverage is excluded for enumerated offenses "arising out of a breach of contract."  Washington

13   law defines "arising out of" as meaning "'originating from,' 'having its origin in,' 'growing out

14   of,' or 'flowing from.'"  *Nat'l Sur. Corp. v. Immunex Corp.*, 162 Wn. App. at 772-73; *Austl.*

15   *Unlimited, Inc. v. Hartford Cas. Ins. Co.*, 147 Wn. App. 758, 774, 198 P.3d 514 (2008); *Toll Bridge*

16   *Auth. v. Aetna Ins. Co.*, 54 Wn. App. 400, 404, 773 P.2d 906 (1989).

17       Standard-form breach of contract exclusions have been interpreted under the law of many

18   jurisdictions around the country that follow the same interpretation, or a similarly broad

19   interpretation, of the phrase "arising out of."  As such opinions have held, incidental and

20   meaningful relationships between the breach of contract and the alleged offense are sufficient to

21   defeat coverage.  *Callas Enters. v. Travelers Indem. Co. of Am.*, 193 F.3d 952, 955-56 (8th Cir.

22   1999) (holding that all counts in complaint "flow from" or "have their origins in" a breach of

23   contract); *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458 (5th Cir. 2003); *S.*

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 27
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

*Africa Enter. Dev. Fund v. Ironshore Specialty Ins. Co.*, 2024 U.S. Dist. LEXIS 164071, at *7-15 (D. Del. Sept. 11, 2024); *Las Vegas Sands, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*., 2024 U.S. Dist. LEXIS 171950, at *8-9 (D. Nev. Sept. 23, 2024). *See also, James River Ins. Co. v. Ground Down Eng'g, Inc*., 540 F.3d 1270, 1274-76 (11th Cir. 2008) (in the context of a pollution exclusion, the phrase "arising out of" broadly and unambiguously excludes "damages related to" the excluded subject matter).

Here, the "breach of contract" claim is the first cause of action in the *Adolph* Complaint, and the remaining causes of action relate to inducements to enter the contract that Reed Hein allegedly did not intend to perform and was incapable of performing. The assurances that privileges and protections applied were set forth within the contract entered into between Reed Hein and its customers. These assurances were the original basis of any purported expectations that attorney-client privilege and/or other protections would apply to any confidential information that was conveyed by the communications between Reed Hein's representatives and its customers. Accordingly, every one of these claims by the putative class members arose out of an alleged breach of a contract these claimants entered into for the purpose of establishing that attorney-client privilege.

Therefore, *both* exclusions must apply, without conceivable exceptions to either one, to the full extent that Coverage B. Personal and Advertising Injury could ever have applied.

## IV.  CONCLUSION

The Court should reform the 2021-22 Primary Policy to restore the Personal and Advertising injury exclusion that was removed through a scrivener's error, in contravention to the parties' intention to automatically renew their existing contract (the 2020-21 Primary Policy) for an additional year. But even if the Court declines to reform the 2021-22 Primary Policy, it should

Plaintiff General Casualty Company of Wisconsin's Motion for Partial Summary Judgment Regarding Reformation and Duty to Defend – 28
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1

1    nevertheless grant summary judgment to General Casualty on its claim for declaratory relief,

2    because the underlying *Adolph* suit was not covered as a defined personal and advertising injury

3    "offense," and instead alleged only that the underlying putative plaintiffs' class paid for, and did

4    not receive, promised timeshare exit services.  And even if a claim of a "person's right of privacy"

5    violation was somehow conceivably alleged (and General Casualty has demonstrated there was no

6    such legal theory) in the *Adolph* lawsuit, that "offense" would necessarily fall directly into the

7    General Casualty policies' exclusion for disclosure of confidential or nonpublic information.

8           General Casualty had no duty to defend the *Adolph* suit.  Plaintiff therefore respectfully

9    requests that the Court grant its Motion for Partial Summary Judgment on its Complaint.  A

10   proposed form of Order is provided with this Motion.

11          DATED this 24th day of November, 2025.

12                                              *s/ Michael D. Handler*
                                                Michael D. Handler, WSBA #25654
13                                              Daniel L. Syhre, WSBA #34158
                                                Forsberg & Umlauf, P.S.
14                                              401 Union St., Suite 1400
                                                Seattle, WA  98101
15                                              Phone:  (206) 685-8500
                                                mhandler@foum.law
16                                              dsyhre@foum.law
                                                *Attorneys for Plaintiff General Casualty Company*
17                                              *of Wisconsin*

18                                              *I certify this memorandum contains 7,911 words, in*
                                                *compliance with the Local Civil Rules.*

19

20

21

22

23

Plaintiff General Casualty Company of Wisconsin's Motion for Partial
Summary Judgment Regarding Reformation and Duty to Defend – 29
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4911-0829-8796, v. 1