1

2

3

4

**Honorable Tiffany M. Cartwright**

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

7

GENERAL CASUALTY COMPANY OF
WISCONSIN, a Wisconsin corporation,

No. 2:23-cv-00725-TMC

8

Plaintiff / Counterclaim
Defendant,

**PLAINTIFF GENERAL CASUALTY
COMPANY OF WISCONSIN'S
RESPONSE TO COUNTERCLAIM AND
THIRD-PARTY PLAINTIFFS BRIAN
AND KERRI ADOLPH'S MOTION FOR
SUMMARY JUDGMENT RE: BAD
FAITH, INSURANCE FAIR CONDUCT
ACT, AND WASHINGTON
CONSUMER PROTECTION ACT
CLAIMS**

9

10

v.

11

REED HEIN & ASSOCIATES, LLC d/b/a
TIMESHARE EXIT TEAM, a Washington
limited liability company; MAKAYMAX, INC.,
a Washington corporation; BRANDON REED,
individually, BRIAN and KERRI ADOLPH, a
married couple,

12

13

14

Defendants.

**NOTE ON MOTION CALENDAR:
DECEMBER 22, 2025**

15

BRIAN and KERRI ADOLPH, a married
couple,

16

17

Counterclaim and Third-Party
Plaintiffs,

18

19

v.

20

RSUI GROUP, INC., a Georgia corporation;
and RSUI INDEMNITY COMPANY, INC., a
New Hampshire corporation,

21

22

Third-Party Defendants.

23

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and
Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith,
Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 1
Case No.:  2:23-cv-00725-TMC

4916-2272-5756, v. 1

# I.  **INTRODUCTION**

Denial of Counterclaim Plaintiffs Brian and Kerri Adolph's ("Adolphs") Motion for Summary Judgment, in its entirety, is the only result warranted by the Adolphs' Motion (Dkt. 53). Plaintiff General Casualty Company of Wisconsin ("General Casualty"), never had any duty to defend Reed Hein & Associates, LLC ("Reed Hein") against the Adolphs' putative class action brought against Reed Hein in October 2021.  Therefore, the Adolphs' Motion's baseline assumptions are baseless that Reed Hein would have been entitled to a litigation defense from General Casualty.  As General Casualty's own pending motion for partial summary judgment (Dkt. 57) makes clear, even if an unauthorized "Coverage" was written (due to a "scrivener's error") onto General Casualty's primary policy's automatic-renewal, this did nothing to create a duty to defend Reed Hein against allegations of Reed Hein's unfair trade practices alleged in *Brian Adolph et. al. v. Reed Hein & Associates et al.*, United States District Court for the Western District of Washington No. 2:21-cv-01378 (the "underlying lawsuit" or "*Adolph* suit").  In short, the fact that General Casualty had *no* contractual duty to defend defeats the grounds alleged for the Adolphs' Motion.

In summary, the Court should deny the Adolphs' Motion because:

1.      The Adolphs are wrong to contend that General Casualty breached its duty to defend Reed Hein in bad faith, violated the Consumer Protection Act ("CPA") by refusing to defend, and violated the Insurance Fair Conduct Act ("IFCA") by refusing to defend.  The Adolphs' Motion does not even attempt to demonstrate a duty to defend the *Adolph* suit on any or allegation to which General Casualty's coverage even conceivably applied.  Because the Adolphs failed to support this key element, their motion should be denied for that reason alone.

2.      The Adolphs improperly argue that General Casualty was not entitled to investigate

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and
Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith,
Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 2
Case No.: 2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 ● (206) 689-8501 FAX

the scrivener's error apparent in the written terms of the 2021-2022 primary policy to determine whether General Casualty had a duty to defend. Their position lacks support from any authority. Conversely, several courts have recognized that "duty to defend" analysis should be based on the actually-agreed policy terms, and that not language marred by a scrivener's error. And, as noted in General Casualty's concurrent motion, even the unauthorized terms would not have created a duty to defend or indemnify.

3.      Under long established Washington law, a "presumption of harm" and "coverage by estoppel" are not applicable remedies for an insurer's procedural missteps in handling a claim if it had no duty to defend, indemnify, or settle. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 127, 196 P.3d 664 (2008). Because General Casualty had no contractual obligations to Reed Hein related to the underlying proceeding, those remedies are not available to the Adolphs.

4.      Even if coverage by estoppel were applicable, the $630,187,204 covenant judgment settlement the Adolphs executed with Reed Hein does not established the presumptive measure of harm because Reed Hein failed to timely obtain judicial approval of the settlement under the criteria established for decades under *Chaussee v. Md. Cas. Co.*, 60 Wn. App. 504, 510, 803 P.2d 1339 (1991), and its progeny. The Adolphs instead pretend that their class action fairness hearing under Fed. R. Civ. P. 23(e) somehow served that purpose. But even they do not believe their own position – as demonstrated by their filings in the underlying lawsuit.

5.      Beyond the Adolphs' failure to establish reasonableness, the judgment amount is far beyond the scope of any permitted by "coverage by estoppel." Substantial reductions of amounts purportedly subject to General Casualty's coverage would have resulted from any objective consideration of the claims stated in that proceeding: for example, *partial* reductions

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re: Bad Faith, Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 3
Case No.: 2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

would be required based on the settlement amounts calculated for conduct of Reed Hein Canada (which General Casualty did not insure), and the *entire* class judgment would be inapplicable to General Casualty, because it consisted only of customers whose interactions with Reed Hein occurred *before* the General Casualty policy period commencing May 16, 2021.

## II.  RELEVANT FACTS

### A.    The Underlying *Adolph* Lawsuit

The underlying *Adolph* suit alleged that Reed Hein engaged in unfair and deceptive marketing and sale of "timeshare exit" services to customers seeking to terminate their timeshare obligations.  (Dkt. 1-1 at 582-83).  The essence of the *Adolph* suit's Complaint is that Reed Hein convinced these customers to pay Reed Hein in advance for its services when Reed Hein knew that it had no specialized knowledge or expertise that could benefit the customers in their goal of terminating their timeshare obligations and refused to honor a promised money-back guarantee. Reed Hein allegedly provided only obvious advice, for example, by advising customers to simply stop making payments on the timeshares.  It would then claim to have succeeded in "exiting" the customer when the timeshare company foreclosed.  (*Id*. at 588-89).  Reed Hein's business strategy allegedly depended on the timeshare companies' reluctance to sue the customer for breaching the timeshare obligation.  (*Id*. at 594-95).  The Complaint also alleged that Reed Hein engaged in performative acts that had no legally binding effect, such as filing a unilateral quitclaim deed purporting to convey the timeshare back to the resort.  (*Id*. at 596).  Timeshare exits allegedly occurred only through consent or acquiescence by the resorts selling the timeshares, a result the customer could seek directly without the assistance of Reed Hein.  (*Id*. at 594).

Most of the allegations relate to Reed Hein performing valueless services in exchange for substantial upfront payments from customers.  Also among the specifically-alleged "Additional

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith, Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 4 Case No.:  2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

Unfair Acts and Practices" was that "Reed Hein Falsely Asserts That Communications Between Reed Hein and its Customers are Protected by the Attorney-Client Privilege." (*Id*. at 604). Reed Hein's power of attorney agreements with customers stated that Reed Hein "acts as an agent pursuant to the … agreements when it hires law firms or transfers companies . . . and when it communicates and interacts with the law firms on behalf of Reed Hein customers." (*Id*.) Reed Hein allegedly asserted that "[i]f Reed Hein decides to hire a law firm for a customer, Reed Hein and the law firms specifically intend to create a relationship under [which] privileged material is freely exchanged." (*Id*. at ¶65). However, a court allegedly held "in 2018" that the privilege was not maintained in this relationship, and that communications within the relationship were subject to disclosure in discovery. (*Id*. at ¶66). The *Adolph* suit's Complaint further alleges Reed Hein and its vendors were twice ordered by the Middle District of Florida federal court to disclose documents that Reed Hein represented were privileged, yet Reed Hein failed to tell its customers, continuing instead to make the same false representations about its capacity to conduct attorney-client privileged litigation on the customers' behalf. (*Id*. ¶66-67). The *Adolph* suit's Complaint states the issue as: "Whether Defendants asserted that their conversations with customers and legal counsel were privileged when they knew or should have known of a court order stating those communications were not privileged." (*Id*. at ¶73c). The "Unfair Acts and Practices" alleged against Reed Hein are based on its misrepresentations of law due to its misleading concealment of these rulings from customers.

Reed Hein's legal troubles had preceded the *Adolph* suit. Notably, the Washington Attorney General filed suit against Reed Hein in February 2020 in King County Superior Court making substantially similar allegations, in a lawsuit styled *State of Washington v. Reed Hein & Associates LLC, et al.*, King County Superior Court No. 20-2-03141-1. The Attorney General's

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re: Bad Faith, Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 5
Case No.: 2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

Complaint described substantially the same business practices that were later alleged by the Adolphs, summarizing Reed Hein's violations of trade practice laws and the need for protection of Washington consumers: "Virtually every aspect of Defendants' operation is deceptive and/or unfair in violation of the Consumer Protect Act (CPA), and thousands of people across the country and in Canada—including over 2,500 consumers in Washington—have fallen victim to Defendants' practices." (*Id*. at ¶1.5). On or about September 28, 2021, the Attorney General and Reed Hein entered into a consent decree and settlement agreement in which the Insureds agreed to pay $2.61 Million to the state, in order to reimburse "for consumer restitution" and for the state's fees.

In May 2020, against the backdrop of the Washington Attorney General's lawsuit and Reed Hein's otherwise-notable claims history, Reed Hein obtained coverage for the May 16, 2020 to May 16, 2021 policy period from General Casualty but based on the negotiating parties' explicitly-stated agreement that the policy would exclude "Personal and Advertising Injury" coverage. Pertinent details of that transaction and of subsequent events in the underwriting process for the 2020-2021 policy period, as well as the automatic renewal scheduled for an effective date of May 16, 2021, are set forth in General Casualty's own Motion for Summary Judgment. (Dkt. 57 at pp. 8-12).

**B.**     **General Casualty's Coverage Investigation Regarding *Adolph***

On or about October 9, 2021, Mr. and Mrs. Brian Adolph filed the underlying lawsuit. General Casualty was notified on October 11, 2021. (Dkt. 54 at p. 54). On October 18, 2021, Kimberly Kotson, Senior Claims Technical Specialist, acknowledged General Casualty's receipt of Reed Hein's litigation notice by emailing Mr. Philip Gajic (Dkt. 54 p. 64), the Insured's broker. On October 19, 2021, Ms. Kotson also issued General Casualty's written acknowledgment to the

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re: Bad Faith, Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 6 Case No.: 2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

1    Insured's outside general / litigation counsel, Panda Kroll.  (Exh. A to Handler Decl. 12/15/25).

2    Ms. Kotson expressed the position to Reed Hein's representative(s) that she did not think there

3    will be coverage, but that she would be seeking a coverage opinion.  (Dkt. 54 at p. 64).  As Ms.

4    Kotson testified, her internal comment to her manager regarding this timeshare exit team and its

5    Better Business Bureau "F rating," had nothing to do with her coverage analysis.  (Handler Decl.

6    Exh. B, Kotson Dep., p. 49 ln 2 - p. 50 ln 22).  Ms. Kotson, by contrast, advanced her coverage

7    investigation by noting that the allegations in the Adolph's Complaint spanned a time period dating

8    back to 2013, and advised that the dates during which General Casualty issued policies were only

9    since 2020.  (Handler Decl. Exh. C., Kotson Dep. Exh. 3).  Mr. Gajic replied that coverage was

10    with Hartford during the prior years, and that he would report the claim to them as well.  (*Id*.)  On

11    October 19, 2021, Ms. Kotson further advised Ms. Kroll that a coverage investigation would be

12    undertaken, and that because defense counsel could not be appointed during the ongoing coverage

13    investigation, the insureds should protect themselves from a default.  (Handler Decl. Exh. A).  The

14    Insured's counsel confirmed their retention of the Corr Cronin LLP law firm to defend and

15    represent their interests, which had removed their risk of default judgment.  (Handler Decl. Exh.

16    B, at Kotson Dep. p. 74 ln 13 - p. 75 ln 1).

17         Settlement negotiations began in the *Adolph* suit the same month it was filed.  The first

18    discussions occurred on October 18, 2021, when Reed Hein's lawyers "proposed a settlement to

19    the Adolphs' counsel."  (Dkt. 53, p. 8 ln 22).  This was before any acknowledgment of an October

20    11th notice was required from General Casualty, but General Casualty did acknowledge receipt

21    that day.  The parties then mediated on or before November 24, 2021, with no notice provided to

22    General Casualty.  (Handler Decl. Exh. D, Bugbee Dep. pp. 107-108).  The *Adolph* suit was settled

23    in principle by the end of January 2022, when the parties exchanged executed copies of a short-

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and
Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith,
Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 7
Case No.:  2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

form settlement agreement known as a CR 2A. (*Id.*, p. 126 l. 23 – p. 127 l. 9; p. 138 l. 2 - p. 140 l. 6). By April 12, 2022, the underlying lawsuit's parties had executed the complete CR 2A. (Handler Decl. Exh. E, Loosvelt Dep. Exh. 14). But, Reed Hein's representatives never notified General Casualty of any such settlement activities, or invited General Casualty to participate in mediated resolution efforts. The existence of the final April 2022 settlement was not revealed until late-October 2022, to General Casualty's Washington counsel Mr. Michael. (Handler Decl. Exh. F, Michael Dep. Exh. 13; Exh. G, Michael Dep. p. 197 l. 5 - 198 l. 3).

In October 2021, Ms. Kotson had requested a legal opinion on the presence or absence of a duty to defend from General Casualty's in-house legal department. (Handler Decl. Exh. H, Mandel Dep. pp. 24-25). The legal analysis of coverage was assigned to General Casualty's in-house counsel, Aaron Mandel. (*Id.* at pp. 11-12). Mr. Mandel's job responsibilities at the time included providing legal opinions on whether or not the company owed a defense to a suit. (*Id.* at p. 13). Mr. Mandel had copies by November 18, 2021, of the *Adolph* suit's Complaint, and documents that were purported to include the contents of the General Casualty policies (*Id.* at pp. 41-42), but Mr. Mandel was concerned that the policy-related documents did *not* contain what would ordinarily constitute the information necessary to complete his analysis. As Mr. Mandel testified:

> Q.    And agree or disagree: On November 18th, 2021, you had the four corners necessary to determine whether these four insurance policies might provide coverage for the Adolph claim?
>
> A.    I disagree.
>
> Q.    Why do you disagree?
>
> A.    Because there were blatant contradictions on the policies that I received.

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re: Bad Faith, Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 8
Case No.: 2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

Q.     The policies that you received contained the complete terms of those policies; agree or disagree?

[objection interposed]

THE WITNESS: At the time that I would have received them, I would disagree with your statement.

Q.     Why would you disagree?

A.     Because there were multiple blatant inconsistencies between the policies, so I was not sure that I had the -- I guess all the terms within the four corners of the policies.

Q.     And what terms did you believe might have been missing at that time?

[objection interposed]

THE WITNESS: To me, it seemed that an exclusion to the Year 2 primary policy was missing.

(*Id*. p. 43 ln 12 – p. 44 ln 11).  Mr. Mandel sought to resolve discrepancies and contradictory information by seeking underwriting information.  (*Id*. at pp. 47-48).  The obvious and substantial inconsistency was that one of the four policies, the primary policy for the period 2021-2022, did not contain an Endorsement that excluded Personal and Advertising Injury coverage in its entirety.  (*Id*., p. 53 ln 20 – p. 54 ln 10).  During the course of Mr. Mandel's investigation, General Casualty continued to monitor the largely uneventful docket in the underlying lawsuit.  (*Id*., pp. 136-137).

In December 2021, General Casualty retained a Washington attorney, Kevin Michael of the Cozen O'Connor law firm, to assist in the evaluation of whether coverage could be afforded to the Insureds under the respective policies.  (*Id*. at 49-51).  That same month, the handling of the underlying matter was transferred to Henry T. "Mackie" LeFevre-Snee of General Casualty.  Mr. Michael and Mr. Mandel, as outside and in-house counsel for General Casualty, continued to evaluate whether coverage could or could not be afforded in light of the terms, conditions,

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and
Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith,
Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 9
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4916-2272-5756, v. 1

1   definitions, exclusions and endorsements of the respective Policies.  By late January 2022, Mr.

2   Michael expressed his view that coverage was not afforded under the Policies as written.  (Handler

3   Decl. Exh. G. at pp. 40-41).

4       To ensure that the correct polices were being analyzed, Mr. Mandel continued to follow-

5   up with Arrowhead General Insurance Agency, Inc. ("Arrowhead"), which was the separately

6   operating entity underwriting the policies for General Casualty.  The investigation process initially

7   yielded only selective components of the underwriting files, then required several rounds of

8   requests to receive copies of communications that were more complete.  An initial set of requested

9   communication documents arrived from Arrowhead, responsive to Mr. Mandel's request, in

10  approximately February 2022.  (Handler Decl. Exh. H, Mandel Dep. p. 70).  As received February

11  2, 2022, the correspondence justified Mr. Mandel's closer look at other underwriting

12  communications: on April 7, 2020, the Policies' underwriter had stated a requirement that General

13  Casualty could not even "quote" the premium, let alone issue a liability policy to Reed Hein, unless

14  Reed Hein was willing "to exclude PI & Advertising."  (Handler Decl. Exh. I, 9/5/25 Nelson Dep.

15  Exh. 3 at p. 5, labeled 0001128).  Following Mr. Mandel's reiterated requests in March 2022,

16  further underwriting records were provided on March 9, 2022.  (Handler Decl. Exh. J, 9/5/25

17  Nelson Dep. Exh. 8 at p. 2, labeled 0003286).  On March 9, 2022, Arrowhead's underwriting

18  representative Al Nelson explained that the "PI exclusions seemed to drop off the Package renewal

19  for no apparent reason" and that Arrowood COO Tiffany Poletti would continue to research it but

20  believed it might have been a "processing error."  (*Id.*)  Following Arrowhead's assurances in

21  March 2022 that their research was ongoing to address the "error", Mr. Michael then prepared a

22  draft coverage position letter, containing General Casualty's full and reasonable explanation of its

23  disclaimer, which was ready for Mr. Mandel's review on or about May 10, 2022.  (Handler Decl.

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and
Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith,
Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 10
Case No.:  2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

Exh. J, Michael Dep. Exh. 7).  By June 17, 2022, this draft disclaimer had been edited several times, between Mr. Michael and Mr. Mandel, to prepare for General Casualty's potential issuance to Reed Hein.  (Handler Decl., Exh. L).

Arrowhead's remaining documents relating to the "processing error" were provided to Mr. Mandel for the first time in late-July 2022.  (Handler Decl. Exh. M, Exh. 10 to Mandel Dep. at pp. 1-13; Mandel Dep. p. 137 ln 14 – p. 138 ln 21).  Arrowhead disclosed to Mr. Mandel that transactions initiated by Arrowhead's administrative vendor "ResourcePro" had caused the unauthorized addition of a $1 Million policy limit to an otherwise automatic renewal process. (Mandel Dep. p. 177 ln 7 – p, 178 ln 11).  Thus, documents explaining the intrinsic terms of the renewal policy were only provided after Mr. Mandel's follow-ups over a period of several months. During July, August, and September 2022, General Casualty's claims professional Mr. LeFevre-Snee repeatedly contacted Ms. Kroll, who herself had not been in contact with General Casualty on Reed Hein's behalf at all since December 2021.  (Handler Decl. Exh. N, Exh. 9 to Mandel Dep.).  On or about September 22, 2022, following multiple other September 2022 communications with Ms. Kroll, Mr. LeFevre-Snee issued General Casualty's detailed coverage position with regard to the underlying litigation. (Dkt. 1-1 at 614-626).

At no point in the investigation process did Reed Hein ask interim questions, or express any concern or urgency to obtain a coverage position from General Casualty on the *Adolph* suit. The Adolphs' Motion avoids specifics where it briefly claims that two outreaches, one by email in December 2021 and the next by voicemail in July 2022, meant that before General Casualty's September 2022 position letter "the Insureds had inquired with General Casualty multiple times regarding its tender." (Dkt. 53, p. 6 ln 18).  The Adolphs cite a December 9, 2021 email exchange, in which claim professional Mr. LeFevre-Snee informed Reed Hein's counsel Ms. Kroll that he

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith, Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 11 Case No.:  2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

was taking over the handling of the *Adolph* claim. (Dkt. 54, at pp. 130-132). This December 2021 email string was the last time Ms. Kroll expressed any interest in a General Casualty "coverage review" of these matters, until approximately eight months later. (*Id.*) On July 19, 2022, Mr. Lefevre-Snee's email to Ms. Kroll confirmed he received a voice message from Ms. Kroll, and that General Casualty was "still finalizing our coverage position. We hope to have it soon. Thank you for bearing with us." (Dkt. 54 at 134). Ms. Kroll's July 2022 communication apparently failed to mention the *Adolph* suit had been settled for months.

## C.    The Underlying *Adolph* Settlement and the Approval Process in the Underlying Action

On December 5, 2022, the Adolphs filed an unopposed motion for preliminary approval of the April 12, 2022, CR 2A Agreement. The motion asked the court to schedule a fairness hearing on or after March 1, 2023, in order to give the underlying parties time to notify *class members*. The purported basis for this $630,187,204 stipulated judgment was the calculation of maximum Washington Consumer Protection Act damages for each of Reed Hein's alleged 34,636 customers as calculated from the inception of Reed Hein's business in 2012. (Dkt. 54 p. 229-233). The settlement was calculated by taking all fees paid by all customers, followed by application of the maximum discretionary treble damages that could possibly be awarded under the Consumer Protection Act statute (up to $25,000). (*Id.*) In other words, the settlement assumed that Reed Hein had not legitimately earned *any* funds by providing services to customers and that each customer was entitled to the maximum discretionary court award of treble damages regardless of their individual circumstances.

On May 10, 2023, the Adolphs filed an unopposed motion for final approval of the class action settlement and entry of a $630,187,204 judgment against the defendants. (Handler Decl.

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and
Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith,
Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 12
Case No.:  2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

Exh. O).  The legal arguments in support of approval were directed only to whether the settlement

satisfied the requirements of Fed. R. Civ. P. 23(e) and the due process requirements for notifying

class members.  (*Id.* at pp. 9-15).  The motion did not also seek approval of the settlement under

*Chaussee v. Md. Cas. Co.*, 60 Wn. App. 504, 510, 803 P.2d 1339 (1991), for the purpose of binding

Reed Hein's insurers as well as the class.  On May 19, 2023, the court entered an Order Granting

Final Approval of Class Settlement.  (Dkt. 54 p. 239-243).  The order described the settlement,

made note of the class members who had effectively excluded themselves from the settlement, and

directed entry of the class action judgment.  (*Id.*)  The order made no reference to consideration of

the *Chaussee v. Md. Cas. Co.* factors.

In a January 25, 2024 filing, the Adolphs acknowledged that class action approval and a

*Chaussee* hearing were two different things, and that the court in the underlying class action

proceedings had only conducted the former proceeding:

> Given that the class was certified in this action; the Court approved
> the class covenant judgment settlement in this action; the Court is
> familiar with the underlying claims of this case and its posture at the
> time of settlement; and the Court made many considerations similar
> to the *Chaussee* reasonableness factors in granting final approval,
> Plaintiffs believe that this action is appropriate for a determination
> of the reasonableness of the stipulated judgment amount and would
> best serve judicial economy.

(Handler Decl. Exh. P, Underlying Action Dkt. 47 at p. 3 ll. 8-13).  The Adolphs asked for the

following relief:  "set a status conference to advise whether it will determine the reasonableness

of the covenant judgment amounts entered in this case."  (*Id.*)  The following day, the Court

declined to set the conference, noting that no reasonableness motion had been filed:

> MINUTE ORDER: Plaintiffs have filed an "Unopposed Motion for
> a Status Conference," purportedly "to address whether the Court
> will determine the reasonableness of the stipulated amounts of the
> covenant judgments entered into by the parties in this case."  Dkt.

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and
Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith,
Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 13
Case No.:  2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

No. 47.  In the absence of a pending motion for such determination of reasonableness, the Court DENIES the request for a status conference. Authorized by Judge Barbara J. Rothstein. (SB) (Entered: 01/26/2024)

(Dkt. 54, p. 202).

The Adolphs never moved for a reasonableness determination.

## III.  <u>LEGAL AUTHORITY</u>

### A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996).

The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the non-movant's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 250.  However, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment.  *Anderson*, 477 U.S. at 248.

### B.    <u>General Casualty Did Not Breach the Duty to Defend Or Commit Bad Faith</u>

An insurer has a duty to defend "'when a complaint against the insured, construed liberally,

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith, Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 14 Case No.: 2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'" *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52-53, 164 P.3d 454, 459 (2007) *citing Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002). The duty to defend is ordinarily contrasted with the duty to indemnify, which exists only if the policy actually covers the insured's liability. *Woo*, 161 Wn.2d at 53.

To succeed on a bad faith claim, the policyholder must show the insurer's breach of the insurance contract was "unreasonable, frivolous, or unfounded." *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484, 78 P.3d 1274 (2003). Whether an insurer acted in bad faith is a question of fact. (*Id.*) Summary judgment is ordinarily proper only in contexts involving no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances. (*Id.*)

The Adolphs' motion fails to demonstrate bad faith breach of the duty to defend for a number of reasons. First, the Adolphs do not even attempt to demonstrate General Casualty had a duty to defend Reed Hein against the *Adolph* suit. There cannot be a bad faith breach of the duty to defend unless there is a duty to defend in the first instance. Second, the Adolphs incorrectly argue that an inquiry to determine the correct policy terms is an improper reliance on "extrinsic evidence." This is incorrect because a determination of the actual agreed contract terms necessarily precedes any application of those terms to the *Adolph* suit's Complaint.

### 1. The Adolphs Assume, Rather than Demonstrate, that General Casualty had a Duty to Defend Reed Hein the *Adolph* Suit

The Adolphs assert that General Casualty unreasonably breached the duty to defend as a matter of law. (Dkt. 53 at 14). But the Adolphs skip straight to the breach element without arguing for or demonstrating the existence of a duty. As set forth in General Casualty's own motion, General Casualty had no duty to defend because the (1) the policies, as reformed, do not contain a

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and
Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re: Bad Faith,
Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 15
Case No.: 2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

coverage grant for Personal and Advertising Injury; (2) the Adolph complaint does not allege a "Personal and Advertising Injury" and advertising injury offense; and (3) even if an offense is alleged, two exclusions would be clearly applicable.  (Dkt. 57).

The primary case that the Adolphs claim to be "instructive" is *Rushforth Constr. Co. v. Wesco Ins. Co.*, No. C17-1063-JCC, 2018 U.S. Dist. LEXIS 56852, at *6 (W.D. Wash. Apr. 3, 2018).  But *Rushforth* is easily distinguishable.  In *Rushforth*, the court did not analyze the contractual duty to defend because it was not disputed.  The opinion states, "Wesco does not contest that it had a contractual duty to defend Plaintiff."  (*Id.*)  The only question in *Rushforth* was thus whether the insured *breached* the duty to defend by unreasonably delaying its agreement to defend.

The *Rushforth* court also assigned significance to the fact that the insured sent four letters requesting a coverage position over the course of ten months, but the insurer did not even reply to any of these inquiries.  (*Id.* at *3, *11).  By contrast, here Reed Hein's representatives did not send any letter or other communications expressing urgency about a coverage decision.  The Adolphs point only to one email chain of December 9, 2021, but those emails were initiated by General Casualty's adjuster Mackie Lefevre-Snee to confirm that he was taking over the coverage review. The only other alleged communication was a voicemail in July 2022, to which Mr. Lefevre-Snee clearly responded.  Notably, at that time the underlying case had already been settled for months.

The *Rushforth* court also assigned significance to the fact that there was no apparent reason for the delay.  The Court stated that "An insurer can offer a reasonable basis for its delay as significant evidence that it did not act in bad faith."  (*Id*. at *12).  The insurer in *Rushforth*, however, could offer no basis at all for its delay other than a "technical mistake" that was never specified.  (*Id.*)  Here, by contrast, General Casualty had a basis for its actions.  It was investigating

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and
Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith,
Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 16
Case No.: 2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

a glaring discrepancy in the wording of its second-year renewal policy, and it was ultimately able to determine that an exclusion was left off of the second year primary policy because of a scrivener's error.

The Adolphs incorrectly state that "[a]ny subsequent judicial determination regarding whether General Casualty's policies covered the *Adolph* lawsuit is immaterial." (Dkt. 53 at 14 ln 15-16). The Adolphs cite *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 131 (2008) in support of this argument. But *Onvia* did not involve a bad faith failure to defend. Instead, it involved a determination of a cause of action for *procedural bad faith* in responding to a tender when, like here, the insurer did not owe a duty to defend or any other coverage benefit. As is set forth in more detail below, the remedies and damages available in such a circumstance are much narrower than when the facts involve a breach of the duty to defend. The existence of the duty to defend is clearly not "immaterial" to a determination of whether General Casualty allegedly breached a duty to defend in bad faith and as a matter of law.

2.     <u>**The Duty to Defend Must be Determined Based on the Correct Policy Terms as Reformed**</u>

The Adolphs also are wrong to invent a ban on the investigation of a mutual mistake that occurred during policy issuance, where they state without legal support that "[u]nlike fact and evidentiary determinations like indemnification or contract reformation, the duty to defend is 'based on the *potential* for *liability*'" (Dkt. 53 p. 12 ll 17-18, sub-quoting *Woo*). None of the cases the Adolphs cite state or suggest that contractual duty to defend could exist based on a scrivener's error or anything other than the actual contract the parties agreed to. Indeed, *Woo* makes no mention of reformation at all, and it certainly does not support the Adolphs' argument that it controls the question of an appropriate reformation investigation. Instead, the Adolphs invoke a

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and
Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith,
Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 17
Case No.:  2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

mechanical application of the "eight corners" rule, suggesting that it mandates a duty to defend

analysis based on an erroneous writing the parties did not agree to.  No Washington court has so

held.  The Fifth Circuit, when confronted with the same argument, explained why this analysis is

inappropriate:

> When a mutual mistake is alleged, the first task of the court is not to apply, perfunctorily, the "eight corners" rule and then directly proceed to interpret the insurance policy. Instead, the first matter to address is whether the disputed provision results from an agreement between the parties.

*Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 408 (5th Cir. 2012).

Similarly, in *Regions Bank v. Commonwealth Land Title Ins. Co.*, 2013 U.S. Dist. LEXIS 90504,

*9-10 (S.D. Fla. June 26, 2013), the court likewise determined that reformation must be decided

*prior* to the duty to defend, because it "naturally follows that in order to accurately decide a party's

obligations under a contract a court should begin by analyzing the parties' *actual* agreement, as

reformed, so as to not be misled by a mutual mistake."  Washington courts recognize threshold

issues to be determined in advance of the "eight corners," analysis, such as, for example, whether

the person seeking coverage qualifies as a named insured or other insured under the policy.

*Hartford Fire Ins. Co. v. Leahy*, 774 F. Supp. 2d 1104 (W.D. Wash. 2011) (court considered

testimony as to whether a person was actually an "employee" and thus and insured, prior to

conducting duty to defend analysis).

An investigation of the policy terms is not a search for "extrinsic evidence" within the

meaning of the "eight corners" rule, because policy terms are intrinsic evidence of the contract.

Here, investigating what was part of the April 2020 offer to quote the General Casualty policies,

its acceptance, and the authorized terms (and what was specifically *not* authorized), constituted

essential threshold information to consider as part of the insurance policies' "four corners" in an

---

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith, Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 18 Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4916-2272-5756, v. 1

"eight corners" analysis. Even if treated as "extrinsic," facts of whether an insured agreed to be "bare of insurance" regarding a potential policy coverage have long been treated as permissible in Washington, "for the purpose of ascertaining the intention of the parties and properly construing the writing" of the policy. *Burns v. Scottsdale Ins. Co.*, 2010 U.S. Dist. LEXIS 74907, at *16 (W.D. Wash. July 23, 2010), aff'd, 434 F. App'x 675 (9th Cir. 2011), *citing Lynott v. Nat'l Union Fire Ins. Co.*, 123 Wn.2d 678, 683, 871 P.2d 146 (1987).

### 3. There Are Ample Genuine Factual Issues to Support That General Casualty's Claim Handling was Reasonable

Considering the authorities and evidence above, General Casualty's claim handling was reasonable. The Adolphs criticize General Casualty for continuing its coverage investigation after its Washington counsel stated an initial opinion in January 2022 that the policies, as written, afforded no coverage. They assert that "General Casualty possessed the material information for determining its duty to defend." (Dkt. 53, at 15 ln 18-20). But they disregard that General Casualty's initial conclusion was of *no* duty owed, and therefore that only an outright rejection of Reed Hein's defense funding would have been issued as General Casualty's preliminary position.

There is at least an issue of fact as to whether General Casualty forgoing its immediate outright rejection of coverage, and instead continuing to investigate what contract provisions were agreed between the parties, constituted reasonable approaches to resolving the clear and obvious discrepancies in the policies' contents. *Smith v. Safeco Ins. Co.*, 150 Wn.2d at 484 (requiring resolution of issues of fact before there can be a ruling on insurer bad faith). Glaringly, the policies contained Declarations pages that contradicted themselves (e.g., by stating in the very same Declarations a Coverage B policy limit, and also the complete exclusion of Coverage B by Endorsement), and contradicted each other. The Adolphs' position also unreliably depends on a

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and
Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re: Bad Faith,
Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 19
Case No.: 2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4916-2272-5756, v. 1

January 2022 "certification" document:  that "certification" rubber-stamped and questionably ignored the visibly-contradictory Declarations page of Policy No. BUM 0006548-01, both internally and in regard to its underlying second-year primary policy.  Later investigations, as undertaken with Arrowhead from February 2022 to July 2022, proved the executing underwriter Al Nelson's January 2022 "certification" had been invalid.  In the meantime, the existence or nonexistence of a duty to defend became moot, to the extent it was ever an ongoing concern, when the Adolphs and Reed Hein executed in January 2022 their settlement agreement to resolve the *Adolph* suit.

The Adolphs assert, nevertheless, that General Casualty improperly continued after January 2022 (while uninformed about the Adolphs and Reed Hein's settlement) to "investigat[e] extrinsic underwriting materials" along with the circumstances surrounding the missing Personal and Advertising Injury exclusion and the existence of a basis for reformation.  (Dkt. 53, at p. 15 l. 23-24).  The Adolphs argue that General Casualty's further investigation to obtain information about the policy issuance history was unnecessary – so in other words, the Adolphs must be contending that General Casualty should have denied its duty to defend immediately.  But it is essential to any correct coverage position that the position is based on the actual policy that the parties agreed upon.

**C.**    **Coverage by Estoppel and a Presumption of Harm are Not Available Because General Casualty Never Had Any Actual Duty to Defend**

The absence of a contractual duty to defend or indemnify Reed Hein would preclude the remedies of any presumption of harm and coverage by estoppel, even if General Casualty's conduct was somehow determined to be in bad faith.  In *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 127, 196 P.3d 664 (2008), the insurer, St. Paul, was accused of unjustified

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and
Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith,
Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 20
Case No.: 2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

nine-month delay in responding to the tender of a "fax blasting" class action lawsuit against its insured.  The insured, as here, entered into a stipulated judgment to resolve a class action and assigned its rights to pursue the insurer to the class.  In a later declaratory judgment action, a federal court ruled on cross-motions for summary judgment that St. Paul did not have a duty to defend the underlying lawsuit based on its policy language.  *Onvia*, 165 Wn.2d at 128.  This ruling left unresolved the class's remaining claim for "common law 'procedural' bad faith and violation of the CPA" arising from St. Paul's failure to timely respond to the tender  (*Id*.)  St. Paul then filed an additional motion asserting that in the absence of a duty to defend, it could not be liable for its procedural missteps in responding to the tender.  The district court then certified the following questions to the Washington Supreme Court:

> (1)    Under Washington law, does an insured have a cause of action against its liability insurer for common law procedural bad faith for violation of the Washington Administrative Code and/or for violation of the Washington Consumer Protection Act (CPA), chapter 19.86 RCW, even though a court has held that the insurer had no contractual duty to defend, settle, or indemnify the insured?
>
> (2)    If the answer to the first question is "yes," then:
>
> > (a)    Should the court require the insured to prove that the insurer's conduct caused actual harm, or should the court apply a presumption of harm?
> >
> > (b)    How should damages be measured?

*Onvia*, 165 Wn.2d at 126.  The court answered the first question in the affirmative, finding that causes of action for bad faith and Consumer Protection Act violations could survive the absence of any contractual duty.  But the Court answered the second question by holding that coverage by estoppel and a presumption of harm were not available, and further the class claimant assignees were required to prove the actual harm and actual damages incurred as a result of the insurer's bad

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith, Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 21
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4916-2272-5756, v. 1

1  faith conduct. *Onvia,* 165 Wn.2d at 133.

2      Here, as in *Onvia*, presumed harm and coverage by estoppel are not available to the

3  Adolphs because General Casualty had no duty to defend, indemnify, or settle the suit they brought

4  against Reed Hein.

5  **D.**   **Even if Coverage by Estoppel is Available, the Scope of Coverage by Estoppel Could Not Extend to Business Entities that General Casualty did not Insure, or to**

6      **Transactions Occurring Before its Policy Period**

7      The *Adolph* suit's alleged class includes Canadians that would have been customers of a

8  company known as "Reed Hein Canada," not customers of General Casualty's named insured,

9  Reed Hein & Associates LLC.  The class settlement also consists of refunds to class members of

10  all amounts paid by Reed Hein's customers since its founding in 2012.  None of the payments

11  from class members, as calculated within the stipulated judgment amount, took place during the

12  May 16, 2021 to May 16, 2022 coverage period.  (Handler Decl. Exh. Q, Voth Rebuttal Opinion

13  10/22/25, at Par. 11, 34 & 35).

14      In *Ledcor Indus. (USA), Inc. v. Mut. of Enumclaw Ins. Co.*, 150 Wn. App. 1, 10, 206 P.3d 1255,

15  1261 (2009) (*Ledcor*), the court set outer limits on the scope of "coverage by estoppel" as a

16  consequence of adjudicated non-procedural bad faith.  In *Ledcor*, an insurer for a subcontractor

17  breached its duty to defend an additional insured general contractor.  The general contractor,

18  Ledcor, sought coverage by estoppel for all of its liability on the project, even though the

19  subcontractor's insurer would only have indemnified Ledcor for damages arising from the

20  subcontractor's work.  The court rejected Ledcor's argument, and held that "estoppel does not

21  operate to create coverage." *Ledcor,* 150 Wn. App. at 11.  In other words, "coverage by estoppel"

22  would not judicially mandate an insurer to provide coverage that it did not issue.

23      Here, as in *Ledcor*, Reed Hein tendered the defense of a suit by the Adolphs and the Adolphs'

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and
Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith,
Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 22
Case No.:  2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

Motion improperly seeks "coverage by estoppel" based on the 2021-2022 policy for claims of customers since 2012, i.e., customers in nearly the full decade that preceded any coverage General Casualty ever provided under its 2021-2022 policy.  The unauthorized Coverage B provisions would have only applied to an "offense" that took place during the 2021-2022 policy period, and none were even allegedly part of the CR 2A.  The Adolphs' Motion is also incorrect to seek "coverage by estoppel" for the exposures of a Canadian entity that General Casualty never agreed to insure.  Coverage by estoppel for the Adolphs' settlement would improperly expand and "create" a new non-issued coverage, contravening the holding of *Ledcor*.

### E.      **The Stipulated Judgment Has Not Been Approved as Reasonable for the Purpose of Binding and Insurers to the Judgment**

The Adolphs argue that their settlement is "reasonable" under the factors used by Washington Courts for insurance covenant judgments under *Besel v. Viking Ins. Co.*, 146 Wn.2d 730, 738, 49 P.3d 887 (2002) because the settlement has been approved as "fair, reasonable, and adequate" for the purpose of class action settlement approval under Fed. R. Civ. P. 23(e).  This argument must be rejected, because these two types of reasonableness reviews are directed at very different concerns, and cannot be substituted for one another.

Settlement of any class action that purports to bind absent class members requires court approval under Fed. R. Civ. P. 23(e).  The need for such approval is to ensure fairness to *class members*, who, though they will be bound by the proposed settlement, are not directly represented in the negotiations. There is a concern that such settlements tend to primarily favor the interests of class counsel or class representatives while neglecting the interests of absent class members.  Without the class action settlement approval process, class members may experience a failure of due process as their rights are negotiated away.  For these reasons, Rule 23(e) requires the

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and
Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith,
Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 23
Case No.:  2:23-cv-00725-TMC

4916-2272-5756, v. 1

reviewing court's attention to the following factors, designed to assess whether the class members are being treated fairly:

> **(2)** *Approval of the Proposal.*  **If the proposal would bind class members**, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > **(A)** the **class representatives** and **class counsel** have **adequately represented the class**;
> >
> > **(B)** the proposal was negotiated at arm's length;
> >
> > **(C)** the **relief provided for the class is adequate**, taking into account:
>
> \*..\*..\*

Fed. R. Civ. P. 23(e) (**emphases** added).  This type of approval is what the Adolphs sought in their "Unopposed Motion for Final Approval of Class Action Settlement."  (No. 2:21-cv-01378 Dkt. No. 37, Exh. O to Handler Decl.).

By contrast, the purpose of an insurance reasonableness hearing is to protect the nonparty insurance company *against excessive* settlements, resulting from the fact that the judgment debtor insured has become indifferent to the amount of the settlement once they are protected by the claimant's covenant not to execute.  *Besel v. Viking Ins. Co.*, 146 Wn.2d 730, 737-38, 49 P.3d 887, 891 (2002) ("We are aware that an insured's incentive to minimize the amount of a judgment will vary depending on whether the insured is personally liable for the amount").  An insured may even encourage offers of unreasonably high settlements, where "an insured may settle for an inflated amount to escape exposure …." *Chaussee v. Md. Cas. Co.*, 60 Wn. App. 504, 510, 803 P.2d 1339 (1991).  A reasonableness hearing "protect[s] insurers from excessive judgments especially where … the insurer has notice of the reasonableness hearing and has an opportunity to argue against the settlement's reasonableness." *Bird v. Best Plumbing Grp., LLC*, 175 Wn.2d 756, 765-66, 287 P.3d

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and
Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith,
Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 24
Case No.:  2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

1   551 (2012).

2      Nothing in the Fed. R. Civ. P. 23(e) review requires the reviewing court to consider whether

3   the settlement amount is excessive or unfair to a nonparty insurer.  Instead, the court is concerned

4   only with whether the settlement makes adequate provision for the absent class members.  From

5   this perspective, the higher the settlement the better, all other things being equal.  The Fed. R. Civ.

6   P. 23(e) review is to demonstrate the settlement's provision for absent class members is not ***too***

7   ***low***, while *Besel / Chaussee* review is designed to ensure that the settlement amount is not ***too***

8   ***high.***

9      Here, there are glaring indicia that the consented settlement amount was unreasonably

10  exorbitant. For example, it includes payment of claims obviously time barred under the CPA's

11  four-year statute of limitations by awarding damages to customers from the inception of Reed

12  Hein's business in 2012.  RCW 19.86.120.  Under a *Chaussee* analysis, this would be compelling

13  evidence of unreasonableness.  But under a Rule 23(e) analysis, it is simply a windfall for the class.

14     Washington courts have long recognized that these two settlement approval processes are

15  for different purposes and therefore, approval for one does not constitute approval for another.  In

16  *Chaussee*, 60 Wn. App. at 512, the court rejected the substantially the same argument being

17  advanced here.  The *Chaussee* court rejected the argument that a settlement was reasonable for

18  covenant judgment purposes because the settlement had been previously judicially approved as

19  reasonable in a minor's compromise hearing.  Its opinion stated: "The fact that the court approved

20  the settlement does not necessarily prove it was reasonable for purposes of the issue in this case."

21  (*Id.*, at 513).  The purpose of an approval of a settlement by a guardian on behalf of a minor is very

22  similar to the purpose of a Fed. R. Civ. P. 23(e) hearing.  It is to address the concern that the

23  settlement may make inadequate provision for the minor, who lacks capacity to protect their

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and
Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith,
Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 25
Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4916-2272-5756, v. 1

interest and is therefore at risk of exploitation in the transaction.  Like the Fed. R. Civ. P. 23(e) hearing, the minor's compromise hearing does not analyze whether the defendant proposes to pay too much to the minor claimant and is therefore not a substitute for an insurance reasonableness hearing.

The Adolphs were aware that they did not conduct an insurance reasonableness hearing in the underlying action.  In a January 25, 2024 filing moving for a status conference in the underlying action, the Adolphs acknowledged that class action approval and *Chaussee* hearing were two different things and that it was necessary to move for an additional hearing "to address whether the Court will determine the reasonableness of the stipulated amounts of the covenant judgments entered into by the parties" to the *Adolph* suit.  (Handler Decl. Exh. P, Underlying Action Dkt. 47 at p. 1 ll. 24-25).  When the Court declined to set the requested conference, Judge Rothstein noted that no reasonableness motion was pending, or had even been filed.  Even though neither the Adolphs nor Judge Rothstein believed that a *Chaussee* hearing had taken place, the Adolphs currently contend that General Casualty should have discerned that it would be bound as though one somehow did take place.

Due process requires that General Casualty have notice and an opportunity to be heard before it can be bound by the outcome of a reasonableness hearing.  *Hawkins v. ACE Am. Ins. Co.*, 32 Wn. App. 2d 900, 924-25, 558 P.3d 157 (2024).  Because the Adolphs participated in the hearing that they now claim was a *Chaussee* hearing and even they, until recently, believed no such hearing occurred, there is no argument that due process was satisfied as to General Casualty.  Any holding that General Casualty is bound, especially in light of the substantial amounts at stake, would fail to comport with the applicable requirements of due process.

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and
Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith,
Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 26
Case No.:  2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

F. __General Casualty did not Violate, or Cause Damages Under, IFCA or CPA__

IFCA applies only if an insurer unreasonably denes coverage or payment of benefits.  RCW 48.30.015(1).  *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 683, 389 P.3d 476 (2017).  In the context of an alleged duty to defend, this can only occur if the insurer actually owed a duty to defend.  Specifically, IFCA applies "where an insurer fails to provide defense under a liability policy that it was required to provide and the failure was unreasonable," but failing such a demonstrated and unreasonable denial, there can be no violation under IFCA.  *Hawkins,* 32 Wn. App. 2d at 930.  Here, because General Casualty did not owe any defense-funding benefits, it did not unreasonably deny them.  Moreover, the consent judgment amount, which Adolphs' counsel fashioned from selective Reed Hein statistics, would never be IFCA's statutory measure of only the "actual damages sustained" that were proximately caused by General Casualty.

Nor do the Adolphs cite any evidence of "actual damages sustained" because of any alleged CPA violations, as required by RCW 19.86.090.  The Adolphs also fail to establish any CPA violations as a threshold matter, because they cite WAC 284-30 provisions that General Casualty met, if and when they ever applied, by investigating and acting "reasonably promptly."  WAC 284.30.330(2); RCW 19.86.920; *American Mfrs. Mut. Ins. Co. v. Osborn*, 104 Wn. App. 686, 699-700, 17 P.3d 1229 (2001).

## IV.  __CONCLUSION__

The Adolphs fail to argue (let alone demonstrate) that General Casualty had a duty to defend and breached such a duty in bad faith.  Rather, as confirmed by General Casualty's motion, General Casualty had no duty to defend Reed Hein against the *Adolph* suit.  General Casualty's investigation of coverage was reasonable in light of the specific scrivener's error in the 2021-2022 renewal policy, or, at a minimum, there is an issue of fact with respect to the reasonableness of

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith, Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 27 Case No.:  2:23-cv-00725-TMC

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4916-2272-5756, v. 1

General Casualty's claim handling.  Moreover, even if there was procedural bad faith and no issues of fact regarding the claims handling, Reed Hein would not be entitled to coverage by estoppel for the amount of the settlement in the underlying lawsuit because such penalties are unavailable as matter of Washington law.  Even if General Casualty's right to defend somehow made the amount of consent judgment material here, the Adolphs failed to secure the required judicial approval for a covenant judgment settlement, and all (or the majority) of their amounts stated in settlement would be beyond the scope or time periods of General Casualty's Policies.

Plaintiff therefore respectfully requests that the Court deny the Adolphs' Motion for Summary Judgment.

DATED this 15th day of December, 2025.

*s/ Michael D. Handler*
Michael D. Handler, WSBA #25654
Daniel L. Syhre, WSBA #34158
Sarah P. Pozzi, WSBA #55744
Forsberg & Umlauf, P.S.
401 Union St., Suite 1400
Seattle, WA  98101
Phone:  (206) 689-8500
mhandler@foum.law
dsyhre@foum.law
spozzi@foum.law
*Attorneys for Plaintiff General Casualty Company of Wisconsin*

*I certify this Response contains 8,395 words, in compliance with the Local Civil Rules.*

Plaintiff General Casualty Company of Wisconsin's Response to Counterclaim and Third-Party Plaintiffs Adolph's Motion for Summary Judgment Re:  Bad Faith, Insurance Fair Conduct Act, and Washington Consumer Protection Act Claims – 28
Case No.:  2:23-cv-00725-TMC

4916-2272-5756, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX