HON. TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GENERAL CASUALTY COMPANY OF
WISCONSIN, a Wisconsin corporation,

      Plaintiff/Counterclaim Defendant,

      v.

REEDHEIN & ASSOCIATES, LLC d/b/a
TIMESHARE EXIT TEAM, a Washington
limited liability company; MAKAYMAX,
INC., a Washington corporation; BRANDON
REED, individually; and BRIAN and KERRI
ADOLPH, a married couple,

      Defendants/Counterclaim and Third
      Party Plaintiffs,

      v.

RSUI GROUP, INC., a Georgia corporation;
and RSUI INDEMNITY COMPANY, INC.,
a New Hampshire corporation,

      Third Party Defendants.

Case No. 2:23-cv-00725-TMC

**DEFENDANTS BRIAN AND KERRI
ADOLPH'S RESPONSE TO
PLAINTIFF GENERAL CASUALTY
COMPANY OF WISCONSIN'S
MOTION FOR PARTIAL
JUDGMENT REGARDING
REFORMATION AND DUTY TO
DEFEND**

**ORAL ARGUMENT REQUESTED**

DEFENDANTS ADOLPHS' RESPONSE
TO PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 1

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

# I.    INTRODUCTION

Plaintiff General Casualty Company of Wisconsin's ("General Casualty") Motion for Partial Summary Judgment should be denied.  General Casualty seeks to supplant the broader standard applied in determining an insurer's duty to defend an insured with the narrower standard used to determine whether an insurer owes a duty to indemnify the insured.  The duty to defend arises when there is any conceivable set of facts consistent with the claims in the complaint which could result in an insurer owing coverage after construing every allegation, legal interpretation, and factual and legal inference in favor of coverage.  Where a complaint asserts claims that are conceivably covered by a policy, but the insurer wishes to investigate whether indemnification is owed under a policy, an insurer must defend its insured under a written reservation of rights until it receives a declarative ruling.  General Casualty failed to do this.  Instead, it declined to respond to its insured, Reed Hein, for 11 months while it scrambled to find ways to exculpate itself from indemnification.  This conduct constitutes bad faith as a matter of law.

The underlying Adolph Complaint alleged numerous facts conceivably invoking coverage under the policy, particularly under Coverage B.  The policy applies to claims arising out of malicious prosecution, wrongful eviction, disparagement, and publication of material that violates a person's right to privacy.  The complaint alleged how Reed Hein knowingly walked its customers into malicious prosecutions from timeshare companies designed to spite Reed Hein.  The complaint detailed how Reed Hein's undisclosed "method" of "exiting" timeshare obligations was to get its customers evicted from their timeshares by instructing them to stop paying fees while it "worked" on their exits.  It alleged that Reed Hein induced tens of thousands of customers into business relationships by disparaging the services of lawyers, listing services, and other timeshare exit companies.  It alleged that its conflicted relationships with attorneys forced the disclosure of thousands of private documents the customers believed to be privileged.  These allegations conceivably triggered coverage under the policy.

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 2

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044

General Casualty also incorrectly argues that its policies' exclusion for contract breaches should relieve it from defending the case. The Ninth Circuit Court of Appeals has already ruled in a related case against Reed Hein interpreting the same exclusion language at issue here, that when a complaint brings allegations against Reed Hein pertaining to its *precontractual* conduct, claims arising from such conduct cannot be considered as arising from the contract. *Patrick v. Ramsey*, 2025 WL 3157725, at *1 (9th Cir. Nov. 12, 2025).

Lastly, General Casualty's tardy request for reformation based upon mutual mistake, scrivener's error, and unilateral mistake should be denied. General Casualty is unable to carry the burden of showing clear and convincing evidence that Reed Hein was aware of any mistake in the contract General Casualty presented and sold to its insured. To the contrary, a contemporaneous email from Reed Hein's financial officer Chris O'Neal, who sought a policy renewal, demonstrates that Reed Hein was unsure whether the pertinent claims were "actually covered or are things excluded due to past occurrences".[1] Employees of the pertinent insurance broker, Brown & Brown, have no independent memory of which claims were covered or excluded; they can offer no evidence supporting any allegation that Reed Hein was aware of a mistake in the contract. Similarly, the fact that General Casualty was mistaken about the policy it negligently re-drafted to include Coverage B is not evidence that Reed Hein was aware of any mistake. General Casualty's attempt to show unilateral mistake is even less persuasive, as it asserts Reed Hein acted in bad faith simply because it did not catch General Casualty's error for General Casualty—an argument that could be applied to nearly every mistaken term in any contract. Moreover, Washington law is clear that reformation is not an option to retroactively defeat coverage after the insurer has already failed to defend, especially in bad faith. Reformation is an equitable remedy. Reforming the contract in this case would be inequitable to the Adolph

---

[1] Albert Decl., Ex. A at 3.

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 3

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

class, who are real victims, in favor of a fiduciary that repeatedly violated Washington Administrative Code to serve its own interests and breached its duty to defend.

Counterclaim Plaintiffs Brian and Kerri Adolph, as class representatives of the Timeshare Exit Class certified in *Adolph v. Reed Hein and Associates,* respectfully request the Court deny General Casualty's motion and instead grant Counterclaim Plaintiffs' summary judgment motion against Counter-claim Defendant General Casualty regarding its duty to defend Reed Hein.

## II.    EVIDENCE RELIED UPON

This response relies on the Declaration of Gregory Albert ("Albert Decl."), the exhibits attached thereto, and the existing record.

## III.    RELEVANT FACTS

**A.    There Is No Evidence That Reed Hein or Any of Its Agents Were Mistaken About the Terms of the 2021-2022 Policy.**

General Casualty cannot show entitlement to reformation in this matter because there is no evidence of mutual mistake or that Reed Hein acted inequitably in response to a unilateral mistake by General Casualty.   The only contemporaneous document from any Reed Hein member regarding any understanding of the policy is from Reed Hein's finance consultant, Chris O'Neal, whose May 13, 2021 email seeking renewal evidenced the intention that the policy would include Coverage B:

> The $100K deductible on professional liability. We also want to axe the Cyber insurance. **Can we make sure we are <u>actually covered</u>** or are things excluded due to past occurrences?

Albert Decl., Ex. A at 3.

Nor can General Casualty show that representatives of the pertinent insurance broker, Brown & Brown, establish the requisite showing for reformation as the members of the insurance broker have no independent memory of which claims were covered or excluded, and therefore can offer no evidence supporting any allegation that Reed Hein was aware of a mistake in the

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044

contract.  Phillip Gajic, a senior commercial account manager for Brown & Brown, testified that he had no recollection of actions taken on Reed Hein's behalf in doing business with General Casualty or other carriers.  Albert Decl., Ex. C at 8:8-11; 29:9-17.  David Drumright, the producer (similar to an agent) working with Reed Hein, could not recall any particular communications on behalf of Reed Hein as to what exclusions or coverages were requested.  *Id.* Ex. D at 16:3-18, 158:2-159:16.  Nor did he have personal recollections as to whether any other insurers declined to cover Reed Hein.  *Id.* at 97:8-11.  What he was able to confirm was that he did not include certain exclusions in his policy proposal, such as an "access to or disclosure of any person's confidential information" exclusion.  *Id.* at 159:17-160:7.

Mr. Drumright likewise testified that he lacked personal recollection about whether there were any "substantial exclusions from the coverage of the general liability policy" for Reed Hein. *Id.* at 66:6-9.  He did not have an independent recollection of the sequence of events leading to changes in the policies during renewal.  *Id.* at 159:3-8; 162:23-163:15.  Nor did he recall the terms of the policy that Reed Hein was insured under or what led to a change in the policy.  *Id.* at 164:15-24.

The record simply does not support a finding of a "mutual" mistake or inequitable conduct on the part of Reed Hein.

**B.     The Adolph Complaint Alleges Claims and Theories of Liability Conceivably Covered by the 2021-2022 Policy.**

The claims and theories of liability asserted in the Adolph Complaint are conceivably covered by this policy as follows.

**1.     The Adolph Complaint Alleges Claims Arising Out of Publications of Material that Violates a Person's Right to Privacy.**

The Motion for Summary Judgment minimizes the scope of Reed Hein's violation of their customers' right to privacy by arguing, "[a]ttorney-client confidentiality concerns are only

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 5

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044

2:23-cv-00725-TMC

briefly referenced by the Adolph Complaint, and only in its 'Unfair Acts and Practices' paragraphs alleging Reed Hein induced customers to purchase its services in part by representing that a privileged relationship existed with third-party attorney vendors Reed Hein hired." Motion at 22.

To the contrary, the Complaint alleges that Reed Hein solicits customers by telling them that it will act as their fiduciary. Albert Decl., Ex. B at ¶¶ 1, 14, 38, 41. It alleges that Reed Hein executes power-of-attorney forms, giving Reed Hein the power to hire attorneys for the clients while preserving the attorney-client relationship:

> Reed Hein further asserted that "If Reed Hein decides to hire a law firm for a customer, Reed Hein and the law firms specifically intend to create a relationship under privileged material is freely exchanged. As such, the law firms, customers, and Reed Hein all intend that the attorney-client and work product privileges and protections apply to all three parties in this agency relationship – the law firms, the customers/clients, and Reed Hein."

*Id.* at ¶ 65. The Complaint alleges that Reed Hein blurs the lines between who the attorneys represent:

> Reed Hein routinely advertises itself as a "consumer protection firm" and "consumer advocates" to create the false impression that Reed Hein will personally provide services through specialized legal means. Defendant's scripts and webpages routinely suggest that Reed Hein's attorneys work for the customers: "Our Attorneys – They are consumer advocate attorneys." Reedhein.com also stated that Defendants "represent consumers," who are referred to as "our firm's clients," and claim that Defendants' services included "preparing the strongest case for you."

*Id.* at ¶ 63; *see also Id.* at ¶¶ 39, 53.

Consequently, "[a]ttorneys have been forced to disclose thousands of pages of otherwise-privileged client communications because Reed Hein's interference in the relationship collapses the attorney-client privilege…" *Id.* at ¶ 41; *see also Id.* at ¶ 66 ("However, Reed Hein knows a federal court in 2018 held that the communications and work product between those entities were not subject to attorney-client privilege or the work product doctrine. After that ruling, Vendors

DEFENDANTS ADOLPHS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 6

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

for Reed Hein were required to disclose thousands of pages of communications that would have otherwise been privileged but for Reed Hein's interference with the attorney-client relationship.")

### 2.    The Complaint Alleges Claims Arising Out of Loss of Use of Property.

The Complaint alleges that Reed Hein comingled the customers' property with its own property despite its fiduciary duty to do otherwise. *Id.* at ¶ 18 ("Reed Hein comingled Mr. and Mrs. Adolph's property with its own property").  It alleges that Reed Hein has customers sign power-of-attorney forms, committing to keep customers' "property" separate and apart from Reed Hein's property. *Id.* at ¶ 13.  The "property" the Complaint alleges the customers provided Reed Hein was money. *See., e.g., id.* at ¶ 54. The complaint alleged that Reed Hein did not safeguard the money in a trust account until it was earned but immediately comingled it into its operating account. *Id.* at ¶¶ 1, 40, 45, 112.  One of the causes of action asserted in the Complaint arose out of a theory of liability that Reed Hein wrongfully deprived its customers of money for services it did not render:

COUNT SIX

BREACH OF FIDUCIARY DUTIES

111. Defendants induced Plaintiffs, including the Class into fiduciary relationships by asking them for power of attorney and soliciting money for services not yet performed.

112. Defendants received money from Plaintiffs and the Class for services not yet performed, but did not hold the money in trust or escrow.

113. Defendants immediately misappropriated the money as earned income.

114. Defendants breached its fiduciary duties to Plaintiffs and the Class.

*Id.* at ¶¶ 111-114.[2]  This claim for loss of use of property which was misappropriated by Reed Hein meets the coverage definition for "property damage" which includes:

---

[2] Notably, the Complaint did not allege that this was an intentional misappropriation of Class property and therefore not subject to exclusion under the policy as a "knowing violation."

DEFENDANTS ADOLPHS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 7

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Albert Decl., Ex. E at 157.

### 3. The Adolph Complaint Alleged that The Plaintiffs Improperly Lost the Right to Use Dwellings.

Coverage B includes "wrongful entry," "wrongful eviction," and "…invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor." The Adolph Complaint alleges that Reed Hein deceived customers into foregoing easy methods to eliminate their timeshare obligations so that it could provoke timeshare companies into procedurally divesting the customers of their occupancy rights while retaining their financial obligations.

First, the Complaint implies that the timeshare companies knew that the customers might have no legally cognizable obligations to them because the timeshare companies themselves engaged in questionable "sales and negotiation tactics," and their "high-pressure sales tactics" might not endure judicial scrutiny. *Id.* at ¶¶ 54, 64. However, it alleges Reed Hein endorsed and even exaggerated the customers' obligations to timeshares because it increased the urgency of hiring Reed Hein. *Id.* at ¶¶ 1, 55. It alleged Reed Hein told customers not to communicate with the timeshare companies because doing so would prolong the exit process. *Id.* at ¶ 33. The complaint alleges the real reason was that the timeshare companies would immediately "give [customers] an exit to undermine [Reed Hein's] services." *Id.* at ¶ 34. Instead, the Complaint alleges Reed Hein told customers to use its "specialized knowledge" and "proprietary process" to eliminate those obligations. *Id.* at ¶ 1. It alleged that Reed Hein told customers that it would "force" timeshare companies to "take back" their agreements. *Id.* at ¶¶ 54, 48. Rather than force the timeshare companies to do anything, the Complaint alleges Reed Hein simply told customers

DEFENDANTS ADOLPHS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 8

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

to stop paying the timeshare companies to provoke the companies into taking action against the customer, unbeknownst to the customer. *Id.* at ¶¶ 30, 33, 41, 50, 54.

Unable to use their timeshares, the customers could go into arrears for "years" with the incorrect understanding that Reed Hein was using its process to terminate those obligations. *Id.* at ¶¶ 42, 53. The timeshare companies would eventually use procedures, such as foreclosures, to "take[] possession of the client's interest in the asset…," harming their credit rating and causing "other negative financial consequences." *Id.* at ¶ 54. At that point, Reed Hein considered its obligations fulfilled and abandoned the customer to deal with the fallout. *Id.* The Complaint alleged that when customers negotiated with the timeshare companies post-exit, Reed Hein did not participate in any of those negotiations. *Id.* at ¶¶ 30, 46, 58. The customers were often forced to pay "…additional money to the timeshare companies…" *Id.* at ¶ 69. The amount would often be "some fraction of their remaining mortgage or some multiple of their maintenance fees." *Id.* at ¶ 54. In other words, the Complaint alleges that customers would go years without occupying their timeshares until the timeshare companies dispossessed them of their rights to occupancy, only to pay the timeshare companies some modicum of money to which the timeshare companies may not have been entitled in the first place.

The inferences from the foregoing conceivably align with "wrongful eviction" or "an invasion of the right of private occupancy… committed by or on behalf of its owner, landlord, or lessor." Because the customers were forbidden from communicating with the timeshare companies, an inference is that they spent "years" unable to use the product they paid for – the timeshares. The Complaint implies that the timeshare companies might not have had the right to dispossess customers, but Reed Hein told its customers that the timeshare companies' relationships to customers were complicated. It alleges that the timeshare companies engaged in questionable "sales and negotiation tactics," and their "high-pressure sales tactics" might not endure judicial scrutiny in "adversarial proceedings in court." *Id.* at ¶¶ 64, 54. The inference is

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 9

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044

that the timeshare companies might not have had any right to dispossess customers of their properties in the first place.  In other words, Reed Hein instructed customers not to use their timeshares, and those customers were effectively dispossessed of occupancy while still retaining ownership interests in the property.

> **4.    The Complaint Alleges Claims Arising Out of Disparagement of a Person's or Organization's Services.**

The Complaint repeatedly alleges that Reed Hein disparaged the services of others to induce the Adolph class into a business relationship.  The Adolph class is not the class of people disparaged, but that is not what General Casualty's policy specifies.  It reads, "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies."  Albert Decl., Ex. E at 148.  "Personal and advertising injury" is defined as including "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization *or disparages* a person's or organization's goods, products or services…"  *Id*. at 157.

The Complaint does not explicitly allege defamation or libel, but it repeatedly alleges operative facts arising out of disparagement.  It alleges that Reed Hein's clients' advisors orally claimed to customers that "real lawyers are unable to perform the work Reed Hein performs, and [] Reed Hein is the customers' '**ONLY HOPE!**'"  Albert Decl., Ex. B at ¶ 1.  It alleges that Reed Hein's website stated, "that attorneys do not have the specialized knowledge that Reed Hein has in order to dissuade customers from hiring real attorneys."  *Id.* at ¶ 35.  It alleged:

> Reed Hein trained its employees to warn customers about the dangers of listing companies. It warned customers that their assets had no listing value, that listing companies would try to scam them, would collect high upfront fees, and that there was little chance of the timeshare reselling on the market. Reed Hein's sales scripts also criticize transfers to a third party as an exit method. However, the primary way in which Reed Hein customers exited their contracts was through the transferring or selling of their timeshares to third parties. Reed Hein engages in the same practices it discouraged, except that it collects fees upfront to do it.

DEFENDANTS ADOLPHS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 10

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044

1   *Id.* at ¶ 56.

2       **5.    The Complaint Alleged that The Plaintiffs Were Exposed to Malicious Prosecutions Arising Out of Their Business Dealings with Reed Hein.**

3       The Complaint repeatedly asserts that business dealings with Reed Hein could and did

4   expose the plaintiffs to malicious prosecutions.  It alleged timeshare companies specifically

5   targeted Reed Hein customers with litigation:

6       "Vacation resorts and developers have also begun targeting Reed Hein customers with lawsuits, which Reed Hein does not disclose to customers, despite claiming

7       to be their agent."

8   Albert Decl., Ex. B at ¶ 1.

9       The Complaint alleges that timeshare companies stopped negotiating with Reed Hein and

10  have began to sue its customers for damages, unbeknownst to Reed Hein customers:

11      Reed Hein has historically relied on timeshare company's reluctance to sue timeshare holders, although that has now changed… After discovering Reed

12      Hein's business model, timeshare companies have stopped negotiating with any Reed Hein customers and have begun suing Reed Hein customers for damages –

13      a material fact that Reed Hein does not disclose to new customers.

14  ¶¶ 46, 53.  It alleges that timeshare companies put restrictions solely on Reed Hein customers

15  and declined to negotiate. *Id*.  The Complaint further alleges that timeshare companies have

16  begun to sue Reen Hein's customers as a result of Reed Hein's services.  *Id*. at ¶¶ 54, 64.

17  **C.    The Adolph Complaint Alleges Precontractual Torts and Breach of Contract is Only One of Six Causes of Action.**

18      General Casualty's motion argues that it had no duty to defend because the Adolph's first

19  cause of action was breach of contract and its policy excludes breaches of contract.  However,

20  the Complaint repeatedly alleged that the customers were deceived into entering business

21  relationships with Reed Hein because of its precontractual torts and statutory violations.  *Id*. at

22  ¶¶ 1, 15, 35-37, 55, 73, 85-91, 103-111.  Furthermore, one of the allegations underpinning the

23

24

25  DEFENDANTS ADOLPHS' RESPONSE TO         ALBERT LAW PLLC
    PLAINTIFF'S MOTION FOR PARTIAL      3131 Western Avenue, Suite 410
    SUMMARY JUDGMENT - 11             Seattle, WA  98121
                                  Phone: (206) 576-8044

               2:23-cv-00725-TMC

other torts and statutory violations was that the contracts themselves were deliberately designed to be unenforceable. *Id.* at ¶ 39.[3]

**D.    General Casualty's Delay in Defending Reed Hein Was Because It Was Seeking Ways to Avoid Defending the Case.**

On October 9, 2021, the Adolphs filed the Underlying Lawsuit against the Insureds (collectively, the "Underlying Parties"). Dkt. 54, Ex. 2 at 31. On October 11, 2021, the Insureds tendered the Underlying Lawsuit to General Casualty through their insurance broker, Phillip Gajic. *Id.* Ex. 3; Ex. 4 at 52. The Insureds' tender provided General Casualty with the complaint and the Year Two primary policy. *Id.* Ex. 3; Ex. 4 at 18-19; Ex. 5 at 20769.

By August 11, 2022, General Casualty still had not responded to Reed Hein. On that day, General Casualty circulated a draft of its Reservation of Rights letter, acknowledging Reed Hein had also tendered the fourteen arbitrations to General Casualty. Albert Decl., Ex. F at Bates No. 0011500. It also "recognize[d] that the Complaint does allege that certain of Reed Hein's customers' confidential communications with attorneys were allegedly disclosed pursuant to court orders." *Id.* at Bates No. 0011507. It admitted to being "unclear whether this qualifies as 'oral or written publication,' whether any such disclosure violated a 'right to privacy,' and whether Reed Hein itself published material that violated its customers' right to privacy." *Id*. However, it acknowledged those allegations "**could [] conceivably qualify** under the definitions of 'personal and advertising injury' (alleged disclosure of attorney-client communications). *Id*.

## IV.    LEGAL ANALYSIS

**A.    Summary Judgment Standard**

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining

---

[3] The Ninth Circuit Court of Appeals recently decided in a related case arising from Reed Hein's business dealings with radio show host Dave Ramsey that Mr. Ramsey cannot force the plaintiffs to arbitrate claims pursuant to Reed Hein's arbitration clauses, in part because the materially similar complaint in that case alleged mostly precontractual violations. *Patrick v. Ramsey*, 2025 WL 3157725, at *1 (9th Cir. 2025).

DEFENDANTS ADOLPHS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 12

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

whether an issue of fact exists, the Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the non-movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## B.   General Casualty Had a Duty to Defend Reed Hein Because the Underlying Complaint Asserted Claims Conceivably Covered by the Policy

General Casualty's Motion seeks to distract from the proper standard for an insurer's duty to defend by conflating it with the standard for the duty to indemnify. *See e.g.* Motion at 2:14-15. They are, however, distinctly different standards:

> In the insurance context, the duty to defend is broader than the duty to indemnify. . . . An insurance company has the duty to indemnify if the insurance policy *actually* covers the insured, while the duty to defend arises if the insurance policy *conceivably* covers the insured. . . . An insurer is relieved of the duty to defend only if the policy clearly does not cover the claim.

*Robbins v. Mason Cnty. Title Ins. Co*., 195 Wn.2d 618, 426-7, 462 P.3d 430, 435 (2020).

"Washington insurance law . . . is structured to incentivize an insurer's prompt defense," *Rushforth Constr. Co., Inc. v. Wesco Ins. Co.*, No. C17-1063-JCC, 2018 WL 1610222 (W.D. Wash. Apr. 3, 2018), at *4 n.6, The duty to defend is so far-reaching that, "if there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 405, 229 P.3d 693, 696 (2010). Accordingly, Washington law limits the permissible scope of an insurer's investigation in determining whether its duty to defend has arisen. Unlike a context or parole evidence-based judicial review of the policy, "after a tender is made, the duty to defend generally is determined from the 'eight corners' of the insurance contract and the underlying complaint." *Alaska Airlines, Inc. v. Endurance Am. Ins. Co.*, 2022 WL 2982800, at *5 (W.D. Wash. July 28, 2022).

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 13

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044

2:23-cv-00725-TMC

Moreover, facts that may "eventually" prove exclusion of coverage "are irrelevant to the issue of whether the complaint alleged facts sufficient for *potential* liability. An insurer must defend the insured if a claim is potentially covered by a policy." *Baugh Const. Co. v. Mission Ins. Co.*, 836 F.2d 1164, 1168 (9th Cir. 1988) (applying Washington law) (emphasis added). Any reasonable interpretation of the facts or the law that could result in coverage *requires* that the insurer defend. *Am. Best Food, Inc.*, 229 P.3d at 696. If unsure if its duty to defend applies, an insurer may avoid breaching its duty by defending "under a reservation of rights while seeking a declaratory judgment that it has no duty to defend." *Am. Best Food, Inc.*, 168 Wn.2d at 405.

Interpretation of the language of an insurance policy is an issue of law and requires interpreting the policy language the way a reasonable average purchaser of insurance would interpret the policy. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 424, 932 P.2d 1244, 1246 (1997). Furthermore, "any ambiguity that remains will be construed against the insurer, especially if the ambiguity is in an exclusionary clause that seeks to limit policy coverage." *Cle Elum Bowl, Inc. v. North Pacific Insurance Co., Inc.*, 96 Wn. App. 698, 703, 981 P.2d 872, 875 (1999). Indeed, because "coverage exclusions are contrary to the fundamental purpose of insurance," they are "strictly construed against the insurer." *City of Bremerton v. Harbor Ins. Co.*, 92 Wn. App. 17, 21, 963 P.2d 194 (1998).

Finally, General Casualty incorrectly suggests extrinsic facts may be considered when an insurer denies the duty to defend. It paraphrases *Woo v. Fireman's Fund Insurance Co.*, 161 Wn.2d 43, 164 P.3d 454 (2007), claiming, "if the allegations in the complaint conflict with facts known to or readily ascertainable by the insurer, or if the allegations are ambiguous or inadequate, facts outside the complaint may be considered." *Id.* at 54 (internal quotations and alterations removed); *see also* Motion at 18-19. This omits the Washington Supreme Court's instructions about how to consider those facts:

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 14

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

There are two exceptions to the rule that the duty to defend must be determined only from the complaint, and both the exceptions favor the insured. . . . First, if it is not clear from the face of the complaint that the policy provides coverage, but coverage could exist, the insurer *must* investigate and give the insured the benefit of the doubt that the insurer has a duty to defend. . . . The insurer may not rely on facts extrinsic to the complaint to deny the duty to defend—it may do so only to trigger the duty.

*Woo*, 161 Wn.2d at 53-54 (emphasis in original).

In summary, the law is clear that an insurer 1) has a duty to defend whenever the facts alleged in a complaint could conceivably invoke coverage, 2) must construe every ambiguity in favor of the insured, and 3) may consider extrinsic evidence *only* to trigger the duty to defend.

## C. General Casualty is Not Entitled to Reformation Because of Its Bad Faith and Because it Cannot Establish Mutual Mistake or that Reed Hein Acted Inequitably in Response to General Casualty's Unilateral Mistake.

General Casualty asserts it is entitled to reformation of the relevant insurance policy and that such reformation may retroactively relieve it of its duty to defend Reed Hein after it has engaged in extensive bad faith failures to defend Reed Hein under its policy. Motion at 19-21. As a threshold matter, because reformation is an equitable remedy, General Casualty is precluded from seeking such relief because its conduct "has been unconscientious, unjust, or marked by the want of good faith." *Income Investors v. Shelton*, 3 Wn.2d 599, 602, 101 P.2d 973 (1940); *Buchanan v. Buchanan*, 150 Wn. App. 730, 737, 207 P.3d 478 (2009). As already noted, General Casualty was required to provide coverage by estoppel after it failed to provide a defense when it was conceivable that the allegations in the complaint were covered based on a review of the four corners of the applicable policy.[4] An insurer refusing to defend "based on a questionable interpretation of policy language that gives the insurer rather than the insured the benefit of the

---

[4] Notably, it would have been a simple matter for General Casualty to have sought reformation with clean hands. All it had to do was offer a defense under a reservation of rights and promptly seek reformation of the contract as part of a declaratory action. There is no dispute that General Casualty did not timely provide any such defense, and thus it cannot now claim to seek reformation with clean hands.

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 15

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

1    doubt" or "based on a questionable interpretation of case law" commits "bad faith as a matter of

2    law." *Webb v. USAA Cas. Ins. Co.,* 12 Wn. App. 2d 433, 460, 457 P.3d 1258 (2020) (citing *Am.*

3    *Best Food, Inc.*, 168 Wn.2d at 413).

4            General Casualty also cannot show entitlement to reformation here because there is no

5    evidence of mutual mistake and Reed Hein did not act inequitably in response to a unilateral

6    mistake by General Casualty.  In Washington, a "party to a contract is entitled to reformation of

7    the contract if either there has been a mutual mistake or one party is mistaken and the other party

8    engaged in fraud or inequitable conduct."  *Wash. Mut. Sav. Bank v. Hedreen*, 125 Wn.2d 521,

9    525, 886 P.2d 1121 (1994).  "[R]eformation is justified only if the parties' intentions were

10   identical at the time of the transaction."  *Denaxas v. Sandstone Court of Bellevue, L.L.C.*, 148

11   Wn.2d 654, 669, 63 P.3d 125 (2003).  "The party seeking reformation must prove the facts

12   supporting it by clear, cogent and convincing evidence."  *Id.*  If, during the contracting process,

13   a party "is cognizant of its limited knowledge regarding the subject matter of the mistake but

14   treats that knowledge as sufficient" that party "assumes the risk of mistake."  *Denny's Rest., Inc.*

15   *v. Sec. Union Title Ins. Co.*, 71 Wn. App. 194, 212, 859 P.2d 619 (1993).

             Here, General Casualty requests reformation based only on the theory that there was a

16   mutual mistake by the parties,[5] but its motion fails to present any evidence, let alone clear and

17   convincing evidence, of Reed Hein's intent regarding personal and advertising injury coverage

18   for the 2021-2022 policy.  General Casualty's motion provides extensive details regarding the

19   nature of its own mistake,[6] but offers no evidence to support its assertion that the mistake was

20

---

21   [5] Even if General Casualty did argue for reformation as a result of a unilateral mistake, there is no evidence that
     Reed Hein engaged in any sort of fraud or inequitable conduct regarding the mistake so as to permit reformation
22   under that approach.

23   [6] General Casualty's motion is framed so as to suggest that some unaffiliated third party was responsible for the
     alleged error in the policy contract at issue, but even if that were so and the contractor was not retained by General
     Casualty, General Casualty was fully aware of its own contracting decisions and the risk of errors inherent in
24   outsourcing contract creation.  It must now live with the consequences of the calculated risks it took.

25   DEFENDANTS ADOLPHS' RESPONSE TO                ALBERT LAW PLLC
     PLAINTIFF'S MOTION FOR PARTIAL                 3131 Western Avenue, Suite 410
     SUMMARY JUDGMENT - 16                          Seattle, WA  98121
                                                    Phone: (206) 576-8044

             2:23-cv-00725-TMC

mutual and no clear and convincing evidence that Reed Hein's intention in entering into the 2021-22 policy contract was identical to General Casualty's. Indeed, this is because the evidence in the record is to the contrary in this matter. The only contemporaneous document from any Reed Hein member regarding any understanding of the policy is from Reed Hein's finance consultant Chris O'Neal, whose May 13, 2021 email seeking renewal suggested he thought the policy might include coverage. There is no evidence regarding Reed Hein's understanding or intention that supports an assertion that its intention in entering into the 2021-22 policy agreement was to not receive the coverage contained in Coverages A or B.

General Casualty attempts to analogize this matter to the case *Reynolds v. Farmers Ins. Co.*, 90 Wn. App. 880, 960 P.2d 432 (1998), in an effort to obtain reformation, but *Reynolds* is highly distinguishable. First, the insurer in *Reynolds* did not seek reformation after months of bad faith failures to defend; the *Reynolds*' insurer's hands were clean. Second, in *Reynolds*— where the dispute centered on the time when coverage on a lapsed policy was reinstated—the insured first received written confirmation from the insurer of the correct time when coverage was reinstated following a meeting discussing the reinstatement of coverage where the insured tendered payment, before subsequently receiving an agreement that erroneously listed a different time for reinstatement. *Id.* at 885 ("Ms. Reynolds first received notice that her coverage began at 8:00a.m. When the reinstatement agreement later materially deviated from that term, she was on notice that a mistake had been made."). This put the *Reynolds* insured on notice of the incorrect time. This contrasts with this case, in which there is no evidence that Reed Hein ever received any documentation, or had any conversations with General Casualty or anyone else, that expressly notified it that personal injury and advertising coverage would be excluded in the 2021-22 policy. Thus, General Casualty cannot show that Reed Hein was on notice about what the

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 17

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

allegedly "correct" terms of the policy were supposed to be.  That Reed Hein was uncertain about what coverage was included or excluded is also, again, demonstrated through the only contemporaneous email communication regarding the terms of the policies from Reed Hein's finance consultant.  As a result, *Reynolds* does not support reformation in this case.

**D.    The Adolphs' Claims Arising Out of Publication of Private Material, Loss of Use of Property, Loss of Occupancy, Disparagement, and Malicious Prosecution Are Conceivably Covered by the Policy.**

General Casualty asserts that the underlying complaint fails to allege damages covered by either Bodily Injury and Property Damage clauses or the Personal and Advertising Injury clauses.  However, such a conclusion inappropriately relies on interpretations favoring the insured, facts not available to it at the time it refused to defend, and evidence viewed in the light most favorable to the moving party here.  The allegations in the complaint are conceivably covered by General Casualty's policy.

**1.    The complaint alleged claims conceivably arising out of a violation of a person's right to privacy.**

For its interpretation of its Personal and Advertising Injury coverage, General Casualty focuses the Court's attention on the policy's coverage for the subset of coverage for claims "arising out of" "[o]ral or written publications, in any manner, of material that violates a person's right of privacy." Motion at 14, 22-25.  On its face, General Casualty's lengthy attempt to avoid coverage under that term essentially admits to the conceivability of coverage necessary to impose its duty to defend.  *See id.*  Still, its argument hinges on irrelevant and inapplicable case law which does not justify General Casualty's refusal to defend Reed Hein.

Here, elements for the policy's term for claims arising out of "violates a person's right of privacy" exists in the underlying Adolph complaint against Reed Hein.  As General Casualty admits in its motion, conceivable claims of violation of privacy are present in the Adolph Complaint regarding Reed Hein's release of attorney-client privileged information. Motion at

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 18

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044

24-25. Its attempt to discredit these claims because they are included within claims of statutory violations or breach of contract claims is wholly antithetical to broad standard both for "arising out of" and for an insurer's duty to defend.

Instead, the breach of contract claims and the violations of Washington's Consumer Protection Act are "caused by," "resulted from," "originating from," "having its origin in," "growing out of," or "flowing from" Reed Heins' release of attorney-client privileged information. *C.f. Australia Unlimited, Inc. v. Hartford Cas. Ins. Co.*, 147 Wn. App. 758, 774, 198 P.3d 514, 521 (2008). General Casualty's opposite reading is unfounded.

Additionally, Washington's invasion of privacy includes the tort of false light. *Eastwood v. Cascade Broad. Co.*, 106 Wn.2d 466, 470, 722 P.2d 1295, 1297 (1986). "An invasion of privacy by false light arises when a defendant publishes statements that place a plaintiff in a false light if (1) the false light would be highly offensive and (2) the defendant knew of or recklessly disregarded the falsity of the publication and the subsequent false light it would place the plaintiff in." *Seaquist v. Caldier*, 8 Wn. App.2d 556, 564, 438 P.3d 606, 612 (2019). The Adolph Complaint includes allegations regarding Reed Hein's misrepresentations to and about the class members regarding their timeshares. Albert Decl., ¶¶ 33-38. Class members conceivably could find those misrepresentations as highly offensive in exposing their susceptibility to these unfavorable timeshares. Additionally, false light claims are not subject to an explicit exclusion within the policy. Therefore, the elements of a violation of privacy claim conceivably exist in the claim to necessitate a duty to defend.

## 2. The complaint alleged claims conceivably arising out of the loss of use of tangible property.

As General Casualty identifies, "Property Damage" included the "[l]oss of use of tangible property that is not physically injured." Motion at 16. The policy does not define "property" or "tangible property" beyond this definition. *See generally* Albert Decl., Ex. E. In addition to

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 19

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

2:23-cv-00725-TMC

explicitly describing a loss of use of their property, the underlying Adolph Complaint describes Reed Hein misappropriating class members money, as well as providing nebulous services for class member's timeshare holdings.

While General Casualty may prefer a narrow definition of "tangible property," Washington has a broad definitions for property. *See* Wash. Const. art. VII, § 1 ("The word 'property' as used herein shall mean and include everything, whether tangible or intangible, subject to ownership"); *see also Culliton v. Chase,* 174 Wash. 363, 374, 25 P.2d 81, 82 (1933) (holding that between real, personal, and intangible property; income is intangible property). Additionally, "[w]hen determining if an exception applies, the lack of any Washington case directly on point presents a legal uncertainty with regard to an insurer's duty, and any uncertainty works in favor of providing a defense to an insured." *Robbins*, 195 Wn.2d at 630.

Ultimately, the Adolphs can find no dispositive Washington law determining which property classification applies to both timeshares and money. Thus, such uncertainty here favored General Casualty fulfilling its duty to defend under the Bodily Injury or Property Damage Coverage.

In sum, the underlying Adolph complaint has multiple claims which would conceivably result in coverage under the policy. Any one of those claims is sufficient to trigger General Casualty's duty to defend.

  **3.**  **The complaint alleged claims conceivably arising out of loss of occupancy.**

The policy also includes protection for "wrongful eviction," "wrongful entry," and "invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." Motion at 16. Washington provides a broad interpretation for the term of "wrongful entry" to include a broad spectrum of loss of use and enjoyment from trespass, nuisance, and pollution. *See Kitsap Cnty.*, 136 Wn.2d at 592.

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 20

  2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

Conceivably, wrongful entry could include the wrongful interference of timeshare holdings based on the alleged actions in the Adolphs' complaint. The policy here is genuinely ambiguous as to whether the "committed by . . ." phrase modifies the entire list or only the last antecedent. *See Barnhart v. Thomas*, 540 U.S. 20, 26-27 (2003) (stating that "the rule of the last antecedent" "is not an absolute and can assuredly be overcome by other indicia of meaning"). Since ambiguities in a policy must be construed in favor of the insured with respect to a duty to defend, it must be read against General Casualty. Regardless, the either the wrongful entry by resorts based on the actions of Reed Hein or the constructive dispossession of the timeshares by Reed Hein's action is still within the original claim against Reed Hein.

**4.      The complaint alleged claims conceivably arising out of disparagement.**

The policy also includes protection for publication "that slanders or libels a person or organization" or "disparages a person's or organization's goods, products or services." Motion at 16.

Multiple claims within the Adolph complaints directly flow from or arise out of the disparagement of attorneys and listing agents to dissuade Reed Hein's customers from seeking assistance. Additionally, Washington courts note the similarity between false light and defamation torts. *See Seaquist*, 438 P.3d at 612 ("A prima facie defamation claim requires a plaintiff to prove falsity, an unprivileged communication, fault, and damages."). Consequently, the same allegations that would conceivably impose liability under a false light violation of privacy could conceivably impose coverage for slander or libel.

**5.      The complaint alleged claims conceivably arising out of malicious prosecution.**

The policy includes a term for coverage of claims "arising out of" allegations of malicious prosecution. Motion at 16. As General Casualty admits, courts have a broad interpretation of the phrase "arising out of." Motion at 27 (citing *Australia Unlimited, Inc. v. Hartford Cas. Ins.*

DEFENDANTS ADOLPHS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 21

2:23-cv-00725-TMC

*Co.*, 198 P.3d 514, 521 (2008) ("The phrase 'arising out of' is unambiguous and has a broader meaning than 'caused by' or 'resulted from.' It ordinarily means 'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from.'")). A claim for malicious civil prosecution requires showing (1) prosecution instituted or continued by the defendant; (2) want of probable cause; (3) malicious intent; (4) proceedings abandoned or terminated in favor of the plaintiff; (5) plaintiff suffered damage from prosecution; (6) property was arrested or seized; and (7) injury that would not result from similar cause of action. *Clark v. Baines*, 84 P.3d 245, 248-49 (2004).

Here, the underlying Adolph Complaint alleges that timeshare companies were specifically targeting Reed Hein's customers with lawsuits and special restrictions, in contrast with these companies typically avoiding such suits. These lawsuits would conceivably result in damage through the property seizure of timeshare interests, involved atypical injuries, and demonstrated malicious intent by the timeshare companies in instituting these suits. Further, it is conceivable from the complaint that many of these suits were abandoned or terminated in favor of Reed Hein's customers due to lack of probable cause. The Complaint did not need to allege explicitly that Reed Hein committed malicious prosecution as one of its enumerated offenses. Instead, the complaint sufficiently includes allegations which conceivably arise out of malicious prosecutions as the elements of claims for malicious prosecution are set forth in Washington law.

**E.    General Casualty's Identified Exclusions Do Not Preclude a Determination that it Had a Duty to Defend**

Coverage exclusions are "most strictly construed against the insurer." *Am. Best Food* 168 Wn.2d at 406 (internal quotations omitted). Only a strictly construed coverage exclusion that "clearly" applies to a complaint's allegations relieves an insurer of its duty to defend. *ID.* at 405. If there is "any reasonable interpretation of the [allegations] and the law that could result in coverage," the insurer must defend the claim. *Id.* at 412-13. Whether the insurer's interpretation also was reasonable is immaterial. An insurer's "refusal to defend [an insured]

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 22

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

based upon an arguable interpretation of its policy [is] unreasonable and therefore in bad faith." *Id.* at 414. When determining whether an exclusion clearly applies, "[t]he lack of any Washington case directly on point . . . present[s] a legal uncertainty with regard to [an insurer's] duty" and "any uncertainty works in favor of providing a defense to an insured." *Id.* at 408. Particularly, conflicting out-of-state authority on the applicability of the policy provisions at issues creates a "legal ambiguity" which must be resolved in favor of the insured. *Id.* at 410-411.

### 1. The Access or Disclosure of Confidential or Personal Information Exclusion is Ambiguous and Must Be Construed Against General Casualty

General Casualty asserts that even if there was conceivably coverage under the personal and advertising injury provisions of Coverage B, it should be held to have no duty to defend because of an exclusion endorsement that modified coverage by noting in pertinent part that the insurance provided does not include coverage for:

> "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.[7]

General Casualty has not identified any Washington case authorities that have interpreted this exclusion language or held that it is not ambiguous, and the Adolphs have not found any either, demonstrating the lack of certainty regarding the applicability of this exclusion. Further demonstrating this lack of clarity, while General Casualty identifies some decisions from other jurisdictions that concluded the provision was enforceable and unambiguous, there are also cases from courts outside of Washington that have concluded such an exclusion is ambiguous. *See e.g., Continental Western Ins. Co. v. Tony's Finer Foods Enterprises, Inc.*, No. 22-cv-3575, 2023 WL 4351469, at *6-*7 (N.D. Ill. July 5, 2023)

---

[7] Dkt. 1-1 at 535.

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 23

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

(concluding that biometric data disclosures were not subject to an identical exclusion due to ambiguity in the exclusion); *Citizens Ins. Co. of Am. v. Banyan Tree Mgmt., LLC*, 631 F. Supp. 3d 1256, 1279 (N.D. Ga. 2022), *aff'd*, No. 22-13581, 2023 WL 6319224 (11th Cir. Sept. 28, 2023) (agreeing that strict construction of identical exclusion's list of information to which it applied demonstrated that it was "meant to apply to liability associated with data breaches," not disclosure of any personal or confidential information).

Indeed, in the context of an advertising and personal injury policy and exclusions practically identical to those at issue in this case, the Seventh Circuit—relying on Illinois law that is highly similar to Washington law regarding the duties of insurers and the interpretation of insurance contracts—has explained that when a personal and advertising injury exclusion is so broad as to cover most, though not all, claims that a policy otherwise expressly purports to cover it is inherently ambiguous and must be construed against the insurer. *Citizens Ins. Co. of Am. v. Wynndalco Enterprises, LLC*, 70 F.4th 987, 996, 998 (7th Cir. 2023) (collecting cases expressing the same analysis including: *First Mercury Ins. Co. v. Triple Location LLC*, 536 F. Supp. 3d 326, 333 (N.D. Ill. 2021); *Gibson v. First Mercury Ins. Co.*, No. 3:21-cv-1522 (SRU), 2022 WL 4599153, at *12 (D. Conn. Sep. 30, 2022); *Yates v. Farmers Auto Ins. Ass'n*, 311 Ill. App. 3d 797, 800, 724 N.E. 2d 1042 (Ct. App. Ill. 5th District 2000)).

*Continental Western Ins. Co.* is particularly instructive, as the court therein construed an **identical** exclusion as General Casualty asserts precludes a duty to defend here. The court in *Continental Western Ins. Co.* determined that "where the Access of Disclosure of Confidential Or Personal Information Exclusion broadly construed would eliminate a vast swath of privacy violation claims based on the publication of personal information that the insuring agreement otherwise purports to cover, the exclusion is ambiguous." 2023 WL 4351469, at *8. As a result, the court resorted to analyzing the specific examples identified to determine whether there was a "common element" amongst the listed items that could be imputed onto the catch-all provision

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 24

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044

of "any other type of non-public information." *Id.* In so doing, the *Continental Western Ins. Co.* court concluded that the provision's listing of specific examples of information that could be disclosed without triggering coverage was still ambiguous because patents, health information, trade secrets, and customer lists do not have a readily identifiable common thread. *Id.* at *9. As a result, the court concluded the provision was ambiguous and construed it in favor of the insured.

While Defendants Adolphs believe the analysis from *Continental Western Ins. Co.* is persuasive, even if the Washington Supreme Court ultimately disagreed that would not retroactively eliminate the ambiguity that existed at the time General Casualty failed to provide a defense to its insured. Because the policy provision at issue has been interpreted as ambiguous by other courts and could be so interpreted by Washington courts, which have not expressly held the provision to be unambiguous, General Casualty cannot rely on the exclusion to evade its duty to defend. *Am. Best Food*, 168 Wn.2d at 410-411.

### 2. The Breach of Contract Exclusion Does Not Apply to Any of the Conceivable Claims That Establish a Duty to Defend

Even if a subset of possible claims against an insured is excluded from coverage, the existence of at least one claim that is conceivably covered is sufficient to impose a duty to defend on the insured. *See Am. Best Food, Inc.*, 168 Wn.2d at 407-10. General Casualty seeks to broadly apply an exclusion applicable to personal and advertising injury arising out of a breach of contract but cannot identify any Washington legal authorities that approve of this broad of an application. Thus, once again Reed Hein and, now, the Adolphs get the benefit of the doubt regarding whether a claim falls within a breach of contract exclusion.

Other jurisdictions have determined whether a claim falls within a breach of contract exclusion by determining whether "the *facts* alleged all arise from the alleged breach of conduct *and could not otherwise constitute covered, tortious behavior*." *Spa De Soleil, Inc. v. General Star Indem. Co.*, 787 F. Supp. 2d 1091, 1098 (C.D. Cal. 2011). Importantly, courts have noted

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 25

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044

that a breach of contract exclusion bars coverage for injury arising out of a *breach* of contract, not just injuries arising out of a contract.  *Nat. Fire Ins. Co. of Hartford v. OMP, Inc.*, 2012 WL 13012418, at *2 (C.D. Cal. 2012).  These courts have concluded that where allegations would support independently actionable tort claims, they are not precluded by the breach of contract exclusion.  *Id.*

This is in accord with Washington law regarding the independent duty doctrine, which permits plaintiffs to assert both breach of contract and tort claims against a defendant where there was a "breach of a tort duty arising independently of the terms of the contract."  *Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*, 179 Wn.2d 84, 98, 312 P.3d 620 (2013) (internal quotation omitted).  For example, a "duty to avoid misrepresentations that induced [a party] to contract with [another party] in the first place *do* arise independent of any contract the parties might have agreed to.  *Id.*  Similarly, the disclosure of privileged attorney client information and the misappropriation of funds can arise from independent tort duties.

Thus, the Court should conclude that the policy exclusion is ambiguous regarding its applicability to any allegations raised in the complaint which could arise legally independent of any contract Reed Hein entered into with the Adolphs and the class.  Additionally, for those claims which arise from Reed Hein's precontractual conduct, the breach of contract exclusion plainly cannot apply.

## V.  CONCLUSION

For the foregoing reasons, the Court should deny General Casualty's motion for partial summary judgment.

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 26

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044

RESPECTFULLY SUBMITTED this 15th day of December, 2025.

*I certify that this memorandum contains 8,211 words in compliance with the local rules.*

ALBERT LAW PLLC

By: */s/ Gregory Albert*
Gregory Albert, WSBA No. 42673

PFAU COCHRAN VERTETIS AMALA PLLC

By: */s/ Christopher E. Love*
Darrell L. Cochran, WSBA No. 22851
Thomas B. Vertetis, WSBA No. 29805
Christopher E. Love, WSBA No. 42832
William T. McClure, WSBA No. 54622

*Attorneys for the Counterclaim Plaintiffs*

DEFENDANTS ADOLPHS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 27

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044

## CERTIFICATE OF SERVICE

The undersigned declares under penalty of perjury under the laws of the United States of America, that on the below date, I caused for delivery a copy of the foregoing pleadings to:

| | |
|---|---|
| ***Counsel for Plaintiff and Counterclaim Defendant General Casualty Company of Wisconsin***<br><br>Kevin A. Michael, WSBA No. 36976<br>Cozen O'Conner<br>999 Third Ave, Ste. 1900<br>Seattle, WA 98104<br>kmichael@cozen.com | ☐ Regular U.S. Mail<br>☐ Facsimile<br>☐ ABC Legal Messenger<br>☒ ECF/E-mail |
| ***Counsel for Defendant General Casualty Company of Wisconsin***<br><br>Michael D. Handler, WSBA No. 25652<br>Daniel L. Syhre, WSBA No. 34158<br>Sarah P. Pozzi, WSBA No. 55744<br>Forsberg & Umlauf, P.S.<br>901 5th Ave. Ste. 1400<br>Seattle, WA 98164<br>mhandler@foum.law<br>dsyhre@foum.law<br>spozzi@foum.law | ☐ Regular U.S. Mail<br>☐ Facsimile<br>☐ ABC Legal Messenger<br>☒ ECF/E-mail |
| ***Counsel for Third-Party Defendant RSUI Group, Inc. and RSUI Indemnity Company, Inc.***<br><br>Jennifer L. Crow, WSBA No. 43746<br>Catarina Ferreira, WSBA No. 56291<br>Scheer Law PLLC<br>2101 Fourth Ave, Ste. 830<br>Seattle, WA 98121<br>jen@scheer.law<br>catarinaf@scheer.law | ☐ Regular U.S. Mail<br>☐ Facsimile<br>☐ ABC Legal Messenger<br>☒ ECF/E-mail |

DATED this 15th day of December, 2025, at Tacoma, WA.

*/s/ Carmen Albert*
Carmen Albert

DEFENDANTS ADOLPHS' RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 28

2:23-cv-00725-TMC

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044