UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GENERAL CASUALTY COMPANY OF WISCONSIN, | Case No. 2:23-cv-00725-TMC |
| Plaintiff, | ORDER ON MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| REED HEIN & ASSOCIATES LLC, et al., | |
| Defendants. | |
| BRIAN ADOLPH, et al., | |
| Third-Party Plaintiffs, | |
| v. | |
| RSUI INDEMNITY COMPANY INC, et al., | |
| Third-Party Defendant. | |

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 1

BRIAN ADOLPH, et al.,

               Counter Claimants,

    v.

GENERAL CASUALTY COMPANY OF

WISCONSIN,

               Counter Defendant.

Case No. 2:23-cv-00725-TMC

## I.    INTRODUCTION

Defendant Reed Hein & Associates LLC ("Reed Hein") is a company that marketed "timeshare exit" services to customers across the United States and Canada. Dkt. 58-1 at 54–68; Dkt. 54 at 22–23. From May 2020 to May 2022, Plaintiff General Casualty Company of Wisconsin ("General Casualty") and Third-Party Defendant RSUI Indemnity Company Inc. ("RSUI") provided liability insurance to Reed Hein. Dkt. 1-1 at 6, 202, 274, 352; Dkt. 60-1 at 8, 49.

In October 2021, Brian and Kerri Adolph—the Third-Party Plaintiffs and Counter Claimants in this matter—filed a putative class action complaint against Reed Hein alleging that it was engaging in deceptive practices and defrauding its customers. Dkt. 54 at 22–52. That lawsuit (the "Underlying Lawsuit") resulted in a class action settlement under which Reed Hein assigned to the Adolphs its rights to sue its insurers for breach of their duties to Reed Hein. *Id.* at 189, 239–43.

The main dispute in this matter is whether General Casualty and RSUI had a duty to defend Reed Hein in the Underlying Lawsuit. The Adolphs move for summary judgment on their

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 2

assigned breach of contract, bad faith, Insurance Fair Conduct Act ("IFCA"), and Washington Consumer Protection Act ("CPA") claims against General Casualty and RSUI. Dkt. 53. General Casualty moves for partial summary judgment that it had no duty to defend Reed Hein. Dkt. 57. For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART the Adolphs' motion for summary judgment and GRANTS General Casualty's motion for partial summary judgment. The Court concludes as a matter of law that RSUI had a duty to defend Reed Hein, but General Casualty did not. Also, General Casualty did not violate IFCA. The remaining bad faith and statutory claims, as well as damages caused by RSUI's breach of its contract, must be determined by a jury.

## II.    BACKGROUND

### A.    Facts

#### 1.    Underlying litigation

On October 9, 2021, the Adolphs sued Reed Hein on behalf of themselves and a proposed class of similarly situated plaintiffs, bringing claims for breach of contract, fraud, negligent misrepresentation, unjust enrichment, violations of the CPA, and breach of fiduciary duties. Dkt. 54 at 22–52. The Adolphs alleged that Reed Hein had defrauded thousands of consumers through false advertising that induced them to pay large amounts of money for supposed "timeshare exit" services that Reed Hein could not provide. *Id.* at 23. Relevant here, they also claimed that Reed Hein had misappropriated client funds by treating customers' pre-service payments as earned income rather than placing them in a trust or escrow account. *Id.* at 23, 34–36, 50–51.

In April 2022, the parties reached a settlement agreement stipulating to judgment against Reed Hein "for the amounts paid by each recorded customer of Reed Hein, each trebled up to an additional $25,000, attorney fees, and costs or, in the case of arbitration awardees, for the amount

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 3

of their arbitration awards," plus 12 percent yearly compound interest. *Id.* at 186–97. Reed Hein also "assign[ed] all rights to claims for breach of insurance contract (arising under the common law, the Washington Insurance Fair Conduct Act, and any other potential claims against their insurers)" to Brian Adolph. *Id.* at 189.

In October 2022, the Honorable Barbara J. Rothstein, Senior U.S. District Judge, certified a class of "[a]ll persons who paid fees to Reed Hein for services to terminate their timeshare obligations, except those persons who received refunds of the fees that they paid." *Adolph v. Reed Hein & Assocs.*, No. 2:21-cv-01378, 2022 WL 14661765, at *1 (W.D. Wash. Oct. 25, 2022). Then, in May 2023, Judge Rothstein approved the class action settlement upon finding that it was "fair, reasonable, enforceable, and adequate." *Adolph v. Reed Hein & Assocs.*, No. 2:21-cv-01378, Dkt. 43 at 239–43 (W.D. Wash. May 19, 2023); *see* Fed. R. Civ. P. 23(e)(2). The next month, judgment was entered against Reed Hein in the amount of $630,187,204 plus 12 percent annual interest. No. 2:21-cv-01378, Dkt. 43 at 202, 245–52.

On January 20, 2026, Judge Rothstein reopened the case to determine whether a new hearing was required to evaluate the reasonableness of the settlement using the factors established in *Chaussee v. Md. Cas. Co.*, 60 Wn. App. 504, 512, 803 P.2d 1339, *opinion modified on denial of reconsideration*, 812 P.2d 487 (1991). *See Adolph v. Reed Hein & Assocs.*, No. 2:21-cv-01378-BJR, Dkt. 65 (W.D. Wash. Jan. 20, 2026); Dkt. 76.

### 2.    *General Casualty's policies and claims handling*

In February 2020, the State of Washington filed a lawsuit against Reed Hein alleging that it had engaged in unfair and deceptive practices in the advertising and handling of its timeshare exit services. Dkt. 58-1. The next month, Reed Hein applied for general liability coverage through Arrowhead General Insurance Agency, Inc. ("Arrowhead"), General Casualty's underwriting agent. Dkt. 58-3. In an email to Reed Hein's insurance broker, an Arrowhead

underwriter explained that given the existing losses, Arrowhead would only provide a quote for insurance if Reed Hein would agree to exclude coverage for personal injury and advertising liability. Dkt. 58-4 at 5. Reed Hein's broker authorized the underwriter to proceed with preparing a quote. *Id.* at 4. By May 2020, at least 27 insurers had declined to issue general liability, umbrella, or excess policies to Reed Hein. Dkt. 58-2 at 6. Many of these insurers cited Reed Hein's loss history or operations as grounds for denial. *Id.*

On May 16, 2020, General Casualty issued primary and umbrella commercial general liability policies to Reed Hein. Dkt. 1-1 at 2–198, 200–70. Each policy contained an exclusion for personal and advertising injury. *Id.* at 189, 251. As of that time, Reed Hein had agreed to be self-insured for losses falling under the exclusion. Dkt. 58-6 at 7; Dkt. 58-7 at 9.

In February 2021, Reed Hein's insurance broker reached out to Arrowhead about renewal of the policies. Dkt. 58-5 at 1. The insurance broker understood that Reed Hein was seeking "automatic renewal" of the previous policy terms. Dkt. 58-6 at 9–10. While generating the renewal policies, an employee of Arrowhead's third-party processing vendor deleted the personal and advertising injury exclusion from the new primary policy. *See* Dkt. 58-8 at 7–17. On May 16, 2021, General Casualty issued the renewed primary and umbrella policies, each of which ran until May 16, 2022. Dkt. 1-1 at 272–348, 350–580. The umbrella policy included the personal and advertising injury exclusion that the parties had negotiated, but the primary policy did not. *Id.* at 327; *see id.* at 350–580.

On October 11, 2021—two days after the Adolphs filed suit against Reed Hein—Reed Hein's insurance broker provided General Casualty with a copy of the complaint and notice of a claim for defense. Dkt. 54 at 54, 64. One week later, a General Casualty employee acknowledged receipt and informed the insurance broker that she was awaiting a coverage opinion but anticipated a denial of coverage. *Id.* at 64. Three days later, she requested a coverage opinion

from General Casualty's legal department. *Id.* at 77–78, 80. Over the next several months, General Casualty's in-house counsel conducted an investigation to determine why the personal and advertising injury exclusion was not included in the 2021–22 primary policy. *Id.* at 85–90. General Casualty then retained coverage counsel and drafted a coverage position letter. *Id.* at 87, 103–06. Between October 2021 and September 2022, Reed Hein contacted General Casualty at least twice to inquire about a coverage decision. *Id.* at 130–32, 134. There is no evidence that Reed Hein informed General Casualty of the settlement negotiations in the Underlying Lawsuit during this time.

On September 22, 2022, General Casualty agreed to defend Reed Hein under the 2021–22 primary policy subject to a reservation of rights. *Id.* at 20. The decision letter explained General Casualty's position that the personal and advertising injury exclusion "appears to inadvertently have been left off" the 2021–22 primary policy. *Id.* at 8.

### 3.    RSUI's policies and claims handling

RSUI issued two claims-made directors and officers liability policies to Reed Hein: one that ran from May 16, 2020 to May 16, 2021, and one that ran from May 16, 2021 to May 16, 2022. Dkt. 60-1 at 7–46, 48–88. Each of these policies contained an exclusion for "prior acts":

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured that alleges, arises out of, is based upon or attributable to, directly or indirectly, in whole or in part, any actual or alleged Wrongful Acts which first occurred prior to May 1, 2018.

*Id.* at 30, 64.

On August 19, 2021, Reed Hein notified RSUI of two lawsuits that had been filed against it in April of that year. *Id.* at 178. On September 15, RSUI denied coverage, reasoning that Reed Hein had failed to timely notify RSUI of its claims and that the allegations in the lawsuits fell under the prior acts exclusion. Dkt. 54 at 157–59. On November 29, 2021, Reed Hein notified

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 6

RSUI of the Adolphs' complaint in the Underlying Action. *Id.* at 161–62. RSUI determined that the Underlying Lawsuit arose "from the same or interrelated wrongful acts alleged in" the April 2021 lawsuits, and the three lawsuits therefore constituted a single claim. *Id.* at 171. On January 4, 2022, it sent a letter to Reed Hein incorporating by reference its coverage denial letter for the April 2021 lawsuits and denying defense of the Underlying Lawsuit for the same reasons. *Id.*

### B.    Procedural history

On May 16, 2023, General Casualty sued Reed Hein, the Adolphs, and other Defendants, seeking (1) reformation of the 2021–22 primary policy to include the personal and advertising injury exclusion and (2) various declaratory relief. Dkt. 1. On April 29, 2024, the Adolphs brought counterclaims against General Casualty and third-party claims against RSUI for breach of contract, breach of the duty of good faith, breach of statutory and regulatory duties, IFCA violations, CPA violations, and negligence. Dkt. 26 at 24–29. The Adolphs also sought declarations that both General Casualty and RSUI had a duty to defend Reed Hein in the Underlying Lawsuit. *Id.* at 24, 26–27.

On November 24, 2025, the Adolphs moved for summary judgment on their breach of contract, bad faith, IFCA, and CPA claims against both insurers. Dkt. 53. The same day, General Casualty moved for partial summary judgment on its duty to defend Reed Hein in the Underlying Lawsuit and on its entitlement to reformation of the 2021–22 primary policy. Dkt. 57. On December 15, RSUI and General Casualty responded to the Adolphs' motion, and the Adolphs responded to General Casualty's motion. Dkts. 60, 63, 65. On December 22, the Adolphs and General Casualty filed their respective replies. Dkts. 71, 72.

### III.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 7

Civ. P. 56(a). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In general, the moving party has the initial burden of "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1122 (9th Cir. 2024) (quoting *Anderson*, 477 U.S. at 256).

In an insurance case, "[t]he party asserting coverage bears the burden of proving the loss is a covered occurrence within the policy period." *Walla Walla Coll. v. Ohio Cas. Ins. Co.*, 149 Wn. App. 726, 730, 204 P.3d 961 (2009). "If such a showing has been made, the insurer can nevertheless avoid liability by showing the loss is excluded by specific policy language." *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 431–32, 38 P.3d 322 (2002). If the party moving for summary judgment "will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (quoting *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007)).

The evidence relied upon must be able to be "presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 8

knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.").

Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presume[d]." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). However, "'[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255). Consequently, "a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan*, 497 U.S. at 888 (internal quotations omitted).

Interpretation of insurance policy terms is a question of law. *Vision One, LLC v. Phila. Indem. Ins. Co.*, 174 Wn.2d 501, 512, 276 P.3d 300 (2012). An insurance policy "must be read as the average person would read it; it should be given a 'practical and reasonable rather than a literal interpretation', and not a 'strained or forced construction' leading to absurd results." *Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 272, 267 P.3d 998 (2011) (quoting *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 341, 738 P.2d 251 (1987)). The policy must be considered as a whole, and "if the policy language is clear and unambiguous, [courts] must enforce it as written; [courts] may not modify it or create ambiguity where none exists." *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005). Undefined policy terms are assigned their ordinary meanings, and any ambiguities should be "construed against the drafter-insurer." *Vision One*, 174 Wn.2d at 512. Any exclusions should also be strictly construed against the insurer. *Id.*

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 9

## IV.    DISCUSSION

### A.    General Casualty had no duty to defend Reed Hein.

The crux of the dispute between General Casualty and the Adolphs is whether General Casualty had a duty to defend Reed Hein in the Underlying Lawsuit. "Upon receipt of a complaint against its insured, the insurer is permitted to utilize the 'eight corners' rule to determine whether, on the face of the complaint and the insurance policy, there is an issue of fact or law that could conceivably result in coverage under the policy." *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171, 182, 400 P.3d 1234 (2017) (quoting *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 803, 329 P.3d 59 (2014), *as corrected* (Aug. 6, 2014)), *as modified* (Aug. 16, 2017). "[I]f the insurance policy *conceivably covers* allegations in the complaint," the insurer has a duty to defend. *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010), *as corrected on denial of reconsideration* (June 28, 2010). In other words, the duty to defend exists "when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52–53, 164 P.3d 454 (2007).

> 1.    *The Court grants General Casualty's request for reformation of the 2021– 22 primary policy.*

General Casualty's primary argument against the duty to defend is that the 2021–22 primary policy—the policy in effect when the Adolphs filed their complaint—should be reformed to reflect the contracting parties' mutual understanding that liability for personal and advertising injury would be excluded from the policy. Dkt. 57 at 19–21; Dkt. 71 at 4–5. It contends that reformation is equitable because the personal and advertising injury exclusion would have been included in the policy but for a scrivener's error, and Reed Hein had no reason to expect coverage for such injuries. Dkt. 57 at 19–21. The Adolphs respond that General

Casualty is precluded from seeking reformation because it acted in bad faith, and that it has not submitted sufficient evidence of mutual mistake justifying reformation. Dkt. 65 at 4–5, 15–18. They argue that General Casualty cannot rely on extrinsic facts, such as evidence regarding policy negotiations and the renewal process, to deny the duty to defend. *Id.* at 14–15.

"Reformation is an equitable remedy employed to bring a writing that is materially at variance with the parties' agreement into conformity with that agreement." *Denaxas v. Sandstone Ct. of Bellevue, L.L.C.*, 148 Wn.2d 654, 669, 63 P.3d 125 (2003). The goal of reformation is not to alter the agreement between the parties but to ensure that the written contract reflects the parties' mutual understanding at the time they made the agreement. *See Garza v. Perry*, 25 Wn. App. 2d 433, 450, 523 P.3d 822 (2023). Reformation requires "a showing of either fraud or mutual mistake." *Rocky Mountain Fire & Cas. Co. v. Rose*, 62 Wn.2d 896, 902, 385 P.2d 45 (1963). A party seeking reformation based on mutual mistake must provide "clear, cogent and convincing evidence" of such mistake, "and if doubts exist as to the parties' intent, reformation is not appropriate." *W. Coast Pizza Co. v. United Nat. Ins. Co. Re: Pol'y No. XTP0079005*, 166 Wn. App. 33, 41, 271 P.3d 894 (2011) (quoting *Denny's Rests., Inc. v. Sec. Union Title Ins. Co.*, 71 Wn. App. 194, 212, 859 P.2d 619 (1993)). "Unilateral mistake cannot be the basis for reformation." *Id.* at 42. To that end, reformation based on mutual mistake "is justified only if the parties' intentions were identical at the time of the transaction." *Seattle Pro. Eng'g Emps. Ass'n v. Boeing Co.*, 139 Wn.2d 824, 832–33, 991 P.2d 1126 (2000).

Here, General Casualty has provided undisputed, clear and convincing evidence of the parties' mutual understanding that coverage would not be available under the 2020–21 policies absent an exclusion for personal injury and advertising liability. *See* Dkt. 58-4 at 4–5. There is no question Reed Hein understood that due to preexisting claims, it could not obtain general liability coverage without this exclusion. General Casualty also points to clear evidence that the 2021–22

policies were intended to be an "automatic renewal" rather than a departure from that agreement, and it provides an undisputed explanation of how the challenged exclusion was omitted from the policy. Dkt. 58-6 at 9–10; Dkt. 58-8 at 7–17. The fact that the omission was due to an apparent processing error by Arrowhead's third-party vendor does not, as the Adolphs suggest, mean that General Casualty committed a unilateral mistake. *See* Dkt. 65 at 3, 15–16. Rather, the parties' mutual mistake was proceeding with a writing that did not reflect the terms of their agreement. *See Tower Auto., Inc. v. Am. Prot. Ins. Co.*, 266 F. Supp. 2d 664, 675 (W.D. Mich. 2003) (reforming an insurance policy to include a contract penalty exclusion where the exclusion "was specifically negotiated," and "the parties never agreed that the exclusion would be omitted"); *see also Maland v. Houston Fire & Cas. Ins. Co. of Fort Worth, Tex.*, 274 F.2d 299, 303 (9th Cir. 1960) ("Where a mutual mistake is involved, we think that reformation may be granted under Washington law regardless of the negligence of the party seeking it."). The corresponding umbrella policy does include the exclusion, reflecting the parties' continued intent to exclude those injuries from coverage. Dkt. 1-1 at 327.

The Adolphs point to an email, sent shortly before the renewal policies were issued, in which a Reed Hein employee questioned whether "we are actually covered or are things excluded due to past occurrences." Dkt. 66-1 at 4. But nothing in the surrounding email exchange could create a reasonable inference that the employees were even discussing the personal and advertising injury exclusion, let alone that the coverage had changed. Moreover, any evidence of bad faith behavior that occurred during the claims-handling process does not bear on the intent of the parties in preparing the contract. In sum, General Casualty has met its burden of providing clear, cogent, and convincing evidence of mutual mistake, and the Adolphs have provided no evidence that places those facts in dispute. *See Polaroid Corp. v. Travelers Indem. Co.*, 414 Mass. 747, 755–57, 610 N.E.2d 912 (1993) (affirming a grant of partial

summary judgment to an insurer and reformation of the insurance contract to include a pollution exclusion where the insured "has presented no evidence to put in issue the facts showing that [the insured] believed and understood, when the [insurance] policies were issued, that the [insurance] policies were intended to include a pollution exclusion").

The Court concludes that reformation of the 2021–22 primary policy to include the personal and advertising injury exclusion is necessary because "the writing fails to correctly express the parties' agreement." *Garza*, 25 Wn. App. 2d at 450. General Casualty is not attempting to correct a mistake about the "legal effect" of the exclusion. *Mission Ins. Co. v. Guarantee Ins. Co.*, 37 Wn. App. 695, 699, 683 P.2d 215 (1984). Nor is it seeking reformation of the policy "to make it read so as to provide the exclusion it wishes it had drafted." *Pub. Emps. Mut. Ins. Co. v. Mucklestone*, 111 Wn.2d 442, 444, 758 P.2d 987 (1988) The personal and advertising injury exclusion was specifically negotiated between the parties while Reed Hein was in active litigation with the State of Washington for allegedly deceptive advertising, and the exclusion was included in three of the four policies that General Casualty issued. *See Polaroid Corp.*, 414 Mass. at 755 (affirming reformation where prior iterations of the policy had included an exclusion that was left out of the disputed policy). There is no genuine factual dispute that the exclusion's absence from the fourth policy was the result of a processing error by a contractor without authority to make substantive coverage decisions—the digital equivalent of a scrivener's error. This is "a classic case for contract reformation." *Tower Auto.*, 266 F. Supp. 2d at 675.

> 2. *None of the allegations in the Underlying Lawsuit fall within the scope of the General Casualty policies as reformed.*

In support of the duty to defend, the Adolphs name several theories of liability in the Underlying Lawsuit that they argue were conceivably covered by the 2021–22 policies, including publication of material violating class members' right to privacy, loss of use of

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 13

property, loss of the right to use dwellings, disparagement of services, and exposure to malicious prosecutions. Dkt. 65 at 5–11, 18–22. None of these theories mandate coverage here.

"In the course of reformation, obligations to which the parties have not assented in reaching the original agreement are expunged by the court." *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 408 (5th Cir. 2012). The parties did not assent to any duty to defend arising from injuries that fall under the personal and advertising injury exclusion, so General Casualty had no duty to defend against allegations based on conduct that was excluded from coverage. Reformation of the contract precludes the Adolphs' arguments regarding the duty to defend to the extent that they concern liability for personal and advertising injury. The relevant policies defined "personal and advertising injury" as

> injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> f. The use of another's advertising idea in your "advertisement"; or
>
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

Dkt. 1-1 at 318, 506. General Casualty therefore had no duty to defend under theories of right to privacy, loss of the right to use dwellings, disparagement of services, or exposure to malicious prosecutions.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 14

The Adolphs' remaining argument is that Reed Hein's failure, as alleged in the Underlying Lawsuit, to hold customers' money in trust or escrow fell under the provision of the 2021–22 primary policy providing coverage for property damage claims. Dkt. 65 at 7–8; Dkt. 54 at 50–51; Dkt. 1-1 at 492, 506. This argument fails for several reasons. First, as General Casualty notes, the Adolphs admit in their answer to General Casualty's complaint that the Underlying Lawsuit does not allege bodily injury or property damage. Dkt. 71 at 2–4; *see* Dkt. 1 ¶¶ 55–56; Dkt. 26 ¶¶ 55–56. This statement constitutes a binding judicial admission unless explained or retracted in a subsequent filing. *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859–60 (9th Cir. 1995). While the Adolphs' argument in opposition to summary judgment could be considered a retraction of their prior admission, *see id.* at 860, they do not acknowledge the statements they made in their answer, nor do they attempt to explain their apparent change in position.

Second, allegations regarding misuse of funds do not fall under the definition of "property damage" in the policy. The policy provides two definitions of "property damage":

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Dkt. 1-1 at 506. The Adolphs focus on the second definition, arguing that the class action complaint alleges lost use of money. Dkt. 65 at 7–8. But financial assets lacking "physical form and characteristics" are not "tangible property" for the purposes of insurance policy coverage. *Property*, BLACK'S LAW DICTIONARY (12th ed. 2024); *W. Am. Ins. Co. v. Del Ray Props. Inc.*, 671 F. Supp. 3d 1194, 1203 (W.D. Wash. 2023) (explaining that "tangible property" is different from "pure money damages"); *State Farm Fire & Cas. Co. v. Heather Ridge, L.P.*, No. C12-1085-RSM, 2013 WL 179713, at *4 (W.D. Wash. Jan. 15, 2013) (differentiating between

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 15

"economic damages" and "property damage"); *cf. Scottsdale Ins. Co. v. Int'l Protective Agency, Inc.*, 105 Wn. App. 244, 249, 19 P.3d 1058 (2001) (holding that damage to a business from loss of its liquor license was not lost use of tangible property).

Finally, the complaint in the Underlying Action does not allege that any monetary loss was caused by an "occurrence" as defined by the policy: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. 1-1 at 506. Instead, the complaint alleges that Reed Hein made the deliberate choice to immediately treat its customers' payments as earned revenue. *See* Dkt. 54 at 23, 34–36, 50–51.

Because none of the possible theories of coverage raised by the Adolphs fall under the policy language, the Court grants partial summary judgment to General Casualty that it had no duty to defend Reed Hein in the Underlying Lawsuit.[1]

**B.      The Adolphs have not shown as a matter of law that General Casualty acted in bad faith.**

The Adolphs argue that General Casualty breached its common-law duty of good faith by unreasonably delaying its response to Reed Hein's defense tender. Dkt. 53 at 14–16. They contend that General Casualty violated Washington law by considering extrinsic evidence in its determination of the duty to defend and allowing Reed Hein to incur defense costs in the meantime, rather than promptly agreeing to defend Reed Hein under a reservation of rights. *Id.*; Dkt. 72 at 4–5, 8–9. Finally, they argue that General Casualty's bad faith entitles them to coverage by estoppel and a presumption of harm. Dkt. 53 at 20; Dkt. 72 at 11–12. General Casualty argues that there is a genuine factual dispute over whether it acted reasonably in

---

[1] Because the Court concludes that coverage was precluded on the above grounds, it does not consider the parties' arguments regarding the application of other policy exclusions. *See* Dkt. 57 at 25–28; Dkt. 65 at 11–12, 23–26; Dkt. 71 at 11–14.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 16

delaying a coverage decision because it was investigating why the personal injury and advertising liability exclusion was missing from the policy. Dkt. 63 at 6–12, 16–17, 19–20.

An insured's action for bad faith claims handling sounds in tort. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 130, 196 P.3d 664, 668 (2008). "Whether an insurer acted in bad faith is a question of fact." *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484, 78 P.3d 1274 (2003). "Insurance bad faith claims require . . . that the insurer have acted in its own interest over the insured's interest and that the damages be proximately caused by the insurer's bad-faith actions." *Beasley v. GEICO Gen. Ins. Co.*, 23 Wn. App. 2d 641, 667, 517 P.3d 500 (2022).

"[A] third-party insured has a cause of action for bad faith claims handling that is not dependent on the duty to indemnify, settle, or defend." *Onvia*, 165 Wn.2d at 132. But in the absence of a duty to indemnify, settle, or defend, coverage by estoppel is not available as a remedy for a bad faith claim. *Id.* at 133. The insured is also not entitled to a presumption of harm and must instead "prove actual harm, and its 'damages are limited to the amounts it has incurred as a result of the bad faith . . . as well as general tort damages.'" *Id.* (quoting *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wn.2d 269, 285, 961 P.2d 933 (1998)). "Failure to promptly respond to a demand for coverage can constitute an unreasonable denial of benefits, even if the insurer eventually offers coverage." *Rushforth Constr. Co. v. Wesco Ins. Co.*, No. C17-1063-JCC, 2018 WL 1610222, at *4 (W.D. Wash. Apr. 3, 2018).

In the unusual situation presented here, a reasonable jury could find for either party. A reasonable jury could find that General Casualty prioritized its own interests over Reed Hein's in

the 11 months between receiving the tender and issuing a coverage decision.[2] General Casualty's only explanation for this delay is that its employees were investigating the missing exclusion. *See* Dkt. 63 at 6–12. Yet Washington law gives insurers an obvious solution for this type of dilemma: defend the insured under a reservation of rights and bring a separate action for declaratory relief as to coverage. *See Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wn.2d 751, 761, 58 P.3d 276 (2002); *Travelers Prop. Cas. Co. of Am. v. AF Evans Co.*, No. C10-1110-JCC, 2012 WL 12882901, at *3 (W.D. Wash. Nov. 2, 2012); *see also Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 391, 715 P.2d 1133 (1986) ("We also recognize that insurers, when faced with defending under a reservation of rights, are not without alternatives. They may sue for a declaratory judgment before they undertake a defense, to determine their liability.").

Indeed, this is what General Casualty eventually did, even after it developed evidence that the exclusion had been mistakenly deleted. But by delaying its coverage decision for 11 months, General Casualty avoided paying defense costs that it would not be able to recoup. *See Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wn.2d 872, 887, 297 P.3d 688 (2013) ("We hold that insurers may not seek to recoup defense costs incurred under a reservation of rights defense while the insurer's duty to defend is uncertain."). In its dealings with Reed Hein, General Casualty had "an obligation to give the rights of the insured the same consideration that it gives to its own monetary interests." *Truck Ins. Exch.*, 147 Wn.2d at 761. A reasonable jury could find that it did not meet this obligation but "overemphasized its own interest when it ignored [Reed Hein's] tender and repeated inquiries." *Rushforth Constr. Co.*, 2018 WL 1610222, at *5.

---

[2] Indeed, General Casualty has not sought summary judgment on the common-law bad faith or CPA claims that do not depend on an underlying duty to defend, tacitly acknowledging that a reasonable jury could rule against it.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 18

At the same time, however, a delay in issuing a coverage decision may constitute bad faith claims handling only if "it is due to a frivolous and unfounded reason." *Rizzuti v. Basin Travel Serv. of Othello, Inc.*, 125 Wn. App. 602, 620, 105 P.3d 1012 (2005); *see also Ins. Co. of State of Pennsylvania v. Highlands Ins. Co.*, 59 Wn. App. 782, 786–87, 801 P.2d 284 (1990) (concluding that a delay was neither frivolous nor unfounded where "the extent of [the insurer's] responsibility was debatable, and the delay throughout was related to [the insurer's] attempts— albeit clumsy—to resolve the coverage issue"). Although the duty to defend must be determined by the "eight corners" of the complaint and the policy, *see Xia*, 188 Wn.2d at 182, here the discrepancy between the 2021–22 primary policy as written and the umbrella policy that reflected the parties' bargain created genuine confusion about what the "eight corners" included. This was due not to a debate over the meaning of policy language or the underlying facts of the claim, but was simply a question of why the negotiated-for exclusion was missing. Considering the facts in the light most favorable to General Casualty, a reasonable jury could conclude that the insurer's effort to investigate the missing exclusion before issuing a decision was not frivolous or unfounded. The Adolphs' motion for summary judgment on their common-law bad faith claim against General Casualty is therefore denied.

### C.    General Casualty did not violate IFCA.

Next, the Adolphs argue that General Casualty violated IFCA by unreasonably delaying defense. Dkt. 53 at 23–24. General Casualty responds that it did not violate IFCA because it had no duty to defend. Dkt. 63 at 27.

Under IFCA,

> [a]ny first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs, as set forth in subsection (3) of this section.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 19

RCW 48.30.015(1). Certain regulatory violations, including failure to complete a coverage investigation in 30 days and failure to provide a coverage decision "within a reasonable time," also violate IFCA. *See* RCW 48.30.015(5); WAC 284-30-330(5); WAC 284-30-370. But "IFCA does not create an independent cause of action for regulatory violations" absent an unreasonable denial of coverage. *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 684, 389 P.3d 476 (2017); *see also Beasley*, 23 Wn. App. 2d at 667 ("IFCA claims require that the insurer's unreasonable act or acts result in the unreasonable denial of the insured's claim, and any IFCA damages must be caused by that denial."). Because General Casualty ultimately had no duty to defend, it could not have violated IFCA as a matter of law. The Court therefore denies the Adolphs' motion for summary judgment on their IFCA claim against General Casualty and instead grants summary judgment to General Casualty.

**D.    There is a genuine dispute of material fact as to whether General Casualty violated the CPA.**

The Adolphs argue that General Casualty violated the CPA because it "unreasonably failed to defend the Insureds and violated WAC 284-30-330(2), 330(3), 330(5), 330(13), and 370." Dkt. 53 at 24–25. WAC 284-30-330 defines specific unfair claims settlement practices, including (2) "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies," (3) "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies," (5) "[f]ailing to affirm or deny coverage of claims within a reasonable time after fully completed proof of loss documentation has been submitted," and (13) "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." And under WAC 284-30-

370, "[e]very insurer must complete its investigation of a claim within thirty days after notification of claim, unless the investigation cannot reasonably be completed within that time."

The CPA, codified at RCW 19.86.090, "allows anyone who has been 'injured in his or her business or property by a violation' of the CPA to bring a civil action in which she may recover actual damages, trial costs, and attorney fees." *Ambach v. French*, 167 Wn.2d 167, 171, 216 P.3d 405 (2009). As with a bad faith claim, "an insured may bring a CPA claim in the absence of a duty to settle, indemnify, or defend." *Onvia*, 165 Wn.2d at 134. The remedy for such a claim "is limited to the statutory remedies available to any successful CPA claimant." *Id.* A CPA claim against an insurer "requires (1) an unfair or deceptive practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his business or property, and (5) which injury is causally linked to the unfair or deceptive act." *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 330, 2 P.3d 1029 (2000). The first and second criteria may be met by showing a violation of WAC 284-30-330. *Indus. Indem. Co. of the Nw. v. Kallevig*, 114 Wn.2d 907, 923, 792 P.2d 520, 529 (1990). And any claim alleging an unfair insurance practice meets the third criterion "because RCW 48.01.030 declares that the 'business of insurance is one affected by the public interest'." *Anderson*, 101 Wn. App. at 330.

Based on the same analysis applicable to the Adolphs' common-law bad faith claim against General Casualty, a jury must decide whether General Casualty engaged in unfair claims settlement practices even if it ultimately had no duty to defend. This portion of the Adolphs' summary judgment motion is therefore denied.

### E.   RSUI breached its duty to defend Reed Hein.

RSUI denied Reed Hein's defense tender on two bases: first, because Reed Hein failed to provide timely notice of the claim, and second, because the prior acts exclusion precluded coverage. Neither of these was a valid justification for denying defense.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 21

   *1.  Reed Hein was not prejudiced by any late disclosure of Reed Hein's claim.*

The Adolphs argue that even though the Underlying Lawsuit was filed after RSUI's policy period had expired, it was part of the same "claim" as two prior lawsuits and should thus be deemed "made" in April 2021, meaning that Reed Hein only had to provide notice of the lawsuit "as soon as practicable." Dkt. 53 at 17–18; Dkt. 72 at 13. They also argue that even if the notice was not made "as soon as practicable," any delay in tender did not prejudice RSUI. Dkt. 53 at 18. RSUI responds that there is a genuine issue of fact on this issue because "the alleged wrongful acts constitute a single claim and were made too late." Dkt. 60 at 6–7.

Under both RSUI policies,

> [a]ll Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single Claim for all purposes under this policy . . . and shall be deemed first made when the earliest of such Claims is first made, regardless of whether such date is before or during the Policy Period.

Dkt. 60-1 at 21, 75. Because the parties agree that the Underlying Lawsuit and the April 2021 lawsuits constitute a single claim, Reed Hein's claim arising from the Underlying Lawsuit is deemed "first made" in April 2021, during the period of the 2020–21 policy. That policy further provides that "if any Claim first made after the Policy Period expires is nonetheless deemed to be made during the Policy Period pursuant to [the section quoted above], then it is a condition precedent to coverage for such Claim that the Insured report it to the Insurer as soon as practicable." *Id.* at 22. The policy does not define "as soon as practicable," and RSUI does not respond to the Adolphs' arguments about that provision. *See* Dkt. 60 at 6–7. The undisputed facts show that Reed Hein reported the Adolphs' lawsuit to RSUI seven weeks after it was filed. Dkt. 54 at 22–52, 161–62.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 22

Even if there is a genuine factual dispute over whether Reed Hein provided notice of the claim "as soon as practicable," Washington's "late tender rule" precluded RSUI from denying coverage on that basis. Under that rule, "an insurer must perform under the insurance contract even where an insured breaches the timely notice provision of the contract unless the insurer can show actual and substantial prejudice due to the late notice." *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 417, 191 P.3d 866 (2008); *Expedia*, 180 Wn.2d at 804 (explaining that a late tender does not excuse an insurer from its duty to defend absent actual and substantial prejudice). The Adolphs cite deposition testimony from RSUI's claims adjuster that RSUI did not experience any prejudice from the delay between October 11, 2021, when the Adolphs filed the class action complaint, and November 29, 2021, when Reed Hein provided RSUI with notice of the claim. Dkt. 54 at 168. RSUI does not dispute this argument and does not offer any evidence of prejudice. *See* Dkt. 60 at 6–7. Reed Hein's alleged late tender of the claim thus did not justify RSUI's denial of the duty to defend.

> 2.      *It is conceivable that the prior acts exclusion did not apply to Reed Hein's claim.*

The Adolphs argue that the prior acts exclusion did not relieve RSUI of its duty to defend because the complaint in the Underlying Lawsuit alleged that at least some of RSUI's wrongful conduct occurred after May 1, 2018 (the date identified in the exclusion). Dkt. 53 at 18–19; Dkt. 72 at 13. RSUI argues that it reasonably denied coverage based on the exclusion's unambiguous language. Dkt. 60 at 7–8, 10–11.

Washington courts have not interpreted a "prior acts" exclusion like the one in RSUI's policies. But the Ninth Circuit has interpreted a similarly worded exclusion under California law, and it held the exclusion did not preclude coverage for acts committed after the specified date, even if they were part of the same claim as acts committed before that date. *See Opus Bank v.*

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 23

*Liberty Ins. Underwriters, Inc.*, 621 F. App'x 405, 406 (9th Cir. 2015). California law, like Washington, instructs that the "duty to defend is triggered if the insured shows that the underlying claim *may* fall within policy coverage." *Id.* (internal quotation marks omitted) (quoting *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 300, 861 P.2d 1153 (1993)). RSUI offers no authority to support its contrary interpretation.

The burden of proving the application of a policy exclusion lies with the insurer. *Windcrest Owners Ass'n v. Allstate Ins. Co.*, 24 Wn. App. 2d 866, 871, 524 P.3d 683 (2022). Because Washington courts have not ruled on the application of a "prior acts" exclusion, and RSUI fails to identify any case law from other jurisdictions supporting its position, RSUI has not met that burden. It is at least conceivable that the exclusion did not apply to some of the conduct alleged in the class action complaint, which claimed that Reed Hein's wrongful acts were "ongoing" as of October 2021. Dkt. 54 at 25. This was sufficient to trigger Reed Hein's duty to defend. *Am. Best Food*, 168 Wn.2d at 404.

Having rejected both of RSUI's arguments against coverage, the Court concludes that RSUI breached its duty to defend Reed Hein and grants partial summary judgment to the Adolphs on liability for this claim. Damages will be determined at trial. The Adolphs' argument that RSUI is bound by the judgment entered by Judge Rothstein after approving the class action settlement under Rule 23 is unpersuasive. *See* Dkt. 53 at 22–23. Rule 23 requires only that a settlement be "fair, reasonable, and adequate" with respect to the class members. Fed. R. Civ. P. 23(e)(2). By contrast, "the reasonableness of an assignment of coverage and bad faith claims by an insured in exchange for a covenant not to execute" is governed by the more extensive list of factors established in *Chaussee. Mut. of Enumclaw Ins. Co. v. T & G Const., Inc.*, 165 Wn.2d 255, 264, 199 P.3d 376 (2008); *see Chaussee*, 60 Wn. App. at 512. The court in the Underlying

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 24

Lawsuit has not yet determined whether the settlement agreement was reasonable under the *Chaussee* factors.

>           **F.    The Adolphs have not met their burden to prove as a matter of law that RSUI acted in bad faith, violated IFCA, or violated the CPA.**

The Adolphs' final three third-party claims against RSUI—breach of the duty of good faith, violation of IFCA, and violation of the CPA—all depend on the reasonableness of RSUI's conduct. First, the Adolphs argue that RSUI acted in bad faith because it unreasonably breached its duty to defend. Dkt. 53 at 16–20. RSUI contends that the denial was based on a good-faith interpretation of the policy language and was not unreasonable. Dkt. 60 at 8–10.

The standard for a bad faith claim based on denial of coverage is slightly different from the standard for a bad faith claim based on delay. "If the insured claims that the insurer denied coverage unreasonably in bad faith, then the insured must come forward with evidence that the insurer acted unreasonably." *Smith*, 150 Wn.2d at 486. For example, "[t]he insured may present evidence that the insurer's alleged reasonable basis was not the actual basis for its action, or that other factors outweighed the alleged reasonable basis." *Id.* The insured bears the burden of proving a bad faith denial of coverage. *Id.* "If reasonable minds could differ as to whether an insurer's conduct was reasonable, or if there are material issues of fact with respect to the reasonableness of the insurer's action, then summary judgment is not appropriate." *Dees v. Allstate Ins. Co.*, 933 F. Supp. 2d 1299, 1307 (W.D. Wash. 2013). The mere fact that an insurer wrongly denied the duty to defend does not automatically give rise to liability for bad faith, "but to avoid liability, an insurer must show that it had a reasonable, nonfrivolous argument." *Hawkins v. ACE Am. Ins. Co.*, 32 Wn. App. 2d 900, 928, 558 P.3d 157 (2024), *review denied*, 4 Wn. 3d 1037, 574 P.3d 541 (2025); *see also Highlands Ins. Co.*, 59 Wn. App. at 786–87 (concluding that "denial of coverage because of a debatable coverage question" is not bad faith).

Here, the Adolphs do not point to any evidence that RSUI acted unreasonably, only that it denied Reed Hein's request for coverage based on an erroneous interpretation of the policy language. *See* Dkt. 53 at 7–8, 16–20. More is required to obtain summary judgment on a claim for which the Adolphs bear the burden of proof. When the party moving for summary judgment "will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Rookaird*, 908 F.3d at 459 (quoting *Soremekun*, 509 F.3d at 984). The Adolphs have not shown that every reasonable trier of fact would conclude that RSUI's denial of coverage was the result of bad faith rather than a nonfrivolous argument for a different interpretation of the policy. The Adolphs' motion for summary judgment on its common-law bad faith claims against RSUI is therefore denied.

This same lack of evidence dooms the Adolphs' motion for summary judgment on its IFCA and CPA claims against RSUI. Because "IFCA claims require that the insurer's unreasonable act or acts result in the unreasonable denial of the insured's claim," *Beasley*, 23 Wn. App. 2d at 667, and there is insufficient evidence to conclude that RSUI acted unreasonably, the Adolphs are not entitled to summary judgment on their IFCA claim. *See Hawkins*, 32 Wn. App. 2d at 930–31 ("[W]here an insurer fails to provide defense under a liability policy that it was required to provide *and the failure was unreasonable*, the insurer has unreasonably denied payment of benefits under IFCA." (emphasis added)). For the same reasons, the Court cannot conclude as a matter of law that RSUI committed an unfair or deceptive trade practice. All these claims must instead be decided by a jury.

## V.   CONCLUSION

1.   For the foregoing reasons, the Court GRANTS Plaintiff General Casualty Company of Wisconsin's motion for partial summary judgment (Dkt. 57) and

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 26

GRANTS IN PART and DENIES IN PART Third-Party Plaintiffs and Counter Claimants Brian and Kerri Adolph's motion for summary judgment (Dkt. 53).

2. General Casualty Policy No. BPK0008399-01 is reformed to include an exclusionary endorsement, Form No. CG 21 38 (11-85) entitled, "Exclusion – Personal And Advertising Injury."

3. The Court DECLARES that General Casualty has no duty to defend Reed Hein & Associates, LLC and Brandon Reed under Policy No. BPK0008399-01 in the United States District Court for the Western District of Washington Lawsuit styled *Brian and Kerri Adolph v. Reed Hein & Associates LLC et al.*, 2:21-cv-01378-BJR. The Adolphs' breach of contract claim against General Casualty is DISMISSED WITH PREJUDICE.

4. The Court DENIES the Adolphs' motion for summary judgment on its common-law bad faith and CPA claims against General Casualty. These claims will proceed to trial.

5. The Court GRANTS summary judgment to General Casualty on the Adolphs' IFCA claim. The IFCA claim against General Casualty is DISMISSED WITH PREJUDICE.

6. The Court DECLARES that Third-Party Defendant RSUI Indemnity Company Inc. breached its duty to defend Reed Hein in *Adolph v. Reed Hein & Associates LLC*.

7. The Court GRANTS partial summary judgment to the Adolphs on liability for their breach of contract claim against RSUI. Damages will be determined at trial and following the result of the ongoing proceedings in the Underlying Lawsuit.

8.    The Court DENIES the Adolphs' motion for summary judgment on their claims for common-law bad faith and violations of IFCA and the CPA against RSUI. These claims will proceed to trial.

Dated this 20th day of February, 2026.

Tiffany M. Cartwright
United States District Judge

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 28