**Honorable Tiffany M. Cartwright**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REED HEIN & ASSOCIATES, LLC d/b/a TIMESHARE EXIT TEAM, a Washington limited liability company; MAKAYMAX, INC., a Washington corporation; BRANDON REED, individually, and BRIAN and KERRI ADOLPH, a married couple,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL CASUALTY COMPANY OF WISCONSIN, a Wisconsin corporation, RSUI GROUP, INC., a Georgia corporation; and RSUI INDEMNITY COMPANY, INC., a New Hampshire corporation,<br><br>Defendants. | No. 2:23-cv-00725-TMC<br><br>**DEFENDANT GENERAL CASUALTY COMPANY OF WISCONSIN'S NOTICE OF ORDER AND VACATED JUDGMENT IN RELATED CASE** |

On January 28, 2026, this Court requested that the parties keep it informed of developments in the related lawsuit before the Honorable Barbara J. Rothstein, entitled *Brian and Kerri Adolph v. Reed Hein & Associates LLC et al.*, 2:21-cv-1378-BJR ("Related Case"). *See* Dkt. 78. This request was in response to General Casualty Company of Wisconsin's Notice of Related Case, Dkt. 76, informing this Court of the Adolphs' pending Motion to Reconfirm Reasonableness of Settlement. *See* Related Case, Dkt. 51.

DEFENDANT GENERAL CASUALTY COMPANY OF WISCONSIN'S NOTICE OF ORDER AND VACATED JUDGEMENT IN RELATED CASE – 1
Case No.:  2:23-CV-00725-TMC

**CLYDE & CO US LLP**
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 ● (206) 689-8501 FAX

Pursuant to this Court's January 2026 request, General Casualty Company of Wisconsin wishes to bring to this Court's attention that in the Related Case, on June 5, 2026, Judge Rothstein entered an Order Denying Motion to Reconfirm Reasonableness of Settlement and Vacating Judgment. Related Case, Dkt. 84. Judge Rothstein's Order is included as Exhibit A to this Notice, for the convenience of this Court.

Dated this 24th day of June, 2026.

| CLYDE & CO US LLP | COZEN O'CONNOR |
|---|---|
| By: *s/Michael D. Handler*<br>Michael D. Handler, WSBA #25654<br>Daniel L. Syhre, WSBA #34158<br>Sarah P. Pozzi, WSBA #55744<br>*Of Attorneys for General Casualty Company of Wisconsin* | By: *s/Kevin A. Michael*<br>Kevin A. Michael, WSBA #36976<br>*Of Attorneys for General Casualty Company of Wisconsin* |

DEFENDANT GENERAL CASUALTY COMPANY OF WISCONSIN'S NOTICE
OF ORDER AND VACATED JUDGEMENT IN RELATED CASE – 2
Case No.:  2:23-CV-00725-TMC

**CLYDE & CO US LLP**
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

# EXHIBIT A

The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN ADOLPH, *et al.*,

    Plaintiffs,

v.

REED HEIN & ASSOCIATES, *et al.*,

    Defendants.

NO. 21-cv-1378-BJR

**ORDER DENYING MOTION TO RECONFIRM REASONABLENESS OF SETTLEMENT AND VACATING JUDGMENT**

## I.  INTRODUCTION

This consumer protection class action suit was filed by Plaintiffs in October 2021 alleging that Defendants had defrauded more than 30,000 customers by claiming to be a consumer advocacy firm that could force timeshare developers to take back a customer's timeshare, for a fee that was backed by a money-back guarantee. But Defendants were not always successful in their efforts with timeshare developers, and the fee refund guarantee was an empty promise. In due course, the parties reached a settlement with a stipulated judgment. This Court held a fairness hearing pursuant to Federal Rule of Civil Procedure 23(e) and approved the settlement as "fair, reasonable, and adequate." Order Granting Final Approval, ECF No. 43. Judgment was entered for $630,187,204, and the case was closed. ECF No. 45.

ORDER DENYING MOTION TO RECONFIRM REASONABLENESS OF SETTLEMENT AND VACATING JUDGMENT

- 1

The Court reopened the case on December 30, 2025, in light of Plaintiffs' motion to reconfirm reasonableness of settlement, ECF No. 51. Defendants' insurer, General Casualty Company of Wisconsin, has been allowed to intervene in this case for purposes of responding to Plaintiffs' motion. ECF No. 57. The Court granted Intervenor's request for limited discovery, ECF No. 73, and has had the benefit of supplemental briefing after the discovery was completed, including the parties' analysis of the settlement's reasonableness under the relevant *Chaussee*[1] factors that form the standard for the Court to consider when determining if the settlement was reasonable.

Having reviewed the materials[2] and the relevant legal authorities, the Court finds a hearing unnecessary[3] and will deny Plaintiffs' motion. The reasoning for the Court's decision follows.

## II.   RELEVANT BACKGROUND

The Defendants in the underlying lawsuit were insured by RSUI Indemnity Company, Inc., and General Casualty Company of Wisconsin. Mot. 1-2. By the time the Plaintiffs and Defendants entered into settlement negotiations, Defendants had already been subjected to multiple arbitrations and lawsuits. Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement 4, ECF No. 37; Decl. Bugbee ¶¶ 2-3, ECF No. 22. The prior litigation resulted in multiple settlements,

---

[1] Referring to *Chaussee v. Maryland Cas. Co.*, 60 Wn. App. 504 (1991). The nine factors must be considered to determine if a settlement is reasonable; no single factor controls. *Starr Indem. & Liab. Co. v. PC Collections, LLC*, 25 Wn. App. 2d 382, 399 (2023).

[2] Including the motion, ECF No. 51; Intervenor's response in opposition, ECF No. 68; Plaintiffs' reply, ECF No. 71; Intervenor's supplemental brief, ECF No. 78; and Plaintiffs' supplemental brief, ECF No. 80; together with attached declarations and exhibits.

[3] *See* W.D. Wash. Local Civil Rule 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument."). Because Intervenor, General Casualty Company of Wisconsin, has been permitted to fully intervene, submit evidence, and brief its positions on the *Chaussee* factors, procedural due process is entirely satisfied, and no oral hearing is required. *See also Schmidt v. Cornerstone Invs., Inc.*, 115 Wn. 2d 148, 159 (1990) (confirming that nothing in the statute requires live expert testimony, leaving procedures for handling reasonableness to the trial judge's discretion).

ORDER DENYING MOTION TO RECONFIRM REASONABLENESS OF SETTLEMENT AND VACATING JUDGMENT

- 2

awards of damages, and a consent decree. *Id.*; Mot. 3-4. Before entering settlement discussions, Defendants had been found liable for $2.6 million under a judgment in favor of the State of Washington and had paid to defend over 40 arbitrations filed by former customers, with 13 of 14 arbitrations resulting in awards to the customers that included treble damages and fees. *Id.* Defendants were financially ruined.

Neither RSUI nor General Casualty were invited to participate in the negotiation of the settlement. Opp'n 10. RSUI had denied coverage for the lawsuit, and General Casualty had not provided a coverage determination beyond a preliminary assessment that the claim was not covered. Mot. 6. Defendants, lacking assets and the ability to pay or further defend, agreed to entry of a stipulated judgment in favor of Plaintiffs. *Id.* The settlement agreement contained no settlement amount, which was later calculated by Plaintiffs' counsel. Settlement Agreement, ECF No. 25-1; Albert Decl. ¶ 29, ECF No. 25. Reed Hein's Chief Executive Officer, Brandon Reed, signed and notarized a covenant judgment for $630,187,204, and assigned all rights to all potential insurance bad faith claims to the Plaintiffs' Class. Confession of Judgment, ECF No. 45. In return, Defendants received a covenant that the judgment would not be executed against them. *Id.*

Under RCW 4.22.060, in a case such as this where insured defendants assign their claim(s) against the insurer to the plaintiff in a settlement, "[a] hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence. A determination by the court that the amount to be paid is reasonable must be secured." While a class action "fairness" hearing focuses on protecting absent class members, a "reasonableness" hearing focuses on the rights of third parties, such as insurers, because if the amount of the judgment is deemed reasonable, "it becomes the presumptive measure of damages in a later bad faith action

ORDER DENYING MOTION TO RECONFIRM REASONABLENESS OF SETTLEMENT AND VACATING JUDGMENT

- 3

against the insurer." *Starr Indem. & Liab. Co. v. PC Collections, LLC*, 25 Wn. App. 2d 382, 398 (2023) (quoting *Bird v. Best Plumbing Grp., LLC*, 175 Wn. 2d 756, 765 (2012)); *Pickett v. Holland Am. Line-Westours, Inc.*, 145 Wn. 2d 178, 188 (2001). As such, insurers must be properly notified and given a chance to participate in these hearings to be potentially bound by the outcome. RCW 4.22.060(1); *Bird*, 175 Wn. 2d at 774.

In this case, General Casualty did not appear at the settlement fairness hearing held by this Court. It has not argued that it did not receive notice of the class action fairness hearing, but it asserts that it did not believe General Casualty's rights were being litigated since the hearing was not a "reasonableness hearing" pursuant to RCW 4.22.060. Opp'n 12.[4] Subsequently, General Casualty initiated a declaratory judgment action seeking a declaration of no coverage as to this actions' claims against Defendants, and Plaintiffs counter-claimed that General Casualty breached its duty to defend in bad faith. *See* Related Lawsuit, *General Casualty Company of Wisconsin v. Reed Hein & Associates, LLC et al.*, No. 2:23-cv-00725-TMC. In the Related Lawsuit, Plaintiffs seek to establish the covenant judgment of $630,187,204 as the presumptive measure of damages. *Id.* General Casualty disputes the legal effect of the settlement in the Related Lawsuit. *Id.* Consequently, Plaintiffs filed the pending motion in this Court to obtain a reasonableness determination under the *Chaussee* factors.

---

[4] The Court notes that on January 25, 2024, after the unopposed settlement was approved and judgment entered, the parties filed a motion for a status conference "to address whether the Court will determine the reasonableness of the stipulated amounts of the covenant judgments entered into by the parties in this case." ECF No. 47. Because there was no pending motion for a determination of reasonableness, the Court denied the request for a status conference. ECF No. 48. No further request arose for a determination of reasonableness until Plaintiffs' pending motion was filed on December 22, 2025.

ORDER DENYING MOTION TO RECONFIRM REASONABLENESS OF SETTLEMENT AND VACATING JUDGMENT

- 4

## III.   LEGAL STANDARD

The Supreme Court of Washington has recognized nine nonexclusive factors to help guide courts in determining whether a settlement is reasonable:

> [T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released.

*Chaussee v. Maryland Cas. Co.*, 60 Wn. App. 504, 512, 803 P.2d 1339, 1343, *opinion modified on denial of reconsideration*, 812 P.2d 487 (Wash. Ct. App. 1991) (quoting *Glover v. Tacoma Gen. Hosp.*, 98 Wn. 2d 708, 717 (1983)); s*ee Besel v. Viking Ins. Co. of Wisconsin*, 146 Wn. 2d 730, 738 (2002) ("We hold the amount of a covenant judgment is the presumptive measure of an insured's harm caused by an insurer's tortious bad faith if the covenant judgment is reasonable under the *Chaussee* criteria."). All nine factors are not necessarily relevant in all cases. *Besel*, 146 Wn. 2d at 739 n. 2. "No one factor controls and the trial court has the discretion to weigh each case individually." *Chaussee*, 60 Wn. App. at 512 (citing *Glover*, 98 Wn. 2d at 717). The settling parties have the burden to prove reasonableness. *Bird*, 175 Wn. 2d at 766.

## IV.   DISCUSSION

Plaintiffs argue that the *Chaussee* factors are "materially identical to the factors the Court already applied in granting final approval of the class settlement.," which means the outcome remains the same. Mot. 2. General Casualty argues that Plaintiffs' motion is untimely, and regardless, the settlement does not satisfy the *Chaussee* factors. Opp'n 1-2. The Court will address the timeliness issue before addressing the factors.

ORDER DENYING MOTION TO RECONFIRM REASONABLENESS OF SETTLEMENT AND VACATING JUDGMENT

- 5

### A.     Timeliness

General Casualty asserts that Plaintiffs' motion is untimely, having been made nearly two years after the entry of final judgment in this case and after the dispositive motion deadline in the Related Case. Opp'n 1. As Plaintiffs observe, under the circumstances of this case, a reasonableness determination may be made without limitation. *See, e.g.*, *Bird*, 175 Wn. 2d at 770 (confirming that reasonableness determinations under RCW 4.22.060 are equitable proceedings); *Hamblin v. Castillo Garcia*, 9 Wn. App. 2d 78 (2019) (approving a reasonableness determination held on an entered covenant judgment); *Lockwood v. AC & S, Inc.*, 44 Wn. App. 330, 360 (1986), *aff'd*, 109 Wn. 2d 235 (1987) ("It is clear from the plain meaning of the words of the statute that post-judgment settlements are contemplated.").

Because this Court has reopened this action and permitted General Casualty to intervene, holding a post-hoc *Chaussee* evaluation is the precise procedural mechanism approved by Washington law to protect the due process rights of the insurer.

### B.     *Chaussee* factors

While the Court previously approved the class action settlement under Federal Rule of Civil Procedure 23(e), that process occurred during an entirely unopposed, non-adversarial proceeding where the interests of the non-defending insurer were completely unrepresented. At that prior fairness hearing, the settling parties shared a unified motivation to secure judicial approval, meaning the underlying damages models, class metrics, and liability risks were never subjected to rigorous adversarial testing. Now that the insurer has intervened and presented contradictory evidence for the first time, this Court must view the record in a fundamentally different light. The prior Rule 23 approval does not carry preclusive weight under the *Chaussee* standard, which

ORDER DENYING MOTION TO RECONFIRM REASONABLENESS OF SETTLEMENT AND VACATING JUDGMENT

- 6

explicitly commands this Court to scrutinize the settlement from a protective, adversarial standpoint to ensure the valuation is not an inflated, collusive vehicle. *See Hawkins v. ACE Am. Ins. Co.*, 32 Wn. App. 2d 900, 917, (2024), *review denied*, 4 Wn. 3d 1037 (2025) (emphasizing that the hallmark of a constitutionally sound reasonableness determination is active adversarial testing).

Given this context, the Court has considered all nine *Chaussee* factors but focuses its discussion on the factors most relevant under the circumstances of this case.[5]

### 1. Releasing party's damages

General Casualty contends that the calculation of class damages "is highly dubious." Opp'n 15. The Court notes that the settlement agreement did not contain an amount, which was later calculated by Plaintiffs' counsel's interpretation of Reed Hein's business records. That calculation included payments of all Reed Hein customers, including customers of Reed Hein Canada, which is not a defendant nor an insured, resulting in inflated amounts. Voth Decl. ¶ 11, ECF No. 70. General Casualty's expert also observes that the calculations included individuals that received negotiated exits of their timeshares as well as customers in the late stage of Reed Hein's existence, who received neither services nor a refund. *Id.* ¶¶ 10, 12. Brandon Reed's testimony reveals that non-exited customers that did not receive refunds were a subset of all Reed Hein customers, indicating that the records showed approximately $80 million was paid to Reed Hein by all non-exited customers, which is far below the $222 million figure that Plaintiffs' counsel used in his calculation. Reed Tr. 108-109, ECF No. 79-2. Mr. Reed testified that "between two-thirds and 80% of Reed Hein's customers . . . achieved timeshare exits." *Id.* at 88-89; 110. No refunds would be

---

[5] *See Hamblin*, 9 Wn. App. 2d at 86 (indicating the court is not required to explain how it applied each factor); *Bird*, 175 Wn. 2d at 766 (courts have discretion in weighing the factors).

ORDER DENYING MOTION TO RECONFIRM REASONABLENESS OF SETTLEMENT AND VACATING JUDGMENT

- 7

owed to those customers who successfully exited their timeshares. The Washington Attorney General asserted that Reed Hein's refund exposure in December 2019 was about $58 million. Syhre Decl., Ex. E at 2, ECF No. 69-5. General Casualty's expert opines that further discovery would be required to determine the reasonable amount of Reed Hein customer payments, refunds, and offsets to a reasonable degree of certainty. Voth Decl. ¶ 15. Given the conflicting evidence in the record, the Court agrees that the Plaintiffs' damages calculations are unreliable, and the Court is unable to determine if the judgment amount is truly within the "range of reasonableness."

### 2. Merits of the releasing party's liability theory and released party's defense theory

When reviewing the second and third factors, courts assess the legal and factual strength of the parties cases. Plaintiffs rely on the success in the 14 arbitrations as support that all of the class members would have similar success. However, as General Casualty observes, not all class members were in the same non-exit, non-refunded position as those who had successful arbitrations, and some of the claims may have been time-barred.

Because Defendants lacked the funds to defend the case, liability to a certified class was certainly possible. It appears likely that Plaintiffs' claims were plausible and provable although discovery was not yet fully developed. From the record, it is apparent that Defendants were not in a financial position to either negotiate or defend themselves in this lawsuit. Their position of financial distress and their lack of success in the prior arbitrations may explain why they signed a blank-check settlement agreement.

### 3. Risks, released person's ability to pay, evidence of bad faith, collusion

As Plaintiffs explain, the "Defendants' risks were enormous." Mot. 12. They faced financial ruin, they lacked funds to complete preliminary discovery much less take the case to trial, their

ORDER DENYING MOTION TO RECONFIRM REASONABLENESS OF SETTLEMENT AND VACATING JUDGMENT

- 8

insurers had denied a defense, and they faced no insurance coverage for the claims. *Id.* Plaintiffs also faced the risk of no guaranteed recovery from the covenant judgment, which they argue supports a larger covenant judgment amount. *Id.* However, there was no representation by the insurers to protect their interests in this scenario, and Defendants could not reasonably "agree" to a massive financial judgment unless they were acting as a mere pass-through to the insurance. Signing a settlement agreement before a dollar amount is even determined is the ultimate proof of a non-adversarial process. It shows that the Defendants completely surrendered their defense up front and gave the Plaintiffs a blank check to write whatever number they could theoretically justify later. The covenant judgment insulated the Defendants from personal exposure; they had no economic incentive to bargain or protect their own financial interests. As such the final judgment amount was not a reflection of a prudent person's liability, and the danger of artificial inflation reduces the settlement's reliability. While there is evidence of arms-length negotiations during the settlement discussions, there is no evidence that any negotiation took place concerning the "amount" of the covenant judgment.

### 4.      Interests of the parties not being released

The parties not being released are the insurers who may be liable for the covenant judgment amount if it is found to be reasonable. *Water's Edge Homeowners Ass'n v. Water's Edge Assocs.*, 152 Wn. App. 572, 592 (2009). As discussed above, the insurer's interests were not considered, and they had no opportunity to participate in the settlement or calculations of the judgment amount. In order for the stipulated judgment amount to serve as the presumptive measure of harm in the bad faith claim against General Casualty, Plaintiffs had the burden to show that the amount was reasonable. They have not met that burden.

ORDER DENYING MOTION TO RECONFIRM REASONABLENESS OF SETTLEMENT AND VACATING JUDGMENT

- 9

### 5. Summary

Based on the Court's review of all the *Chaussee* factors, argued by Plaintiffs and General Casualty both before and after the additional discovery was completed, the Court finds that the covenant judgment for $630,187,204 is not reasonable and must be vacated. A functionally insolvent defendant signing a blank-check settlement before damages were even calculated completely subverts the required adversarial process. *See Hawkins*, 32 Wn. App. at 917. Because the Plaintiffs and Defendants shared a unified motivation to push the settlement through, the underlying calculations were never subjected to the rigorous cross-examination that defines a true adversarial record. The covenant entirely insulated the Defendants from liability, and the resulting figure represents an unreliable valuation rather than what a reasonably prudent person would pay.

## V. CONCLUSION

For the foregoing reasons:

1. Plaintiffs' Motion to Reconfirm Reasonableness of Settlement, ECF No. 51, is DENIED;

2. The Court finds that the stipulated settlement of 630,187,204 is unreasonable under RCW 4.22.060, and unenforceable against Intervenor General Casualty Company of Wisconsin;

3. The Confession of Judgment entered on June 15, 2023, ECF No. 45, is VACATED and SET ASIDE.

DATED this 5th day of June 2026.

*Barbara J. Rothstein*

Barbara Jacobs Rothstein
United States District Judge

ORDER DENYING MOTION TO RECONFIRM REASONABLENESS OF SETTLEMENT AND VACATING JUDGMENT

- 10